IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

1.    Freddie J. Black
      18010 Elk Lake Court
      Humble, TX 77346,

2.    Paul J. Coulon
      2100 Park Brook Lane
      Birmingham, AL 35215,

3.    Charles  W.  Dick
      1780 W 24th Street
      Panama City Beach, FL 32405-2219,

4.    Drue B. Garrison
      3426 Forest Gale Drive
      Forest Grove, OR 97116,

CIVIL ACTION NO. ___19-1850___

5.    Harold B. Gay
      15521 River Bend Trail
      Lanexa, VA 23089-6046,

COMPLAINT IN CIVIL ACTION

6.    John F. Hein
      638 Shasteen Bend
      Winchester, TX 37398,

7.    Terry  L.  Hoxworth
      2215  Glenwood  Lane
      Tallahassee, FL 32308,

8.    Larry E. Hunter
      158 N Windwood Acres Road
      Batesburg, SC 29006-8360,

9.    Patrick  A.  Johnson
      483  Cutler  Bridge
      Schertz, TX 78154,

10.   G. Bruce Pharis
      15 Saints Creek Court
      Irmo, SC 29063-8179,

11.   William F. Walsh

5727 Riverboat Circle SW
Vero Beach, FL 32968, and

12.  Michael Woodworth
50 Hemlock Court
Newfields, NH 03856-8300,

Plaintiffs,

vs.

Kevin K. McAleenan, Acting Secretary,
U.S. Department of Homeland Security, and
Commissioner,
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, N.W.
Washington, D.C. 20029,
and

The U.S. Department of Homeland Security -
Customs and Border Protection
1300 Pennsylvania Avenue, N.W.
Washington, D.C. 20229,

Defendants.

---

**COMPLAINT IN A CIVIL ACTION UNDER THE ADMINISTRATIVE
PROCEDURE ACT SEEKING COMPLIANCE WITH DECISIONS OF
THE OFFICE OF PERSONNEL MANAGEMENT
BY THE DEFENDANTS, AND OTHER RELATED RELIEF**

## INTRODUCTION

1.  Plaintiffs, by their undersigned counsel, file this civil action under the

Administrative Procedure Act, 5 U.S.C. § 551, et seq., and 5 U.S.C. § 701, et seq., ("APA"), seeking

to enforce decisions of the Office of Personnel Management ("OPM"), rendered in their favor,

arising under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., ("FLSA"), the Back Pay Act,

5 U.S.C. § 5596, and other laws, against the Defendant Department of Homeland Security - Customs and Border Protection, and their principal officer, on the ground that they have failed to comply with and enforce such OPM decisions by refusing to pay to the Plaintiffs monetary awards of retroactive wages, interest, attorneys fees and costs as directed and required by OPM in its decisions.

This action is part of a continuing legal effort by Plaintiffs to recover for work performed by them on behalf of Defendants, and their predecessors, as early as 1985, for which they have not yet been properly compensated.

As grounds therefore, Plaintiffs allege as follows:

## **JURISDICTION**

2.      The United States District Court for the District of Columbia ("USDCDC" or "this Court"), has jurisdiction over this civil action pursuant to (1) 28 U.S.C. § 1331, in that the matters in controversy arise under the Constitution and laws of the United States; (2) 28 U.S.C. § 1337, in that the matters in controversy arise under an Act of Congress regulating commerce; and (3) under 28 U.S.C. § 1361, seeking to compel an officer and an agency of the United States to perform duties owed to the Plaintiffs.

3.      Further, this Court has jurisdiction to issue declaratory judgments and other relief sought herein under 28 U.S.C. §§ 2201 and 2202, in that actual controversies exist between the Plaintiffs and Defendants regarding actions and failures to act by Defendants under APA and other federal laws and regulations.

---

**VENUE**

4.　　Venue is proper in this district under 28 U.S.C. § 1391, since this is a civil action in which Defendants have failed to act in their official capacities as required under law, and pursuant to color of legal authority, and a substantial portion of the acts, events and/or omissions giving rise to the claims herein occurred in this District, and Defendants reside in this District.

**THE PARTIES AND DEFINITIONS**

5.　　Defendant Department of Homeland Security-Customs and Border Protection ("DHS-CBP"), is a department and agency of the United States government, and with its predecessor agencies, have been the employers of the Plaintiffs at all times relevant herein;

6.　　Defendant Kevin K. McAleenan, is Acting Secretary of Defendant U.S. Department of Homeland Security, and is Commissioner of Defendant Customs and Border Protection;

7.　　Plaintiffs are "persons" within the meaning of 5 U.S.C. § 551(2);

8.　　Plaintiffs are "parties" within the meaning of 5 U.S.C. § 551(3);

9.　　OPM's decisions sought to be enforced and required to be complied with herein by Defendants are "orders" within the meaning of 5 U.S.C. § 551(6);

10.　　OPM's decisions involved herein are "sanctions" within the meaning of 5 U.S.C. § 551(10)(B);

11.　　Failure of Defendants to comply with OPM's decisions involved herein constitute denials of "relief" within the meaning of 5 U.S.C. § 551(11);

12.　　Defendants' failure to comply with OPM's decisions involved herein constitute "agency action" within the meaning of 5 U.S.C. § 551(13);

13.     The failures of the Defendants to comply with the decisions of OPM involved herein are reviewable as final agency actions under APA;

14.     Plaintiffs, who are identified individually in paragraphs 17 through 44 below, allege that they have suffered financial, economic, and legal wrongs and hardships because of Defendants' failures to act, and have been adversely affected and aggrieved thereby regarding their rights under the APA, the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*., ("FLSA"), the Back Pay Act, 5 U.S.C. § 5596, and other laws, and they seek judicial enforcement in their favor of OPM's decisions herein under APA.

15.     5 C.F.R. § 551.708 Finality and effect of OPM FLSA claim decision provides as follows:

> (a) OPM will send an FLSA claim decision to the claimant or the claimant's representative and the agency. An FLSA claim decision made by OPM is final. There is no further right of administrative appeal. However, at its discretion, OPM may reconsider its FLSA claim decision when material information was not considered or there was a material error of law, regulation, or fact in the original decision. The request must be submitted in writing and received by OPM within 45 calendar days after the date of the decision. At its unreviewable discretion, OPM may waive the time limit.
>
> (b) A decision by OPM under the Act is binding on all administrative, certifying, payroll, disbursing, and accounting officials of agencies for which OPM administers the Act.
>
> (c)
>
> > (1) Upon receipt of a decision, the agency employing the claimant during the claim period must take all necessary steps to comply with the decision, including adherence to compliance instructions provided with the decision. All compliance actions must be completed within the time specified in the decision, unless an extension of time is requested by the agency and granted by OPM.

> (2) The agency should identify all similarly situated current and former employees to ensure that they are treated in a manner consistent with the decision on FLSA coverage, informing them in writing of their right to file an FLSA claim with the agency or OPM.

16.    Defendants were in receipt of OPM's decisions sought to be enforced herein in 2017, but have never filed a timely appeal or otherwise from any of these OPM decisions and have failed to abide thereby and comply therewith.

17.    Freddie J. Black ("Black") is a Plaintiff herein.  He resides at 18010 Elk Lake Court, Humble, TX 77346.  He was employed as a criminal investigator by Defendants and the U.S. Customs Service, predecessor organization to DHS-CBP. Counsel for Plaintiffs filed a complaint on Black's behalf on March 11, 1994, with the General Accounting Office ("GAO"), and with OPM on May 7, 1999, challenging his exemption status under FLSA. On May 30, 2017, OPM granted Black's claim in a decision attached hereto as Black Exhibit 1.  In its decision, OPM required Black to submit evidence to Defendants "showing the amount and extent of overtime he performed" for which he was entitled to be compensated. OPM further declared in its decision that "[t]he agency is to review whether the claimant has worked overtime in accordance with instructions in the 'Decision' section of this decision, and if the claimant is determined to be entitled to back pay, the agency must pay the claimant the amount owed him plus interest as provided in 5 CFR 550.806. If the claimant believes the agency has incorrectly computed the amount owed him, he may file a new FLSA claim with this office."

18.    Thereafter, counsel for Plaintiffs submitted evidence on Black's behalf to Defendant DHS-CBP regarding his entitlement and the parties reached agreement on March 21,

2019, on the amount of back wages and interest owed by DHS-CBP to Black.  However, Defendants have failed and continue to refuse to compensate Black accordingly.

19.     Paul J. Coulon ("Coulon") is a Plaintiff herein. He resides at 2100 Park Brook Lane, Birmingham, AL 35215. He was employed as a criminal investigator by Defendants and the U.S. Customs Service, predecessor organization to DHS-CBP. Counsel for Plaintiffs filed a complaint on Coulon's behalf on September 8, 1992, with the General Accounting Office ("GAO"), predecessor to OPM, challenging his exemption status under FLSA. On June 23, 2017, OPM granted Coulon's claim in a decision attached hereto as Coulon Exhibit 1. In its decision, OPM required Coulon to submit evidence to Defendants "showing the amount and extent of overtime he performed" for which was entitled to be compensated. OPM further declared in its decision that "[t]he agency is to review whether the claimant has worked overtime in accordance with instructions in the 'Decision' section of this decision, and if the claimant is determined to be entitled to back pay, the agency must pay the claimant the amount owed him plus interest as provided in 5 CFR 550.806. If the claimant believes the agency has incorrectly computed the amount owed him, he may file a new FLSA claim with this office."

20.     Thereafter, counsel for Plaintiffs submitted evidence on Coulon's behalf to Defendant DHS-CBP regarding his entitlement and the parties reached agreement on March 21, 2019, on the amount of back wages and interest owed by DHS-CBP to Coulon. However, Defendants have failed and continue to refuse to compensate Coulon accordingly.

21.     Charles W. Dick ("Dick") is a Plaintiff herein. He resides at 1780 W 24th Street, Panama City Beach, FL 32405-2219. He was employed as a criminal investigator by Defendants and the U.S. Customs Service, predecessor organization to DHS-CBP. Counsel for

Plaintiffs filed a complaint on Dick's behalf on August 8, 1990, with the General Accounting Office ("GAO"), predecessor to OPM, challenging his exemption status under FLSA. On May 1, 2017, OPM granted Dick's claim in a decision attached hereto as Dick Exhibit 1. In its decision, OPM required Dick to submit evidence to Defendants "showing the amount and extent of overtime he performed" for which was entitled to be compensated. OPM further declared in its decision that "[t]he agency is to review whether the claimant has worked overtime in accordance with instructions in the 'Decision' section of this decision, and if the claimant is determined to be entitled to back pay, the agency must pay the claimant the amount owed him plus interest as provided in 5 CFR 550.806. If the claimant believes the agency has incorrectly computed the amount owed him, he may file a new FLSA claim with this office."

22.    Thereafter, counsel for Plaintiffs submitted evidence on Dick's behalf to Defendant DHS-CBP regarding his entitlement and the parties reached agreement on March 21, 2019 on the amount of back wages and interest owed by DHS-CBP to Dick.  However, Defendants have failed and continue to refuse to compensate Dick accordingly.

23.    Drue B. Garrison ("Garrison") is a Plaintiff herein.  He resides at 3426 Forest Gale Drive, Forest Grove, OR 97116. He was employed as a criminal investigator by Defendants and the U.S. Customs Service, predecessor organization to DHS-CBP. Counsel for Plaintiffs filed a complaint on Garrison's behalf on May 6, 1994, with the General Accounting Office ("GAO"), predecessor to OPM, challenging his exemption status under FLSA.  On May 1, 2017 OPM, granted Garrison's claim in a decision attached hereto as Garrison Exhibit 1.  In its decision, OPM required Garrison to submit evidence to Defendants "showing the amount and extent of overtime he performed" for which was entitled to be compensated. OPM further declared in its decision that

"The agency is to review whether the claimant has worked overtime in accordance with instructions in the 'Decision' section of this decision, and if the claimant is determined to be entitled to back pay, the agency must pay the claimant the amount owed him plus interest as provided in 5 CFR 550.806. If the claimant believes the agency has incorrectly computed the amount owed him, he may file a new FLSA claim with this office."

24.     Thereafter, counsel for Plaintiffs submitted evidence on Garrison's behalf to Defendant DHS-CBP regarding his entitlement and the parties reached agreement on March 21, 2019 on the amount of back wages and interest owed by DHS-CBP to Garrison. However, Defendants have failed and continue to refuse to compensate Garrison accordingly.

25.     Harold B. Gay ("Gay") is a Plaintiff herein.  He resides at 15521 River Bend Trail, Lanexa, VA 23089-6046.  He was employed as a criminal investigator by Defendants and the U.S. Customs Service, predecessor organization to DHS-CBP. Counsel for Plaintiffs filed a complaint on Gay's behalf on April 10, 1992, with the General Accounting Office ("GAO"), predecessor to OPM, challenging his exemption status under FLSA. On May 11, 2017, OPM granted Gay's claim in a decision attached hereto as Gay Exhibit 1. In its decision, OPM required Gay to submit evidence to Defendants "showing the amount and extent of overtime he performed" for which was entitled to be compensated. OPM further declared in its decision that "[t]he agency is to review whether the claimant has worked overtime in accordance with instructions in the 'Decision' section of this decision, and if the claimant is determined to be entitled to back pay, the agency must pay the claimant the amount owed him plus interest as provided in 5 CFR 550.806. If the claimant believes the agency has incorrectly computed the amount owed him, he may file a new FLSA claim with this office."

26.     Thereafter, counsel for Plaintiffs submitted evidence on Gay's behalf to Defendant DHS-CBP regarding his entitlement and the parties reached agreement on March 21, 2019 on the amount of back wages and interest owed by DHS-CBP to Gay.  However, Defendants have failed and continue to refuse to compensate Gay accordingly.

27.     John F. Hein ("Hein") is a Plaintiff herein.  He resides at 638 Shasteen Bend, Winchester, TX 37398. He was employed as a criminal investigator by Defendants and the U.S. Customs Service, predecessor organization to DHS-CBP. Counsel for Plaintiffs filed a complaint on Hein's behalf on April 17, 1990, with the General Accounting Office ("GAO"), predecessor to OPM, challenging his exemption status under FLSA.  On May 1, 2017, OPM granted Hein's claim in a decision attached hereto as Hein Exhibit 1. In its decision, OPM required Hein to submit evidence to Defendants "showing the amount and extent of overtime he performed" for which was entitled to be compensated. OPM further declared in its decision that "[t]he agency is to review whether the claimant has worked overtime in accordance with instructions in the 'Decision' section of this decision, and if the claimant is determined to be entitled to back pay, the agency must pay the claimant the amount owed him plus interest as provided in 5 CFR 550.806. If the claimant believes the agency has incorrectly computed the amount owed him, he may file a new FLSA claim with this office."

28.     Thereafter, counsel for Plaintiffs submitted evidence on Hein's behalf to Defendant DHS-CBP regarding his entitlement and the parties reached agreement on March 21, 2019 on the amount of back wages and interest owed by DHS-CBP to Hein.  However, Defendants have failed and continue to refuse to compensate Hein accordingly.

29.     Terry L. Hoxworth ("Hoxworth") is a Plaintiff herein. He resides at 2215 Glenwood Lane, Tallahassee, FL 32308.  He was employed as a criminal investigator by Defendants and the U.S. Customs Service, predecessor organization to DHS-CBP. Counsel for Plaintiffs filed a complaint on Hoxworth's behalf on October 2, 1992, with the General Accounting Office ("GAO"), predecessor to OPM, challenging his exemption status under FLSA. On June 19, 2017, OPM granted Hoxworth's claim in a decision attached hereto as Hoxworth Exhibit 1. In its decision, OPM required Hoxworth to submit evidence to Defendants "showing the amount and extent of overtime he performed" for which was entitled to be compensated.  OPM further declared in its decision that "[t]he agency is to review whether the claimant has worked overtime in accordance with instructions in the 'Decision' section of this decision, and if the claimant is determined to be entitled to back pay, the agency must pay the claimant the amount owed him plus interest as provided in 5 CFR 550.806.  If the claimant believes the agency has incorrectly computed the amount owed him, he may file a new FLSA claim with this office."

30.     Thereafter, counsel for Plaintiffs submitted evidence on Hoxworth's behalf to Defendant DHS-CBP regarding his entitlement and the parties reached agreement on March 21, 2019 on the amount of back wages and interest owed by DHS-CBP to Hoxworth. However, Defendants have failed and continue to refuse to compensate Hoxworth accordingly.

31.     Larry E. Hunter ("Hunter") is a Plaintiff herein. He resides at 158 N Windwood Acres Road, Batesburg, SC 29006-8360. He was employed as a criminal investigator by Defendants and the U.S. Customs Service, predecessor organization to DHS-CBP.  Counsel for Plaintiffs filed a complaint on Hunter's behalf on March 15, 1995, with the General Accounting Office ("GAO"), predecessor to OPM, challenging his exemption status under FLSA. On June 5,

2017, OPM granted Hunter's claim in a decision attached hereto as Hunter Exhibit 1.  In its decision, OPM required Hunter to submit evidence to Defendants "showing the amount and extent of overtime he performed" for which was entitled to be compensated.  OPM further declared in its decision that "[t]he agency is to review whether the claimant has worked overtime in accordance with instructions in the 'Decision' section of this decision, and if the claimant is determined to be entitled to back pay, the agency must pay the claimant the amount owed him plus interest as provided in 5 CFR 550.806. If the claimant believes the agency has incorrectly computed the amount owed him, he may file a new FLSA claim with this office."

32.     Thereafter, counsel for Plaintiffs submitted evidence on Hunter's behalf to Defendant DHS-CBP regarding his entitlement and the parties reached agreement on March 21, 2019 on the amount of back wages and interest owed by DHS-CBP to Hunter.  However, Defendants have failed and continue to refuse to compensate Hunter accordingly.

33.     Patrick A. Johnson ("Johnson") is a Plaintiff herein.  He resides at 483 Cutler Bridge, Schertz, TX 78154. He was employed as a criminal investigator by Defendants and the U.S. Customs Service, predecessor organization to DHS-CBP. Counsel for Plaintiffs filed a complaint on Johnson's behalf on April 1, 1994, with the General Accounting Office ("GAO"), predecessor to OPM, challenging his exemption status under FLSA.

34.     In decisions rendered by OPM on November 2, 2012, it decided that the instant claim of Johnson, and five other claimants not parties herein, were time-barred. *See Armstrong v. Archuleta*, 77 F.Supp. 3d 9, 17-18 (D.C.D.C. 2014) ("*Armstrong*").

35.     Thereafter, Johnson and the five other claimants brought suit in this Court under APA in *Armstrong*, alleging that OPM's decisions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *Id*.

36.     In a decision rendered on December 30, 2014, by Judge Rosemary M. Collyer of this Court in *Armstrong*, Judge Collyer granted the Plaintiffs' Cross-Motion for Summary Judgement. The Court concluded that "judgment on liability will be entered in favor of Plaintiffs and the case is remanded to OPM to adjudicate and process damages in accordance with FLSA and other applicable laws, and Plaintiffs' respective employing agencies are directed to compensate them in accordance with OPM's determinations.  A memorializing Order accompanies this Opinion."  *Id*. at 36.

37.     On May 1, 2017, OPM granted Johnson's claim in a decision attached hereto as Johnson Exhibit 1. In its decision, OPM required Johnson to submit evidence to Defendants "showing the amount and extent of overtime he performed" for which was entitled to be compensated. OPM further declared in its decision that "[t]he agency is to review whether the claimant has worked overtime in accordance with instructions in the 'Decision' section of this decision, and if the claimant is determined to be entitled to back pay, the agency must pay the claimant the amount owed him plus interest as provided in 5 CFR 550.806.  If the claimant believes the agency has incorrectly computed the amount owed him, he may file a new FLSA claim with this office."

38.     Thereafter, counsel for Plaintiffs submitted evidence on Johnson's behalf to Defendant DHS-CBP regarding his entitlement and the parties reached agreement on March 21,

- 13 -

2019 on the amount of back wages and interest owed by DHS-CBP to Johnson. However, Defendants have failed and continue to refuse to compensate Johnson accordingly.

39.     G. Bruce Pharis ("Pharis") is a Plaintiff herein.  He resides at 15 Saints Creek Court, Irmo, SC 29063-8179. He was employed as a criminal investigator by Defendants and the U.S. Customs Service, predecessor organization to DHS-CBP. Counsel for Plaintiffs filed a complaint on Johnson's behalf on March 10, 1992, with the General Accounting Office ("GAO"), predecessor to OPM, challenging his exemption status under FLSA. On May 11, 2017, OPM granted Pharis's claim in a decision attached hereto as Pharis Exhibit 1. In its decision, OPM required Pharis to submit evidence to Defendants "showing the amount and extent of overtime he performed" for which was entitled to be compensated. OPM further declared in its decision that "[t]he agency is to review whether the claimant has worked overtime in accordance with instructions in the 'Decision' section of this decision, and if the claimant is determined to be entitled to back pay, the agency must pay the claimant the amount owed him plus interest as provided in 5 CFR 550.806. If the claimant believes the agency has incorrectly computed the amount owed him, he may file a new FLSA claim with this office."

40.     Thereafter, counsel for Plaintiffs submitted evidence on Pharis's behalf to Defendant DHS-CBP regarding his entitlement and the parties reached agreement on March 21, 2019 on the amount of back wages and interest owed by DHS-CBP to Pharis.  However, Defendants have failed and continue to refuse to compensate Pharis accordingly.

41.     William F. Walsh ("Walsh") is a Plaintiff herein. He resides at 5727 Riverboat Circle SW, Vero Beach, FL 32968. He was employed as a criminal investigator by Defendants and the U.S. Customs Service, predecessor organization to DHS-CBP. Counsel for

Plaintiffs filed a complaint on Walsh's behalf on April 28, 1994, with the General Accounting Office ("GAO"), predecessor to OPM, challenging his exemption status under FLSA. On June 5, 2017, OPM granted Walsh's claim in a decision attached hereto as Walsh Exhibit 1. In its decision, OPM required Walsh to submit evidence to Defendants "showing the amount and extent of overtime he performed" for which was entitled to be compensated. OPM further declared in its decision that "[t]he agency is to review whether the claimant has worked overtime in accordance with instructions in the 'Decision' section of this decision, and if the claimant is determined to be entitled to back pay, the agency must pay the claimant the amount owed him plus interest as provided in 5 CFR 550.806. If the claimant believes the agency has incorrectly computed the amount owed him, he may file a new FLSA claim with this office."

42.     The parties have not yet agreed upon the amount of Walsh's recovery but have discussed a methodology for determining what he is owed.

43.     Michael Woodworth ("Woodworth") is a Plaintiff herein. He resides at 50 Hemlock Court, Newfields, NH 03856. He was employed as a criminal investigator by Defendants and the U.S. Customs Service, predecessor organization to DHS-CBP. Counsel for Plaintiffs filed a complaint on Woodworth's behalf on June 13, 1990, with the General Accounting Office ("GAO"), predecessor to OPM, challenging his exemption status under FLSA. On May 30, 2017, OPM granted Woodworth's claim in a decision attached hereto as Woodworth Exhibit 1. In its decision, OPM required Woodworth to submit evidence to Defendants "showing the amount and extent of overtime he performed" for which was entitled to be compensated. OPM further declared in its decision that "[t]he agency is to review whether the claimant has worked overtime in accordance with instructions in the 'Decision' section of this decision, and if the claimant is determined to be entitled to back pay, the agency must pay the claimant the amount owed him plus

interest as provided in 5 CFR 550.806. If the claimant believes the agency has incorrectly computed the amount owed him, he may file a new FLSA claim with this office."

44.     Thereafter, counsel for Plaintiffs submitted evidence on Woodworth's behalf to Defendant DHS-CBP regarding his entitlement and the parties reached agreement on March 21, 2019 on the amount of back wages and interest owed by DHS-CBP to Woodworth. However, Defendants have failed and continue to refuse to compensate Woodworth accordingly.

45.     Subsequent to OPM's decisions referred to in paragraphs 17 through 44 above which were rendered commencing May 1, 2017 through June 23, 2017, counsel for Plaintiffs submitted to Defendant DHS-CBP on August 2, 2017, back pay calculations and declarations related thereto from the Plaintiffs herein, as well as one additional similarly situated claimant named James Wetzel. On May 1, 2017, OPM had rendered a Decision on Wetzel's claim, a copy of which is attached as Wetzel Exhibit 1.

46.     Thereafter, counsel for Plaintiffs and representatives of DHS-CBP conferred seeking to ascertain the amount of back pay and interest owed to claimant Wetzel. Pursuant to these efforts, claimant Wetzel was paid back pay and interest by Defendants on August 17, 2018.

47.     Thereafter, on March 18, 2019, Defendant DHS-CBP's counsel, Frislanda Goldfelder, advised counsel for Plaintiffs by email, as follows: ". . . attached are the calculations for the employees [Plaintiffs] (except for Mr. Walsh). Please forward your electronic banking information and we can get these paid out."

48.     By email to Ms. Goldfeder, dated March 21, 2019, counsel for plaintiffs advised her as follows:

> This is to advise that we accept the calculations that you provided to us in your March 18, 2019 email. Attached is our electronic banking

information. The password will be sent in a separate email. Please note that if payment is not received before April 6, 2019, additional interest will be due. In addition, please provide us the breakdown of the payments, i.e., withholdings, prior to submitting for payment.

49.     On March 25, 2019, Ms. Goldfeder advised counsel for Plaintiffs as follows:

As you know, I took this case over from my colleague who left the agency. In doing so, I thought that the significant aspects of the case had been addressed. Upon further discussion, that was not accurate. I'm afraid I have to pull back those calculations as I cannot readily determine why the agency would be paying interest instead of liquidated damages. Interest is not authorized under the FLSA and thus, the agency is without authority to make such payments.

50.     Thereafter, on March 26, 2019, counsel for Plaintiffs, Linda Lipsett, sent an

email to Ms. Goldfeder which provided as follows:

I'm writing in response to your March 25, 2019 email in which you state that you'll have to "pull back" the calculations of back pay and interest you provided our firm for the outstanding FLSA claims of Messrs. Black, Coulon, Dick, Garrison, Gay, Hein, Hoxworth, Hunter, Johnson, Pharis and Woodworth (the claimants). This is because you "cannot readily determine why the agency would be paying interest instead of liquidated damages." You state that "[i]nterest is not authorized under the FLSA and thus, the agency is without authority to make such payments." I understand that you recently took over the handling of these claims from attorney Lindsay Solensky, who left the agency's Office of Chief Counsel last month, and that you may be unfamiliar with what is required to pay these claims in full. However, there is no doubt that the calculations of back pay with interest that the agency prepared are not only correct, but legally required. Interest, not liquidated damages, must be included in the calculation of what each claimant is due under applicable law and regulations.

By way of background, all claimants filed claims with OPM, the federal agency responsible for administering the FLSA in the federal sector. Claimants alleged they were misclassified as exempt from the FLSA during various times that they served as GS-1811 criminal investigators at Customs. As such, they sought back pay and interest under the FLSA and the Back Pay Act. Between May 11, 2017 and June 23, 2017, OPM issued decisions concluding that the claimants

were improperly considered FLSA exempt by Customs at various times between August 2, 1985 and May 21, 1992. It ordered the agency "to review whether the claimant[s] … worked overtime…and, if … [they were] determined to be entitled to back pay, **the agency must pay …[them] the amount owed… plus interest as provided in 5 CFR 550.806**." Under 5 C.F.R. § 551.708, this decision by OPM was "final…and binding on all administrative, certifying, payroll, disbursing and accounting officials of agencies…"

Therefore, the calculations of back pay and interest that you provided to us on March 18, 2019 and which we agreed were accurate, were made in accordance with OPM's authority under applicable law to render decisions on the claimants' FLSA entitlement and order payment of back pay with interest.

As to your assertion that liquidated damages are due plaintiffs in lieu of interest, that is clearly not the case for FLSA administrative claims filed with and adjudicated by OPM. That is why every agency that has paid all of the so-called "Gulf War" claimants back pay has paid such claims with interest, including your agency, which paid James
A. Wetzel in July 2018.

Please let me know if the agency will pay the claimants back pay and interest on their outstanding claims by April 6, 2019. If not, the agency will have to recalculate the interest due them because under 5 C.F.R. § 550.806(f), the agency is required to compute the amount of interest due "within 30 days of the date on which accrual of interest ends."

I am happy to discuss your concerns with you. I can be reached at 202-296-1798.

51.     On June 6, 2019, Damon B. Ford, Acting Classification Appeals and

FLSA Claims Program Manager, Agency Compliance and Evaluation, Merit System

Accountability and Compliance, United States Office of Personnel Management. sent a letter

to Ms. Frislanda S. Goldfeder, Deputy Associate Chief Counsel, Ethics, Labor, and

Employment, Office of the Chief Counsel, U.S. Customs and Border Protection, 1300

Pennsylvania     Avenue,     N.W.,     Room     4.4B,     Washington,     D.C.     20229,

Frislanda.Goldfeder@cbp.dhs.gov which provided as follows:

Dear Ms. Goldfeder:

This is in response to your March 25, 2019, email to Ms. Charlotte House and Ms. Linda Lipsett, of the law offices of Bernstein and Lipsett, P.C., who represent a group of Criminal Investigators, GS-1811, regarding Fair Labor Standards Act (FLSA) claims filed with the Office of Personnel Management (OPM). Certain claimants are former employees of the U.S. Customs Service [now Customs and Border Protection] (CBP) who were military reservists in various branches of the U.S. armed forces and served on active duty during the Gulf War. Our claim decisions in all the CBP cases found the claimants' work was FLSA nonexempt (covered by the FLSA overtime pay provisions) and thus the claimants were due back pay plus interest for the periods specified in each decision. However, you state in your email to the representatives that ". . .I cannot readily determine why the agency would be paying interest instead of liquidated damages. Interest is not authorized under the FLSA and thus, the agency is without authority to make such payments."

Under 29 U.S.C. section 216, courts are authorized to award an amount equal to unpaid minimum wages or unpaid overtime pay, and an additional equal amount as liquidated damages as a remedy in actions in which a court has found an employer to have violated the FLSA minimum wage and overtime pay provisions. OPM is authorized to adjudicate administrative claims regarding the FLSA pursuant to 29 U.S.C. 204(f) and implementing regulations at 5 CPR part 551 subpart G. OPM does not have the authority to award liquidated damages under these provisions, since that authority is reserved to the courts.

However, the Back Pay Act (5 U.S.C. 5596), applies to these decisions, and that statute requires the payment of interest on back pay. Under 5 U.S.C. 5596(b), an employee who, on the basis of a timely appeal or an administrative determination is found by appropriate authority to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of pay is entitled to receive an amount equal to all or any part of the pay the employee normally would have earned or received during the period if the personnel action had not occurred.  Further, the Back Pay Act requires any such amount awarded under its provisions to be payable with interest.  Id.

OPM has promulgated regulations consistent with these statutory requirements. 5 CFR part 550 subpart H. The implementing regulations at 5 CFR 550.S0l(a) authorize the payment of back pay, interest, and reasonable attorney fees to an employee of an agency who, on the basis of a timely appeal or an administrative determination, is found by an appropriate authority to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal, reduction, or denial of all or part of the pay, allowances, and differentials otherwise due to the employee. Provisions regarding interest computations are

- 19 -

found in 5 CFR 550.806(a)(l), which states:

> Interest begins to accrue on the date or dates (usually one or more pay days) on which the employee would have received the pay, allowance, and differentials if the unjustified or unwarranted personnel action had not occurred.

In addition, as noted in 5 CFR 550.806(c): "The agency shall compute interest on the amount of back pay computed under section 5596 of title 5, United States Code, and this subpart before making deductions for erroneous payments . . . . ."

OPM administers the FLSA for Federal employees of your agency. Accordingly, under 5 CFR 551.708, an FLSA claim decision made by OPM is final, as specified under 5 CFR 551.708(b):

> A decision by OPM under the Act is binding on all administrative, certifying, payroll, and accounting officials of agencies for which OPM administers the Act.

Therefore, CBP is required under the Back Pay Act to pay interest on any back pay owed to the claimants. Interest accrues on the date on which the former CBP employees would have received the overtime pay owed (specified in each claim decision) had their work not been erroneously designated as FLSA exempt.

I hope this information is helpful in resolving your issue concerning the payment of interest on back pay owed the claimants. Should you have any questions, I can be reached at (202) 606-2476 or email damon.ford@opm.gov.

52.     Plaintiffs have not yet been paid by Defendants.

## PLAINTIFFS' CLAIMS

## COUNT I

53.     Plaintiffs incorporate by reference herein the allegations of paragraphs 1 through 52 above.

54.     As a result of the actions and inactions of Defendants and their agents and agencies, Plaintiffs have suffered legal, financial and economic injuries, and are adversely affected and aggrieved thereby.

55.     Defendants have failed to comply with OPM's decisions relating to the

Plaintiffs and have not paid them back pay, interest, attorneys fees and costs, as required therein, and under the Equal Access to Justice Act.

<div align="center">

**COUNT II**

</div>

56.     Plaintiffs incorporate herein the allegations of paragraphs 1 through 55 above.

57.     Defendants have failed in their legal and statutory non-discretionary duties to comply with OPM's decisions involved herein and pay Plaintiffs what they are owed in accordance therewith.

**RELIEF SOUGHT**

(1)     A holding, declaration and order that Defendants' failure to abide by OPM's decisions herein are unlawful and in violation of the APA and BPA, and Defendants' statutory duties to the Plaintiffs, and Plaintiffs must be paid what is owed them by Defendants forthwith;

(2)     Awarding attorney's fees and costs to the Plaintiffs under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), on the ground that the Defendants' positions herein are not substantially justified;

(3)     Awarding Plaintiffs such other relief as this Court deems just and proper.

Respectfully submitted,

**/s/ Jules Bernstein**
Jules Bernstein - D.C. Bar No. 057513
Linda Lipsett - D.C. Bar No. 383671
Bernstein & Lipsett, P.C.
1130 Connecticut Avenue, N.W., Suite 950
Washington, D.C. 20036
(202) 296-1798
chouse@bernsteinlipsett.com

Daniel M. Rosenthal - D.C. Bar No. 1010473
James & Hoffman, P.C.
1130 Connecticut Ave., NW., Suite 950
Washington, D.C. 20036
(202) 496-0500
dmrosenthal@jamhoff.com

Attorneys for Plaintiffs

Dated:  June 24, 2019



UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
Washington, DC 20415

Merit System
Accountability and
Compliance

# U.S. Office of Personnel Management
## Fair Labor Standards Act Decision
## Under section 204(f) of title 29, United States Code

| | |
|---|---|
| **Claimant:** | Freddie J. Black |
| **Agency Classification:** | Criminal Investigator GS-1811-12/13 |
| **Organization:** | U.S. Customs Service |
| **Claim:** | Position should be nonexempt, thus due FLSA overtime pay |
| **OPM Decision:** | Nonexempt; potentially due FLSA overtime pay |
| **OPM Decision Number:** | F-1811-13-19 |

Linda Kazinetz
Classification Appeals and FLSA Claims
    Program Manager
Agency Compliance and Evaluation
Merit System Accountability and Compliance

May 30, 2019
Date

As provided in section 551.708 of title 5, Code of Federal Regulations (CFR), this decision is binding on all administrative, certifying, payroll, disbursing, and accounting officials of agencies for which the Office of Personnel Management (OPM) administers the Fair Labor Standards Act (FLSA). The agency should identify all similarly situated current and, to the extent possible, former employees, ensure that they are treated in a manner consistent with this decision, and inform them in writing of their right to file an FLSA claim with the agency or OPM. There is no further right of administrative appeal. This decision is subject to discretionary review only under conditions and time limits specified in 5 CFR 551.708 (address provided in section 551.710). The claimant has the right to bring action in the appropriate Federal court if dissatisfied with this decision.

The agency is to review whether the claimant has worked overtime in accordance with instructions in the "Decision" section of this decision, and if the claimant is determined to be entitled to back pay, the agency must pay the claimant the amount owed him plus interest as provided in 5 CFR 550.806. If the claimant believes the agency has incorrectly computed the amount owed him, he may file a new FLSA claim with this office.

## Introduction

On May 9, 2012, the U.S. Office of Personnel Management (OPM) received a letter dated May 9, 2012, from the Law Offices of Bernstein & Lipsett, P.C. (B & L), the claimant's duly appointed representative, concerning a Fair Labor Standards Act (FLSA) claim they had initially filed on the claimant's behalf with the General Accounting Office (GAO), now the U.S. Government Accountability Office, on March 11, 1994, and subsequently with OPM on or about May 7, 1999, challenging his exemption status under the FLSA when he was employed as a Criminal Investigator, GS-1811, at the GS-12 and 13 levels with the Office of the Resident Agent-in-Charge (RAC), Office of Enforcement, U.S. Customs Service (USCS), now integrated into the Department of Homeland Security (DHS), in Lafayette, Louisiana. The claimant was a plaintiff in a lawsuit filed in the U.S. Court of Federal Claims at approximately the same time the administrative claim was filed with GAO. Based on information provided by B & L, the claimant was awarded back pay under a settlement agreement for the pay period ending March 21, 1992, to the pay period ending October 29, 1994, subject to the two-year statute of limitations for FLSA claims under 29 United States Code (U.S.C.) 255(a).

B & L has requested OPM adjudicate the administrative claim filed with OPM and asserts that, because the claimant served in the military during the Gulf War, the statute of limitations applicable to this claim is the five-year statute of limitations under 31 U.S.C. 3702(b)(2) rather than the two-year statute of limitations (three years for willful violations) applicable to FLSA administrative claims filed under the Barring Act. *See* 73 Comp. Gen 157 (May 23, 1994); 31 U.S.C. 3702(b); 29 U.S.C. 255(a). B & L states the claimant was called to active duty with the United States Army Reserve "from approximately August 27, 1990 to July 7, 1991" in connection with Operation Desert Shield/Storm and, citing the provisions of 31 U.S.C. 3702(b)(2), asserts: "[H]e is entitled to retroactive back pay and interest ... for the period he was employed prior to the commencement of the Gulf War on August 2, 1990, in addition to the period he was employed by Customs after the commencement of the Gulf War, up to the date he recovered under previous FLSA settlements. This period includes April 27, 1986 to March 7, 1992, less Mr. Black's active duty military service time, for which he does not seek recovery."[1]

In reaching our FLSA claim decision, we have carefully reviewed all information furnished by the claimant's representative and the agency, including information obtained from a telephonic interview with the claimant, who retired from Federal civilian service on December 30, 2006. We also interviewed by telephone a former coworker (now retired) who worked with the claimant during part of the claim period.

## Background

We previously accepted and decided six similar claims under section 4(f) of the FLSA, as amended, codified at section 204(f) of title 29, U.S.C., which we denied as time barred. Subsequently, claimant's representative brought suit under the Administrative Procedure Act

---

[1] The claimant's Standard Form (SF) 50s documenting his employment show that from April 27, 1986, to May 23, 1987, he was employed as a Systems Accountant, GS-510-11, with the Department of Agriculture. This decision covers only his employment as a Criminal Investigator, GS-1811-12/13, with USCS.

(5 U.S.C. 551 *et seq.*, and 701 *et seq.*) in the United States District Court for the District of Columbia, alleging that OPM wrongfully applied a two-year statute of limitations in denying their administrative claims for unpaid FLSA overtime pay. *Armstrong v. Archuleta,* 77 F.Supp.3d 9 (December 30, 2014). In relevant part, the court stated in its opinion:

> All Plaintiffs are deemed to have timely filed their claims as of the date of their filings with the Claims Court. As a result, Plaintiffs can recover for the entire claim period under the five-year statute of limitations—that is, for all claims that accrued within five years before the Gulf War commenced on August 2, 1990—minus monies paid under their DOJ Settlements.

<div align="center">***************</div>

> [T]he case is remanded to OPM to adjudicate and process damages in accordance with FLSA and other applicable laws, and Plaintiffs' respective employing agencies are directed to compensate them in accordance with OPM's determinations.

Consistent with the holding in the *Armstrong* case, we will apply the five-year statute of limitations and corrective methodology (subtracting monies already received under prior settlements or judgments) to the claims of similarly-situated claimants we find to be FLSA nonexempt and potentially due FLSA overtime pay.

**Analysis**

Under the provisions of 5 CFR 551.706, OPM determines the facts necessary to adjudicate a claim. Applying the court's mandate to determine whether the claimant is owed overtime pay under the FLSA, we must first determine whether the work performed during the claim period is exempt or nonexempt from the overtime pay provisions of the FLSA. On September 29, 2015, in response to the aforementioned court decision, OPM requested an agency administrative report (AAR) from DHS regarding this FLSA claim. By letter dated October 28, 2016, DHS advised OPM that, during the claim period, GS-1811 criminal investigators ("special agents") were designated FLSA nonexempt at the GS-5 and GS-7 grade levels and FLSA exempt at the GS-9 and above levels. Additionally, DHS described the major duties and responsibilities of special agents at the GS-9, 11, and 12 grade levels as including initiating, planning, and conducting criminal and civil investigations; preparing detailed written investigative reports concerning case development and disposition; and planning, conducting, and coordinating in-depth criminal and civil investigations. However, the agency advised OPM based on their fact-finding that:

> …DHS believes that the GS-9, GS-11, and GS-12 criminal investigators should be considered non-exempt. At these grade levels, an investigator does not serve as an "advisor, assistant, or representative of management, or a specialist in a management or general business function or supporting service." 5 C.F.R. § 551.205(a) (1984). Nor do they "[s]ignificantly affect[] the formulation or execution of management policies or programs." *Id.* at § 551.205(a)(1).

Based on careful review of the record, we concur with the agency's determination and have not separately addressed the claimant's GS-12 work in this decision. The claimant is requesting compensation, less his active duty military service time,[2] for work performed while he was a Criminal Investigator, GS-1811-12, with USCS from May 24, 1987, to February 10, 1990; and from May 12, 1990, to February 23, 1991. Therefore, USCS would have been required to compensate the claimant under the overtime provisions of subpart E of part 551 of 5 CFR for work performed within the claim period; i.e., within five years before the commencement of the Gulf War on August 2, 1990, in addition to the period he was employed by USCS after the commencement of the Gulf War. In this case, because the periods listed above fall outside the time covered by the claimant's DOJ settlement agreement, they are fully covered.

The claimant is also requesting compensation for work performed while he was temporarily promoted to a Supervisory Criminal Investigator, GS-1811-13, position with USCS from February 11, 1990, to May 11, 1990, and while he occupied Criminal Investigator, GS-1811-13, positions from September 11, 1990, to January 12, 1991,[3] and from February 24, 1991, to March 7, 1992. The agency references a standard GS-13 position description (PD) (#T046034) used at the time of this claim to describe his work.[4] The agency states these Senior Special Agents were expected to take on a leadership role in coordinating and directing investigations, providing training, and advising and representing USCS management on "critical law enforcement programs involving highly important functions that influence accomplishment of objectives of the entire Customs Service" as described in the PD. The agency states that "[i]f the Senior Special Agents' position description is accurate, they could potentially qualify as exempt administrative employees." However, the agency indicates that "[a]lthough the duties described above would likely qualify as exempt work, the GS-1811-13 position description also includes a number of non-exempt duties." The agency notes these nonexempt duties include conducting "highly complex and sensitive criminal investigations." Given their assessment of the PD and the need to clarify the actual duties performed by GS-13 Senior Special Agent claimants, the agency defers to OPM to resolve their exemption status.

---

[2] The claimant's Certificate of Release or Discharge from Active Duty, DD Form 214, included with his claim shows he was in an active duty status from August 27, 1990, to July 7, 1991. However, his SF-50s show he was on leave without pay (LWOP) for military duty only from September 10, 1990, to May 19, 1991. Because the DD Form 214 is the official military record for the period of his active duty, for purposes of this claim we must assume that document is accurate and accept it as the definitive record of his military duty during the claim period.

[3] This period as a GS-1811-13 cannot be substantiated by any SF-50s and precedes the date of the claimant's official promotion to the GS-13 grade level effective February 24, 1991. Therefore, given the lack of evidence we conclude that he was actually assigned to a GS-1811-12 position during this time. Further, this entire period falls within the time he was in an LWOP status while on active duty.

[4] The claimant's SF-50 documenting his promotion effective February 24, 1991, to a Criminal Investigator, GS-1811-13, position, shows he was assigned to PD number T456034045. However, the agency was unable to provide a copy of this PD.

**Evaluation**

*Period of the claim*

While we have not specifically adjudicated the claimant's GS-12 criminal investigator work, the overall claim period and our analysis relevant to this FLSA decision covers both that period and the time he worked as a GS-13 nonsupervisory/supervisory criminal investigator covering May 24, 1987, to March 7, 1992.

**Position information**

*Criminal Investigator, GS-1811-13*

During the claim period covering February 24, 1991, to March 7, 1992, the claimant was assigned as a Senior Special Agent to the position of Criminal Investigator, GS-1811-13, with the Office of the RAC, Lafayette, Louisiana, which covered central Louisiana. For most of this time, the claimant initiated and conducted full-scale criminal investigations dealing primarily with the smuggling of illegal drugs into the U.S. from foreign countries (e.g., Columbia, Mexico) and investigated related money "laundering" activities carried out by smugglers to conceal the proceeds of drug sales. Illegal drugs were principally smuggled into the U.S. using ground transportation and were initially stored in warehouses. Subsequently, the drugs were either directly marketed or sold to major drug dealers for distribution and "retail" sale, sometimes amounting to one million dollars per month. Because the sale of illegal drugs is a "cash" business, the drug smuggling and distribution operations the claimant investigated accumulated large sums of money which could not be directly deposited into legitimate banking or other financial institutions due to Federal laws governing the reporting of large cash deposits. Consequently, drug dealers established a variety of legitimate businesses to divert and conceal their illegal earnings so profits could be legally deposited into licensed banks and other financial entities, e.g., stock brokerage firms. Businesses used to "launder" money included night clubs, limousine services, real estate firms, cleaning establishments, trucking firms, etc. As time permitted, the claimant also investigated cases concerning currency violations covering transfers of large sums of money between banking institutions by suspected illicit private parties or businesses, and cases involving fraudulent trans-shipping of commodities (e.g., overseas petroleum) originating from countries abroad covered by high U.S. tariffs, or those not permitted to directly ship to the U.S. USCS had investigative responsibility for any materials coming into the U.S. through its borders.

In performing criminal investigations, the claimant's work involved interviewing witnesses and suspects, conducting lawful searches and seizures of illicit materials, securing and serving both administrative summons and court-issued search warrants, carrying out surveillance and wire-tapping, and arresting alleged violators. He developed suspect profiles, inspected records and documents, and gathered evidence to demonstrate to the local Assistant U.S. Attorney that the elements of a crime had been committed. He was sometimes called upon to testify in U.S. Court. Knowledge required by the position included that of the laws, statutes, and regulations on which USCS enforcement authorities were based, and specific case law regarding seizures, civil rights, and preservation of evidence. The claimant worked under the general direction and policy guidance of the RAC. He developed and investigated cases from information initially provided

by informants, bank officials, USCS inspectors located at U.S. borders, local law enforcement agencies, lead information forwarded from other USCS offices, and cases directly assigned by the RAC. The claimant independently investigated his cases and provided periodic status reports to the RAC on case progress, and submitted comprehensive investigative reports to the RAC at the conclusion of each case. These narrative reports tracked the entire investigation and contained multiple exhibits and attachments supporting factual determinations that a crime had been committed.

*Supervisory Criminal Investigator, GM-1811-13*

From February 11, 1990, to May 11, 1990, the claimant received a temporary promotion to serve as an investigations unit supervisor (Supervisory Criminal Investigator, GM-1811-13) in the Investigations Group of the USCS Office of the Special Agent-In-Charge in New Orleans, Louisiana. Other than a Notification of Personnel Action (SF-50) documenting this ninety-day temporary promotion, the agency provided no information regarding the duties of the position. According to the claimant, he was temporarily assigned to the position pending arrival of the permanent supervisor from another USCS office. The claimant stated that given his expertise in doing drug smuggling and money "laundering" cases in the Lafayette RAC office, the sole purpose of his assignment was to oversee, train, and directly supervise a group of seven or eight GS-12 criminal investigators performing investigations of such cases in a geographic area designated by USCS as a High Intensity Drug Trafficking Area. The claimant's duties included reviewing, screening, and assigning cases to investigators depending on their individual levels of experience; directing and providing guidance to investigators on working their assigned cases; obtaining technical resources for particular investigations; coordinating with other Federal and local law enforcement agencies involved in drug task forces; meeting regularly with employees to discuss the status and progress of assigned cases; reviewing preliminary and final reports of investigation prepared by investigators to ensure completeness and the presence of all supporting evidence; providing input to his supervisor, the GS-14 Investigations Group Manager, on the status of the unit's investigations and employee performance; and approving employee leave.

**Evaluation of FLSA Coverage**

Under the provisions of 5 CFR 551.706, OPM determines the facts necessary to adjudicate a claim. To determine whether the claimant is owed overtime pay under the FLSA for the periods in which he served as a GS-13 nonsupervisory and supervisory criminal investigator, we must first determine whether the work performed during the claim period is exempt or nonexempt from the overtime pay provisions of the FLSA. Sections 551.201 and 551.202 of title 5, CFR, require an employing agency to designate an employee FLSA exempt only when the agency correctly determines that the employee meets one or more of the exemption criteria. In all exemption determinations, the agency must observe the following principles:

(a) Each employee is presumed to be FLSA nonexempt.

(b) Exemption criteria must be narrowly construed to apply only to those employees who are clearly within the terms and spirit of the exemption.

(c) The burden of proof rests with the agency that asserts the exemption.

(d) If there is a reasonable doubt as to whether an employee meets the criteria for exemption, the employee should be designated FLSA nonexempt.

(e) The designation of a position's FLSA status ultimately rests on the duties actually performed by the employee.

Because the claim period covers portions of 1990, 1991, and 1992, we must apply the FLSA regulations of 5 CFR part 551 (1984) in effect during the period of the claim. However, in response to a court decision, OPM amended these regulations in 1988 by eliminating the presumption that employees in positions classified at GS-11 and above were exempt from the overtime pay provisions of the FLSA, and changed the criteria for determining whether a Federal employee was an executive under the FLSA. *See* 53 *Federal Register* 1739-01 (January 22, 1988). The claimant believes his position should have been designated as non-exempt from the overtime pay provisions of the FLSA and thus not covered by the executive, administrative, or professional exemptions as detailed in 5 CFR 551.204, 5 CFR 551.205, and 5 CFR 551.206 of those regulations.

The agency indicates that due to the age of the claim, it could provide only limited information regarding the claimant's employment with USCS during the claim period. In its October 28, 2016, letter to OPM, the agency conceded that based on comparison to the administrative exemption criteria in effect during the claim period, the claimant's GS-12 criminal investigator position should be designated as FLSA nonexempt. However, the agency made no final determination on whether the claimant's GS-13 criminal investigator position met the administrative exemption criteria. The agency did not address the claimant's work or FLSA designation during the time of his temporary promotion to a supervisory GS-13 criminal investigator position. Based on careful review of the record and the claimant's assigned duties and responsibilities during the claim period, we conclude the claimant's position did not meet the professional exemption criteria, and the claimant does not disagree. However, we have evaluated his position as a nonsupervisory GS-13 criminal investigator against the administrative exemption criteria, and his temporary position as a GS-13 supervisory criminal investigator against both the executive (as amended) and administrative exemption criteria in effect during the time of the claim.

Criminal Investigator, GS-1811-13

*Administrative Exemption Criteria*

The regulation under 5 CFR 551.205 describes the administrative exemption criteria as follows:

An administrative employee is an advisor, assistant, or representative of management, or a specialist in a management or general business function or supporting service, who meets all of the following criteria:

(a) The employee's primary duty consists of work that: (1) significantly affects the formulation or execution of management policies or programs; or (2) involves general management or business functions or supporting services of substantial importance to the

organization serviced; or (3) involves substantial participation in the executive or administrative functions of a management official.

(b) The employee performs office or other predominantly non-manual work which is: (1) intellectual and varied in nature; or (2) of a specialized or technical nature that requires considerable special training, experience, and knowledge.

(c) The employee must frequently exercise discretion and independent judgment, under only general supervision, in performing the normal day-to-day work.

Although no longer in effect, the definitions of terms used in the FLSA exemption criteria as contained in the Attachment to *Federal Personnel Manual* (FPM) Letter 551-7, dated July 1, 1975, provide useful guidance in applying in particular the administrative exemption criteria in 5 CFR 551.205 discussed above. The meaning of terms relevant to the criteria follows.

(a) Primary duty. As a general rule, the primary duty is that which constitutes the major part (over 50%) of the employee's work.

(b) Formulation or execution of management policies or programs. Management policies and programs range from broad national goals that are expressed in statutes or Executive Orders to specific objectives of a small field office. Employees may actually make policy decisions or participate indirectly, through developing proposals that are acted on by others. Employees who significantly affect the execution of management policies or programs typically are those whose work involves obtaining compliance with such policies by other individuals or organizations, within or outside of the Federal Government, or making significant determinations in furtherance of the operation of programs and accomplishment of program objectives. Administrative employees engaged in formulation or execution of management policies or programs typically perform one or more phases of program management (i.e., planning, developing, promoting, coordinating, controlling, or evaluating operating programs of the employing organization or of other organizations subject to regulation or other controls). Some of these employees are classified in occupations that reflect these functions (e.g., program analyst) but many are classified in subject matter occupations.

(c) General management, business, or supporting services. This element brings into the administrative category a wide variety of specialists who provide general management, business, or other supporting services as distinguished from production functions. Administrative employees in this category provide support to line managers by: (1) providing expert advice in specialized subject matter fields, such as that provided by management consultants or systems analysts; (2) assuming facets of the overall management function, such as safety management, personnel management, or budgeting and financial management; (3) representing management in such business functions as negotiating and administering contracts, determining acceptability of goods or services, or authorizing payments; or (4) providing supporting services, such as automated data processing, communications, or procurement and distribution of supplies. To warrant exemption, each employee's work must involve substantial discretion on matters of enough importance that

the employee's actions and decisions have a noticeable impact on the effectiveness of the organization advised, represented, or serviced.

(d) Participation in the functions of a management official. This element includes those employees (variously identified as secretaries, administrative or executive assistants, aids, etc.) who participate in portions of the managerial or administrative functions of a supervisor whose scope of responsibility precludes personally attending to all aspects of the work. To support exemption, such assistants must be delegated and exercise substantial authority to act for the supervisor in the absence of specific instructions or procedures. Typically these employees do not have technical knowledge of the substantive work under the supervisor's jurisdiction. Their primary knowledge is of administrative procedures, organizational relationships, and the policies, plans, interests and views of the supervisor.

(e) Work of an intellectual nature. Work requiring general intellectual abilities, such as perceptiveness, analytical reasoning, perspective, and judgment applied to a variety of subject matter fields, or work involving mental processes which involve substantial judgment based on considering, selecting, adapting, and applying principles to numerous variables. The employee cannot rely on standardized application of established procedures or precedents, but must recognize and evaluate the effect of a continual variety of conditions or requirements in selecting, adapting, or innovating techniques and procedures, interpreting findings, and selecting and recommending the "best" alternative from among a broad range of possible actions.

(f) Work of a specialized or technical nature. Work which requires substantial specialized knowledge of a complex subject matter and of the principles, techniques, practices, and procedures associated with that subject matter field. This knowledge characteristically is acquired through considerable on-the-job training and experience in the specialized subject matter field, as distinguished from professional knowledge characteristically acquired through specialized academic education.

(g) Discretion and independent judgment. The exercise of discretion and independent judgment involves: (1) comparing and evaluating possible courses of conduct, and (2) interpreting results or implications, and independently taking action or making a decision after considering the various possibilities. However, firm commitments or final decisions are not necessary to support exemption. The "decisions" made as a result of the exercise of independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decisions are subject to review, and that on occasion the decisions are revised or reversed after review, does not mean that the employee is not exercising discretion and independent judgment of the level required for exemption.

The FPM letter lists three elements involved in the evaluation of discretion and independent judgment: (1) The work must involve sufficient variables as to regularly require discretion and judgment in determining the approaches and techniques to be used, and in evaluating results. This precludes exempting employees who perform work primarily requiring skill and applying standardized techniques or knowledge of established procedures, precedents, or other guidelines which specifically govern the employee's action. (2) The employee must have authority to make such considerations during the course of assignment. This precludes exempting trainees who are

in a line of work which requires discretion but who have not been given authority to decide discretionary matters independently. (3) The decisions made independently must be significant. Although this term is not so restrictive as to include only the kinds of decisions made by employees who formulate policies or exercise broad commitment authority, it does not extend to the kinds of decisions that affect only the procedural details of the employee's own work, or to such matters as deciding whether a situation does or does not conform to clearly applicable criteria.

The claimant's work in doing criminal investigations did not meet paragraph (a) of the administrative exemption criteria. His primary duty was not to serve as an advisor, assistant, or representative of agency management, or as a specialist in a management or general business function or supporting service. As a criminal investigator, the claimant spent all of his time investigating criminal violations of various laws governing the smuggling of illegal drugs into the U.S., the "laundering" of money accumulated from the sale of illegal drugs, and laws concerning currency violations and fraudulent shipment of commodities into the U.S.

The claimant did not meet the requirements of paragraph (a)(1) of the administrative exemption criteria. Contrary to the agency's assertion that GS-13 Special Agents advised management officials on "critical law enforcement programs involving highly important functions that influence accomplishment of objectives of the entire Customs Service," we found the claimant's primary duties did not significantly affect the formulation or execution of management policies or programs. As a field office employee assigned to the Lafayette RAC office performing the line investigative work of the Office of Enforcement, USCS, he did not make policy decisions or participate indirectly through developing proposals that were acted on by others. In addition, unlike administrative employees he did not perform any phases of program management such as planning, controlling, or evaluating operating programs.

The claimant did not meet the requirements of paragraph (a)(2) of the administrative exemption criteria. The claimant's primary duties did not involve general management or business functions or supporting services of substantial importance to the organization serviced. Rather, the claimant performed the line law enforcement work of the USCS. His tasks did not include providing general management, business, or other supporting services to line managers. He was not involved in systems analysis or general management support functions, e.g., safety management, personnel management, or budgeting and financial management. The claimant did not represent agency management in negotiating and administering contracts for goods or services, and did not provide support services, e.g., automated data processing, communications, procurement and distribution of supplies.

The claimant did not meet the requirements of paragraph (a)(3) of the administrative exemption criteria. The claimant's assignments did not involve substantial participation in the executive or administrative functions of a management official. He did not act as a secretary or administrative assistant participating in portions of the managerial or administrative functions of a supervisor, with no requirement for technical knowledge of the substantive work under the supervisor's jurisdiction. Unlike such employees, the claimant independently performed the line work of the USCS's Office of Enforcement in a field office requiring technical knowledge of substantive law enforcement and criminal investigative work relating to drug smuggling, money "laundering," and other criminal violations of laws investigated by his agency.

Under paragraph (b)(1) of the administrative exemption criteria, the claimant performed office non-manual work which was intellectual and varied in nature. In carrying out a variety of criminal investigations concerning violations of numerous laws and regulations administered by the USCS, the claimant applied perceptiveness, analytical reasoning, and judgment based on considering, selecting, adapting, and applying criminal investigative principles to numerous variables. In doing so, he determined the best approach to each case and the investigative techniques needed to substantiate it (e.g., interviews of subjects and witnesses, review of business and bank records, developing and gathering the most supportable evidence for presentation to an Assistant U.S. Attorney) in order to identify the violation and assess the scope of the illegal activity. While as a law enforcement agent he was required to abide by specific laws and USCS procedures governing the methods and collection of evidence and circumstances supporting seizures and arrests, in developing criminal cases he considered the effect of alternative investigative methods, adapting techniques and procedures as appropriate to the nature and extent of the violation.

Under paragraph (b)(2) of the administrative exemption criteria, the claimant's work as a senior criminal investigator was highly specialized and technical in nature, requiring considerable special training, experience, and knowledge. In addition to a college degree in accounting, he possessed and regularly applied specialized knowledge of the complex subject-matter field of Federal criminal investigation, including the principles, techniques, practices, and investigative procedures associated with that field. This knowledge was acquired by attending a three-month course at the Federal Law Enforcement Training Center, regular and extensive formal agency in-service training, and considerable on-the-job training and experience with the Office of Enforcement, USCS, and previous agencies, i.e., the Internal Revenue Service.

Under paragraph (c) of the administrative exemption criteria, the claimant frequently exercised discretion and independent judgment in performing investigations covering central Louisiana, under only general supervision in carrying out his normal day-to-day work. In doing so, he developed and expanded investigations, comparing and evaluating possible courses of action and necessary investigative techniques to efficiently utilize resources and achieve the goals of each investigation in proving that the elements of a crime had been committed. He interpreted results gathered from investigative lead information (e.g., informers, witnesses, bank and business records) and made decisions on subsequent investigative steps after considering the various possibilities. Since many of his cases involved numerous variables in terms of the investigative procedures needed because of the scope and complexity of the violation, he regularly applied discretion and judgment in determining approaches, techniques, and in evaluating results. As a GS-13 criminal investigator, the claimant had full authority to make such determinations during the course of investigations, consulting with his supervisor (RAC) only on the status of cases or need for additional resources. His investigative decisions were more significant than just making decisions on procedural details, or deciding whether a situation conformed to clearly applicable criteria. Although he had to follow specific legal requirements for gathering and admitting evidence, requesting search warrants, and in some cases worked closely with the Assistant U.S. Attorney in preparing evidence for prosecution, he independently made decisions on significant matters affecting case development. This included identifying the most effective investigative techniques and processes to build a thorough and comprehensive investigation supportable before a Grand Jury or Federal court.

Although the claimant's position met paragraphs (b) and (c) of the administrative exemption criteria, it failed to meet all of the required exemption criteria because it did not meet paragraph (a) of the criteria. Therefore, we conclude the claimant did not meet the administrative exemption.

Supervisory Criminal Investigator, GS-1811-13[5]

*Executive Exemption Criteria*

The regulation under 5 CFR 551.204 describes the executive exemption criteria as follows:

An "executive" employee is a supervisor, foreman, or manager who manages a Federal agency or any subdivision thereof (including the lowest recognized organizational unit with a continuing function) and regularly and customarily directs the work of at least three subordinate employees (excluding support employees) and meets all of the following criteria:

(a) The employee's primary duty consists of management or supervision. The primary duty requirement is met if the employee:

(1) Has authority to select or remove, and advance in pay and promote, or make any other status changes of subordinate employees, or has authority to suggest and recommend such actions with particular consideration given to these suggestions and recommendations; and

(2) Customarily and regularly exercises discretion and independent judgment in such activities as work planning and organization; work assignment, direction, review, and evaluation; and other aspects of management of subordinates, including personnel administration.

Similar to the executive criteria, the claimant's primary duty was to function as a supervisor over an established unit within the office of the New Orleans SAC, and regularly and customarily direct the work of seven or eight GS-12 criminal investigators. However, in contrast to paragraph (a)(1) of the executive exemption criteria, he had no authority to select or remove, and advance in pay and promote, or make any other status changes over his subordinate investigators. Moreover, the claimant stated he only worked as a technical supervisor over the investigators and had no authority to suggest and recommend such actions. He noted that authorities of this nature were retained by higher-level managers in the office, i.e., Assistant SAC and Group Managers. We were unable to confirm from any other sources whether the claimant held these authorities but, given the short duration and principal purpose of this temporary supervisory assignment, it is doubtful the agency delegated them to him during this period. In addition, because the burden of proof lies with the agency to show that a position is FLSA exempt and DHS has failed to provide any information indicating the claimant retained such authorities, we conclude the claimant did not hold any of them during this brief period.

---

[5] This temporary duty warrants application of the executive exemption under the conditions described in 5 CFR 551.208(b), i.e., the temporary duty exceeds 30 days and is exempt, and the agency has conceded that the claimant was permanently assigned to a nonexempt position prior to his temporary promotion.

The claimant's position met the requirements of paragraph (a)(2) of the executive exemption criteria. He customarily and regularly exercised discretion and independent judgment in planning and organizing the work of his unit. His extensive experience in investigating drug smuggling and money "laundering" cases enabled him to assign, direct, review, and evaluate the case work done by his subordinate GS-12 criminal investigators. In managing his subordinates, the claimant also carried out other aspects of personnel administration including approving leave and providing input on employee performance to the Group Manager.

Although the claimant's position met paragraph (a)(2) of the executive exemption criteria, it failed to meet all of the required exemption criteria because it did not meet paragraph (a)(1) of the criteria, and thus all of the conditions described in 5 CFR 551.208(b).

*Administrative Exemption Criteria*

As described under 5 CFR 551.205, an administrative employee is an advisor, assistant, or representative of management, or a specialist in a management or general business function or supporting service who meets all of the criteria listed under the administrative exemption previously addressed in this decision in our evaluation of the claimant's nonsupervisory GS-13 criminal investigative work. In applying the criteria to the position he held during his temporary promotion, we find he did not meet the primary duty requirements typical of administrative employees. During his temporary promotion, his primary duty was to function solely as the direct technical supervisor over seven or eight GS-12 criminal investigators. His work had none of the characteristics of administrative employees including: (1) significantly affecting the formulation or execution of management policies or programs; or (2) involving general management or business functions or supporting services of substantial importance to the organization serviced; or (3) involving substantial participation in the executive or administrative functions of a management official. Therefore, because the claimant's work during his temporary promotion did not meet the primary duty test of the administrative exemption criteria, we find it was not covered by the criteria.

**Decision on FLSA Coverage**

The claimant's work was nonexempt (i.e., covered by the overtime pay provisions of the FLSA), and he is entitled to compensation for all overtime hours worked at the FLSA overtime rate for the period of the claim he was improperly designated as FLSA exempt, i.e., from May 24, 1987, to March 7, 1992, less his active duty military service time from August 27, 1990, to July 7, 1991. Since his FLSA settlement was for a time period subsequent to March 7, 1992, it is not germane to the overtime pay calculations for the period of the claim covered by this decision. The agency must follow the compliance requirements on page ii of this decision.

The claimant must submit evidence showing the amount and extent of overtime that was performed as provided for in 5 CFR 551.706(a). The agency will have the opportunity to review this evidence using any other sources of information available, including witnesses, before a determination is made as to whether the claimant is entitled to any back pay under the FLSA and

any interest as required under 5 CFR part 550, subpart H.[6]  Any petition for attorney's fees and expenses must be submitted to the agency out of which this claim arose.  Should the claimant be determined to be entitled to back pay which the claimant believes to be incorrectly computed, the claimant may file a new FLSA claim with this office.

---

[6] The agency's overtime and interest calculations must account for the claimant's prior receipt of administratively uncontrollable overtime, documented as "premium pay" or "AUO" on his SF- 50s during the claim period, using the principles contained with 29 U.S.C 207(k), 5 CFR 551.501(a)(1) and (5), and 5 CFR 551.541(a).  See OPM's Fact Sheet on the topic at https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/guidance-on-applying-flsa-overtime-provisions-to-law-enforcement-employees-receiving-administratively-uncontrollable-overtime-pay/.

## Distribution

Mr. Jules Bernstein and Ms. Linda Lipsett
Law Offices
Bernstein & Lipsett, P.C.
1130 Connecticut Avenue, NW
Suite 950
Washington, DC  20036-3975
lipsett@aol.com
chouse@bernstein-lipsett.com

Mr. Freddie J. Black
18010 Elk Lake Court
Humble, TX  77346
fredjblack@yahoo.com

Ms. Deborah Eldredge
Manager, Compensation Benefits
Human Capital Policy and Programs
Office of the Chief Human Capital Officer
U.S. Department of Homeland Security
Deborah.eldredge@hq.dhs.gov

MAY 0 1 2017



UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
Washington, DC 20415

Merit System
Accountability and
Compliance

---

# U.S. Office of Personnel Management
# Fair Labor Standards Act Decision
# Under section 204(f) of title 29, United States Code

| | |
|---|---|
| **Claimant:** | Charles W. Dick |
| **Agency Classification:** | Criminal Investigator GS-1811-12 |
| **Organization:** | U.S. Customs Service |
| **Claim:** | Position should be nonexempt, thus due FLSA overtime pay |
| **OPM Decision:** | Nonexempt; potentially due FLSA overtime pay |
| **OPM Decision Number:** | F-1811-12-12 |

---

Linda Kazinetz
Classification Appeals and FLSA Claims
    Program Manager
Agency Compliance and Evaluation
Merit System Accountability and Compliance

5/1/17

Date

DICK EXHIBIT 1

As provided in section 551.708 of title 5, Code of Federal Regulations (CFR), this decision is binding on all administrative, certifying, payroll, disbursing, and accounting officials of agencies for which the Office of Personnel Management (OPM) administers the Fair Labor Standards Act (FLSA). The agency should identify all similarly situated current and, to the extent possible, former employees, ensure that they are treated in a manner consistent with this decision, and inform them in writing of their right to file an FLSA claim with the agency or OPM. There is no further right of administrative appeal. This decision is subject to discretionary review only under conditions and time limits specified in 5 CFR 551.708 (address provided in section 551.710). The claimant has the right to bring action in the appropriate Federal court if dissatisfied with this decision.

The agency is to review whether the claimant has worked overtime in accordance with instructions in the "Decision" section of this decision, and if the claimant is determined to be entitled to back pay, the agency must pay the claimant the amount owed him plus interest as provided in 5 CFR 550.806. If the claimant believes the agency has incorrectly computed the amount owed him, he may file a new FLSA claim with this office.

## Introduction

On June 4, 2012, the U.S. Office of Personnel Management (OPM) received a letter dated June 4, 2012, from the Law Offices of Bernstein & Lipsett, P.C. (B & L), the claimant's duly appointed representative, concerning a Fair Labor Standards Act (FLSA) claim they had initially filed on the claimant's behalf with the General Accounting Office (GAO), now the U.S. Government Accountability Office, on August 9, 1990, and subsequently with OPM on May 26, 1999, challenging his exemption status under the FLSA when he was employed as a Criminal Investigator, GS-1811-12, with the U.S. Customs Service (USCS), now integrated into the Department of Homeland Security (DHS). The claimant was a plaintiff in a lawsuit filed in the U.S. Court of Federal Claims at approximately the same time the administrative claim was filed with GAO. Based on information provided by B & L, the claimant was awarded back pay under a settlement agreement for the pay period ending June 3, 1989, to the pay period ending October 29, 1994, subject to the two-year statute of limitations for FLSA claims under 29 United States Code (U.S.C.) 255(a).[1]

B & L has requested OPM adjudicate the administrative claim filed with OPM and asserts that, because the claimant served in the military during the Gulf War, the statute of limitations applicable to this claim is the five-year statute of limitations under 31 U.S.C. 3702(b)(2) rather than the two-year statute of limitations (three years for willful violations) applicable to FLSA administrative claims filed under the Barring Act. *See* 73 Comp. Gen 157 (May 23, 1994); 31 U.S.C. 3702(b); 29 U.S.C. 255(a). B & L states the claimant was called to active duty with the United States Army "from approximately December 6, 1990 to July 11, 1991" in connection with Operation Desert Shield/Storm and, citing the provisions of 31 U.S.C. 3702(b)(2), asserts: "[H]e is entitled to retroactive back pay and interest … for the period he was employed prior to the commencement of the Gulf War on August 2, 1990, up to the date he recovered under previous FLSA settlements. This period includes August 2, 1985 to July 30, 1988,[2] less Mr. Dick's active duty military service time, for which he does not seek recovery."

## Background

We previously accepted and decided six similar claims under section 4(f) of the FLSA, as amended, codified at section 204(f) of title 29, U.S.C., which we denied as time barred. Subsequently, the claimant's representative brought suit under the Administrative Procedure

---

[1] In response to OPM's June 27, 2012, request for clarification regarding any additional back pay awarded the claimant, B & L explained: "For the pay period ending August 13, 1988 (which encompasses August 8, 1988) the government paid Mr. Dick for one pay period as a GS-13, step 4, (employed by [Internal Revenue Service (IRS)]) under the November 22, 2006 Settlement Agreement." B & L submitted an "FLSA Back Pay Computation" with their response, showing IRS compensated the claimant for work performed for the pay period ending August 13, 1988. However, the claimant's Standard Form 50s documenting his employment show his position with IRS terminated on May 23, 1987, when he transferred to USCS. Therefore, he was not an IRS employee for the pay period ending August 13, 1988. B & L also stated the claimant had been awarded back pay for the period August 8, 1988, to the pay period ending May 20, 1989, when he occupied a GS-12 position with USCS.

[2] The claimant was employed with USCS from May 24, 1987, to July 30, 1988.

Act (5 U.S.C. 551 *et seq.*, and 701 *et seq.*) in the United States District Court for the District of Columbia, alleging that OPM wrongfully applied a two-year statute of limitations in denying their administrative claims for unpaid FLSA overtime pay. *Armstrong v. Archuleta,* 77 F.Supp.3d 9 (December 30, 2014). In relevant part, the court stated in its opinion:

> All Plaintiffs are deemed to have timely filed their claims as of the date of their filings with the Claims Court. As a result, Plaintiffs . . . can recover for the entire claim period under the five-year statute of limitations—that is, for all claims that accrued within five years before the Gulf War commenced on August 2, 1990—minus monies paid under their DOJ Settlements.

<div align="center">***************</div>

> [T]he case is remanded to OPM to adjudicate and process damages in accordance with FLSA and other applicable laws, and Plaintiffs' respective employing agencies are directed to compensate them in accordance with OPM's determinations.

Consistent with the holding in the *Armstrong* case, we will apply the five-year statute of limitations and corrective methodology (subtracting monies already received under prior settlements or judgments) to the claims of similarly-situated claimants we find to be FLSA non-exempt and potentially due FLSA overtime pay.

**Analysis**

Under the provisions of 5 CFR 551.706, OPM determines the facts necessary to adjudicate a claim. Applying the court's mandate to determine whether the claimant is owed overtime pay under the FLSA, we must first determine whether the work performed during the claim period is exempt or nonexempt from the overtime pay provisions of the FLSA. On September 29, 2015, in response to the aforementioned court decision, OPM requested an agency administrative report (AAR) from DHS regarding this FLSA claim. By letter dated October 28, 2016, DHS advised OPM that during the claim period, GS-1811 criminal investigators ("special agents") were designated FLSA nonexempt at the GS-5 and GS-7 grade levels, and FLSA exempt at the GS-9 and above levels. DHS described the major duties and responsibilities of special agents at the GS-9, 11, and 12 grade levels as including initiating, planning, and conducting criminal and civil investigations; preparing detailed written investigative reports concerning case development and disposition; and planning, conducting, and coordinating in-depth criminal and civil investigations. However, the agency advised OPM based on their fact-finding that:

> … DHS believes that the GS-9, GS-11, and GS-12 criminal investigators should be considered non-exempt. At these grade levels, an investigator does not serve as an "advisor, assistant, or representative of management, or a specialist in a management or general business function or supporting service." 5 C.F.R. § 551.205(a) (1984). Nor do they "[s]ignificantly affect[] the formulation or execution of management policies or programs." *Id.* at § 551.205(a)(1). Further, the degree of supervision exercised over the Agents – at least at the GS-9 level – suggests that an Agent was not expected to "exercise

discretion and independent judgment, under only general supervision." 5 C.F.R.
§ 551.205(c).

Based on careful review of the record, we concur with the agency's determination. The claimant is requesting compensation for work performed from May 24, 1987, to July 30, 1988, when he was employed by USCS, less his active duty military service time.[3] Therefore, USCS would have been required to compensate the claimant under the overtime provisions of Subpart E of Part 551 of 5 CFR for work performed within the claim period; i.e., within five years before the commencement of the Gulf War on August 2, 1990, and subject to deduction for any monies paid under the claimant's DOJ settlement agreements. In this case, the entire claim period (May 24, 1987, to July 30, 1988) is covered.

**Decision**

The claimant's work is FLSA nonexempt (i.e., covered by FLSA overtime provisions), and he is entitled to compensation for all overtime hours worked at the FLSA overtime rate for the period of the claim; i.e., from May 24, 1987, to July 30, 1988. Since both his active duty military service time and his previous FLSA settlements were for time periods subsequent to July 30, 1988, they are not germane to the overtime pay calculations for the period of the claim covered by this decision. The agency must follow the compliance requirements on page ii of this decision.

The claimant must submit evidence showing the amount and extent of overtime he performed as provided for in 5 CFR 551.706(a). The agency will have the opportunity to review this evidence using any sources of information available, including witnesses, before a determination is made as to whether the claimant is entitled to any back pay under the FLSA and any interest as required under 5 CFR part 550, subpart H.[4] Any petition for attorney's fees and expenses must be submitted to the agency out of which this claim arose. Should the claimant be determined to be entitled to back pay which the claimant believes to be incorrectly computed, the claimant may file a new FLSA claim with this office.

---

[3] Although B & L states the claimant was called to active duty with the United States Army "from approximately December 6, 1990 to July 11, 1991," the claimant's Certificate of Release or Discharge from Active Duty, DD Form 214, included with his claim shows he was in an active duty status from February 1, 1991, to August 8, 1991.

[4] The agency's overtime and interest calculations must account for the claimant's prior receipt of administratively uncontrollable overtime, documented as "premium pay" on his Standard Form (SF) 50s covering the claim period, using the principles contained within 29 U.S.C. 207(k), 5 CFR 551.501(a)(1) and (5), and 5 CFR 551.541(a). OPM's Fact Sheet on the topic can be found here: https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/guidance-on-applying-flsa-overtime-provisions-to-law-enforcement-employees-receiving-administratively-uncontrollable-overtime-pay/.

## Distribution

Mr. Jules Bernstein and Ms. Linda Lipsett
Law Offices
Bernstein & Lipsett, P.C.
1130 Connecticut Avenue, NW
Suite 950
Washington, DC  20036-1798
lipsett@aol.com
chouse@bernstein-lipsett.com

Mr. Charles W. Dick
1780 W. 24th Street
Panama City, FL  32401

Ms. Deborah Eldredge
Manager, Compensation and Benefits
Human Capital Policy and Programs
Office of the Chief Human Capital Officer
U.S. Department of Homeland Security
Deborah.Eldredge@hq.dhs.gov



MAY 0 1 2017

**UNITED STATES OFFICE OF PERSONNEL MANAGEMENT**
Washington, DC 20415

Merit System
Accountability and
Compliance

---

# U.S. Office of Personnel Management
# Fair Labor Standards Act Decision
# Under section 204(f) of title 29, United States Code

|  |  |
|---|---|
| **Claimant:** | Drue B. Garrison |
| **Agency Classification:** | Criminal Investigator GS-1811-9/11 |
| **Organization:** | U.S. Customs Service |
| **Claim:** | Position should be nonexempt, thus due FLSA overtime pay |
| **OPM Decision:** | Nonexempt; potentially due FLSA overtime pay |
| **OPM Decision Number:** | F-1811-11-08 |

---

Linda Kazinetz
Classification Appeals and FLSA Claims
   Program Manager
Agency Compliance and Evaluation
Merit System Accountability and Compliance

5/1/17
Date

OPM Decision Number F-1811-11-08                                                                ii

As provided in section 551.708 of title 5, Code of Federal Regulations (CFR), this decision is binding on all administrative, certifying, payroll, disbursing, and accounting officials of agencies for which the Office of Personnel Management (OPM) administers the Fair Labor Standards Act (FLSA). The agency should identify all similarly situated current and, to the extent possible, former employees, ensure that they are treated in a manner consistent with this decision, and inform them in writing of their right to file an FLSA claim with the agency or OPM. There is no further right of administrative appeal. This decision is subject to discretionary review only under conditions and time limits specified in 5 CFR 551.708 (address provided in section 551.710). The claimant has the right to bring action in the appropriate Federal court if dissatisfied with this decision.

The agency is to review whether the claimant has worked overtime in accordance with instructions in the "Decision" section of this decision, and if the claimant is determined to be entitled to back pay, the agency must pay the claimant the amount owed him plus interest as provided in 5 CFR 550.806. If the claimant believes the agency has incorrectly computed the amount owed him, he may file a new FLSA claim with this office.

**Introduction**

On June 4, 2012, the U.S. Office of Personnel Management (OPM) received a letter dated June 4, 2012, from the Law Offices of Bernstein & Lipsett, P.C. (B & L), the claimant's duly appointed representative, concerning a Fair Labor Standards Act (FLSA) claim they had initially filed on the claimant's behalf with the General Accounting Office (GAO), now the U.S. Government Accountability Office, on May 6, 1994, and subsequently with OPM on or about September 9, 1999, challenging his exemption status under the FLSA when he was employed as a Criminal Investigator, GS-1811, at the GS-9 and GS-11 levels with the U.S. Customs Service (USCS), now integrated into the Department of Homeland Security (DHS). The claimant was a plaintiff in a lawsuit filed in the U.S. Court of Federal Claims at approximately the same time the administrative claim was filed with GAO. Based on information provided by B & L, the claimant was awarded back pay under a settlement agreement for the pay period ending March 7, 1992, to the pay period ending October 29, 1994, subject to the two-year statute of limitations for FLSA claims under 29 United States Code (U.S.C.) 255(a).

B & L has requested OPM adjudicate the administrative claim filed with OPM and asserts that, because the claimant served in the military during the Gulf War, the statute of limitations applicable to this claim is the five-year statute of limitations under 31 U.S.C. 3702(b)(2) rather than the two-year statute of limitations (three years for willful violations) applicable to FLSA administrative claims filed under the Barring Act. *See* 73 Comp. Gen 157 (May 23, 1994); 31 U.S.C. 3702(b); 29 U.S.C. 255(a). B & L states the claimant was called to active duty with the United States Army Reserve "for multiple non-consecutive periods, beginning in August 1990" in connection with Operation Desert Shield/Storm and, citing the provisions of 31 U.S.C. 3702(b)(2), asserts: "[H]e is entitled to retroactive back pay and interest … for the period he was employed prior to the commencement of the Gulf War on August 2, 1990, in addition to the period he was employed by Commerce after the commencement of the Gulf War, up to the date he recovered under previous FLSA settlements. This period includes August 2, 1985 to May 2, 1992,[1] less Mr. Garrison's active duty military service time, for which he does not seek recovery."

**Background**

We previously accepted and decided six similar claims under section 4(f) of the FLSA, as amended, codified at section 204(f) of title 29, U.S.C., which we denied as time barred. Subsequently, the claimant's representative brought suit under the Administrative Procedure Act (5 U.S.C. 551 *et seq.*, and 701 *et seq.*) in the United States District Court for the District of Columbia, alleging that OPM wrongfully applied a two-year statute of limitations in denying their administrative claims for unpaid FLSA overtime pay. *Armstrong v. Archuleta,* 77 F.Supp.3d 9 (December 30, 2014). In relevant part, the court stated in its opinion:

---

[1] Although the claim identifies the claimant's employment with USCS as being from August 2, 1985, to July 1, 1989, his Standard Form (SF) 50s documenting his employment show he was employed with USCS from August 2, 1985, to December 31, 1988, when he transferred to the Department of Commerce.

All Plaintiffs are deemed to have timely filed their claims as of the date of their filings with the Claims Court. As a result, Plaintiffs . . . can recover for the entire claim period under the five-year statute of limitations—that is, for all claims that accrued within five years before the Gulf War commenced on August 2, 1990—minus monies paid under their DOJ Settlements.

                              ***************

[T]he case is remanded to OPM to adjudicate and process damages in accordance with FLSA and other applicable laws, and Plaintiffs' respective employing agencies are directed to compensate them in accordance with OPM's determinations.

Consistent with the holding in the *Armstrong* case, we will apply the five-year statute of limitations and corrective methodology (subtracting monies already received under prior settlements or judgments) to the claims of similarly-situated claimants we find to be FLSA non-exempt and potentially due FLSA overtime pay.

**Analysis**

Under the provisions of 5 CFR 551.706, OPM determines the facts necessary to adjudicate a claim. Applying the court's mandate to determine whether the claimant is owed overtime pay under the FLSA, we must first determine whether the work performed during the claim period is exempt or nonexempt from the overtime pay provisions of the FLSA. On September 29, 2015, in response to the aforementioned court decision, OPM requested an agency administrative report (AAR) from DHS regarding this FLSA claim. By letter dated October 28, 2016, DHS advised OPM that during the claim period, GS-1811 criminal investigators ("special agents") were designated FLSA nonexempt at the GS-5 and GS-7 grade levels, and FLSA exempt at the GS-9 and above levels. DHS described the major duties and responsibilities of special agents at the GS-9, 11, and 12 grade levels as including initiating, planning, and conducting criminal and civil investigations; preparing detailed written investigative reports concerning case development and disposition; and planning, conducting, and coordinating in-depth criminal and civil investigations. However, the agency advised OPM based on their fact-finding that:

> … DHS believes that the GS-9, GS-11, and GS-12 criminal investigators should be considered non-exempt. At these grade levels, an investigator does not serve as an "advisor, assistant, or representative of management, or a specialist in a management or general business function or supporting service." 5 C.F.R. § 551.205(a) (1984). Nor do they "[s]ignificantly affect[] the formulation or execution of management policies or programs." *Id.* at § 551.205(a)(1). Further, the degree of supervision exercised over the Agents – at least at the GS-9 level – suggests that an Agent was not expected to "exercise discretion and independent judgment, under only general supervision." 5 C.F.R. § 551.205(c).

Based on careful review of the record, we concur with the agency's determination. The claimant is requesting compensation for work performed from August 2, 1985, to December 31, 1988,

when he was employed by USCS, less his active duty military service time.[2]  Therefore, USCS would have been required to compensate the claimant under the overtime pay provisions of Subpart E of Part 551 of 5 CFR for work performed within the claim period; i.e., within five years before the commencement of the Gulf War on August 2, 1990, and subject to deduction for any monies paid under the claimant's DOJ settlement agreement.  In this case, the entire claim period (August 2, 1985, to December 31, 1988) is covered.

DHS advised OPM that GS-1811 criminal investigators were considered FLSA exempt at the GS-9 and above levels during the claim period.  However, the claimant's SF-50s documenting his GS-9 position are illegible.[3]  The SF-50s documenting the GS-11 position he occupied from October 27, 1985, to December 31, 1988, show the position was designated as FLSA exempt.

**Decision**

The claimant's work is FLSA nonexempt (i.e., covered by FLSA overtime provisions), and he is entitled to compensation for all overtime hours worked at the FLSA overtime rate for the period of the claim; i.e., from August 2, 1985, to December 31, 1988.  Since both his active duty military service time and his previous FLSA settlement were for time periods subsequent to December 31, 1988, they are not germane to the overtime pay calculations for the period of the claim covered by this decision.  The agency must follow the compliance requirements on page ii of this decision.

The claimant must submit evidence showing the amount and extent of overtime that was performed as provided for in 5 CFR 551.706(a) as informed by the agency payroll records submitted to OPM and the claimant.  The agency will have the opportunity to review this evidence using any sources of information available, including witnesses, before a determination is made as to whether the claimant is entitled to any back pay under the FLSA and any interest as required under 5 CFR part 550, subpart H.[4]  Any petition for attorney's fees and expenses must be submitted to the agency out of which this claim arose.  Should the claimant be determined to be entitled to back pay which the claimant believes to be incorrectly computed, the claimant may file a new FLSA claim with this office.

---

[2] B & L's claim request states the claimant served on active duty with the U.S. Army Reserve for multiple non-consecutive periods beginning August 1990 and lists dates showing he performed a total of thirty-five multiple non-consecutive days of active duty from August 16, 1990, to December 13, 1991.  At OPM's request, the claimant provided copies of the military orders confirming all of the dates of active duty.

[3] The agency should attempt to acquire a more legible copy of the SF-50 than that contained in the case record to verify the exemption status of the claimant's GS-9 position.

[4] The agency's overtime and interest calculations must account for the claimant's prior receipt of administratively uncontrollable overtime, documented as "premium pay" on his SF 50s covering the claim period, using the principles contained within 29 U.S.C. 207(k), 5 CFR 551.501(a)(1) and (5), and 5 CFR 551.541(a).  OPM's Fact Sheet on the topic can be found here: https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/guidance-on-applying-flsa-overtime-provisions-to-law-enforcement-employees-receiving-administratively-uncontrollable-overtime-pay/.

## Distribution

Mr. Jules Bernstein and Ms. Linda Lipsett
Law Offices
Bernstein & Lipsett, P.C.
1130 Connecticut Avenue, NW
Suite 950
Washington, DC  20036-1798
lipsett@aol.com
chouse@bernstein-lipsett.com

Mr. Drue B. Garrison
3426 Forest Gale Drive
Forest Grove, OR  97116

Ms. Deborah Eldredge
Manager, Compensation and Benefits
Human Capital Policy and Programs
Office of the Chief Human Capital Officer
U.S. Department of Homeland Security
Deborah.Eldredge@hq.dhs.gov



**UNITED STATES OFFICE OF PERSONNEL MANAGEMENT**
Washington, DC 20415

Merit System
Accountability and
Compliance

<div style="border:1px solid">

# U.S. Office of Personnel Management
# Fair Labor Standards Act Decision
# Under section 204(f) of title 29, United States Code

| | |
|---|---|
| **Claimant:** | Harold B. Gay |
| **Agency Classification:** | Criminal Investigator<br>GS-1811-12 |
| **Organization:** | U.S. Customs Service |
| **Claim:** | Position should be nonexempt, thus due FLSA overtime pay |
| **OPM Decision:** | Nonexempt; potentially due FLSA overtime pay |
| **OPM Decision Number:** | F-1811-12-21 |

</div>

_for_ _Cl H_

Linda Kazinetz
Classification Appeals and FLSA Claims
    Program Manager
Agency Compliance and Evaluation
Merit System Accountability and Compliance

5/11/17

Date

GAY EXIBIT 1

As provided in section 551.708 of title 5, Code of Federal Regulations (CFR), this decision is binding on all administrative, certifying, payroll, disbursing, and accounting officials of agencies for which the Office of Personnel Management (OPM) administers the Fair Labor Standards Act (FLSA). The agency should identify all similarly situated current and, to the extent possible, former employees, ensure that they are treated in a manner consistent with this decision, and inform them in writing of their right to file an FLSA claim with the agency or OPM. There is no further right of administrative appeal. This decision is subject to discretionary review only under conditions and time limits specified in 5 CFR 551.708 (address provided in section 551.710). The claimant has the right to bring action in the appropriate Federal court if dissatisfied with this decision.

The agency is to review whether the claimant has worked overtime in accordance with instructions in the "Decision" section of this decision, and if the claimant is determined to be entitled to back pay, the agency must pay the claimant the amount owed him plus interest as provided in 5 CFR 550.806. If the claimant believes the agency has incorrectly computed the amount owed him, he may file a new FLSA claim with this office.

**Introduction**

On May 9, 2012, the U.S. Office of Personnel Management (OPM) received a letter dated May 9, 2012, from the Law Offices of Bernstein & Lipsett, P.C. (B & L), the claimant's duly appointed representative, concerning a Fair Labor Standards Act (FLSA) claim they had initially filed on the claimant's behalf with the General Accounting Office (GAO), now the U.S. Government Accountability Office, on April 10, 1992, and subsequently with OPM on September 13, 1999, challenging his exemption status under the FLSA when he was employed as a Criminal Investigator, GS-1811-12, with the U.S. Customs Service (USCS), now integrated into the Department of Homeland Security (DHS). The claimant was a plaintiff in a lawsuit filed in the U.S. Court of Federal Claims at approximately the same time the administrative claim was filed with GAO. Based on information provided by B & L, the claimant was awarded back pay under a settlement agreement for the pay period ending April 10, 1990, to the pay period ending September 4, 1993, subject to the two-year statute of limitations for FLSA claims under 29 United States Code (U.S.C.) 255(a).

B & L has requested OPM adjudicate the administrative claim filed with OPM and asserts that, because the claimant served in the military during the Gulf War, the statute of limitations applicable to this claim is the five-year statute of limitations under 31 U.S.C. 3702(b)(2) rather than the two-year statute of limitations (three years for willful violations) applicable to FLSA administrative claims filed under the Barring Act. *See* 73 Comp. Gen 157 (May 23, 1994); 31 U.S.C. 3702(b); 29 U.S.C. 255(a). B & L states the claimant was called to active duty with the United States Army/Army National Guard "from approximately September 20, 1990 to June 16, 1991" in connection with Operation Desert Shield/Storm and, citing the provisions of 31 U.S.C. 3702(b)(2), asserts: "[H]e is entitled to retroactive back pay and interest … for the period he was employed prior to the commencement of the Gulf War on August 2, 1990, up to the date he recovered under previous FLSA settlements. This period includes August 2, 1985 to April 7, 1990,[1] less Mr. Gay's active duty military service time, for which he does not seek recovery."

**Background**

We previously accepted and decided six similar claims under section 4(f) of the FLSA, as amended, codified at section 204(f) of title 29, U.S.C., which we denied as time barred. Subsequently, claimant's representative brought suit under the Administrative Procedure Act (5 U.S.C. 551 *et seq.*, and 701 *et seq.*) in the United States District Court for the District of Columbia, alleging that OPM wrongfully applied a two-year statute of limitations in denying their administrative claims for unpaid FLSA overtime pay. *Armstrong v. Archuleta*, 77 F.Supp.3d 9 (December 30, 2014). In relevant part, the court stated in its opinion:

> All Plaintiffs are deemed to have timely filed their claims as of the date of their filings with the Claims Court. As a result, Plaintiffs . . . can recover for the entire claim period under the five-year statute of limitations—that is, for all claims that accrued within five years before the Gulf War commenced on August 2, 1990—minus monies paid under their DOJ Settlements.

---

[1] The claimant was employed with USCS from November 24, 1985, to April 7, 1990.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

> [T]he case is remanded to OPM to adjudicate and process damages in accordance with FLSA and other applicable laws, and Plaintiffs' respective employing agencies are directed to compensate them in accordance with OPM's determinations.

Consistent with the holding in the *Armstrong* case, we will apply the five-year statute of limitations and corrective methodology (subtracting monies already received under prior settlements or judgments) to the claims of similarly-situated claimants we find to be FLSA non-exempt and potentially due FLSA overtime pay.

**Analysis**

Under the provisions of 5 CFR 551.706, OPM determines the facts necessary to adjudicate a claim. Applying the court's mandate to determine whether the claimant is owed overtime pay under the FLSA, we must first determine whether the work performed during the claim period is exempt or nonexempt from the overtime pay provisions of the FLSA. On September 29, 2015, in response to the aforementioned court decision, OPM requested an agency administrative report (AAR) from DHS regarding this FLSA claim. By letter dated October 28, 2016, DHS advised OPM that during the claim period, GS-1811 criminal investigators ("special agents") were designated FLSA nonexempt at the GS-5 and GS-7 grade levels, and FLSA exempt at the GS-9 and above levels. DHS described the major duties and responsibilities of special agents at the GS-9, 11, and 12 grade levels as including initiating, planning, and conducting criminal and civil investigations; preparing detailed written investigative reports concerning case development and disposition; and planning, conducting, and coordinating in-depth criminal and civil investigations. However, the agency advised OPM based on their fact-finding that:

> ... DHS believes that the GS-9, GS-11, and GS-12 criminal investigators should be considered non-exempt. At these grade levels, an investigator does not serve as an "advisor, assistant, or representative of management, or a specialist in a management or general business function or supporting service." 5 C.F.R. § 551.205(a) (1984). Nor do they "[s]ignificantly affect[] the formulation or execution of management policies or programs." *Id.* at § 551.205(a)(1).

Based on careful review of the record, we concur with the agency's determination. The claimant is requesting compensation for work performed from November 24, 1985, to April 7, 1990, less his active duty military service time.[2] Therefore, USCS would have been required to compensate the claimant under the overtime provisions of Subpart E of Part 551 of 5 CFR for work performed within the claim period; i.e., within five years before the commencement of the Gulf War on August 2, 1990, and subject to deduction for any monies paid under the claimant's DOJ settlement agreement. In this case, the entire claim period (November 24, 1985, to April 7, 1990) is covered.

---

[2] The claimant's Certificate of Release or Discharge from Active Duty, DD Form 214, included with his claim shows he was in an active duty status from September 20, 1990, to June 16, 1991.

B & L states in its claim request to OPM that the claimant occupied a Tax Examiner, GS-592-5, position with USCS from January 4, 1987, to January 2, 1988. However, in a March 24, 2017, email to OPM, B & L states the claimant "has always been an 1811." The agency was unable to provide any Standard Form (SF) 50s documenting the claimant's employment with USCS. At OPM's request to provide SF-50s relevant to the claim period, the claimant submitted an SF-50 showing his transfer to the Criminal Investigator, GS-1811-12, position with USCS effective November 24, 1985. No subsequent SF-50s were provided to show he continued occupying the position until the April 7, 1990, end of claim period. However, in his consent form to be represented by B & L, signed on March 9, 1992, the claimant indicates he occupied a GS-12 "special agent" position with USCS from 1986 to 1991.

Since neither the agency nor the claimant was able to provide us with SF-50s to verify his USCS employment throughout the entire claim period, we obtained his retirement records from OPM's Retirement Operations Center in Boyers, Pennsylvania. His completed SF-2801, Application for Immediate Retirement (Civil Service Retirement System), states he had been continuously employed with USCS from November 24, 1985, to December 8, 1990. Moreover, the accompanying retirement records supplementing his application list his service history including action types and effective dates. The retirement records identify his November 24, 1985, transfer to the USCS position, in addition to subsequent pay adjustments, realignments, and reassignments until he was placed on leave without pay status on September 20, 1990, when he served in the military during the Gulf War. The retirement records document no actions such as changes to lower grades during the period of time he would have occupied the GS-5 tax examiner position. Furthermore, the retirement records show he was receiving "25% prem pay" (i.e., administratively uncontrollable overtime (AUO)) for the entire claim period. Although the grant of AUO is not restricted to criminal investigators, it is unlikely that a GS-5 tax examiner position would meet the requirements for approval of AUO pay involving substantial amounts of irregular, unscheduled overtime work which cannot be controlled administratively. Absent an assertion to the contrary, we must conclude the claimant occupied a GS-12 criminal investigator position from November 24, 1985, to April 7, 1990.

**Decision**

The claimant's work is FLSA nonexempt (i.e., covered by FLSA overtime provisions), and he is entitled to compensation for all overtime hours worked at the FLSA overtime rate for the period of the claim he was improperly designated as FLSA exempt, i.e., from November 24, 1985, to April 7, 1990. Since both his active duty military service time and his previous FLSA settlement were for time periods subsequent to April 7, 1990, they are not germane to the overtime pay calculations for the period of the claim covered by this decision. The agency must follow the compliance requirements on page ii of this decision.

The claimant must submit evidence showing the amount and extent of overtime that was performed as provided for in 5 CFR 551.706(a). The agency will have the opportunity to review this evidence using any sources of information available, including witnesses, before a determination is made as to whether the claimant is entitled to any back pay under the FLSA and

any interest as required under 5 CFR part 550, subpart H.[3]  Any petition for attorney's fees and expenses must be submitted to the agency out of which this claim arose.  Should the claimant be determined to be entitled to back pay which the claimant believes to be incorrectly computed, the claimant may file a new FLSA claim with this office.

---

[3] The agency's overtime and interest calculations must account for the claimant's prior receipt of AUO, documented as "premium pay" on his SF-50 covering the claim period, using the principles contained within 29 U.S.C. 207(k), 5 CFR 551.501(a)(1) and (5), and 5 CFR 551.541(a).  OPM's Fact Sheet on the topic can be found here: https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/guidance-on-applying-flsa-overtime-provisions-to-law-enforcement-employees-receiving-administratively-uncontrollable-overtime-pay/.

## Distribution

Mr. Jules Bernstein and Ms. Linda Lipsett
Law Offices
Bernstein & Lipsett, P.C.
1130 Connecticut Avenue, NW
Suite 950
Washington, DC  20036-1798
lipsett@aol.com
chouse@bernstein-lipsett.com

Mr. Harold B. Gay
15521 River Bend Trail
Lanexa, VA  23089

Ms. Deborah Eldredge
Manager, Compensation and Benefits
Human Capital Policy and Programs
Office of the Chief Human Capital Officer
U.S. Department of Homeland Security
Deborah.Eldredge@hq.dhs.gov



**UNITED STATES OFFICE OF PERSONNEL MANAGEMENT**
Washington, DC 20415

Merit System
Accountability and
Compliance

---

# U.S. Office of Personnel Management
# Fair Labor Standards Act Decision
# Under section 204(f) of title 29, United States Code

|  |  |
|---|---|
| **Claimant:** | John F. Hein |
| **Agency Classification:** | Criminal Investigator<br>GS-1811-12/13 |
| **Organization:** | U.S. Customs Service |
| **Claim:** | Position should be nonexempt, thus due FLSA overtime pay |
| **OPM Decision:** | Nonexempt; potentially due FLSA overtime pay |
| **OPM Decision Number:** | F-1811-13-22 |

---

Linda Kazinetz
Classification Appeals and FLSA Claims
   Program Manager
Agency Compliance and Evaluation
Merit System Accountability and Compliance

6/7/17
Date

As provided in section 551.708 of title 5, Code of Federal Regulations (CFR), this decision is binding on all administrative, certifying, payroll, disbursing, and accounting officials of agencies for which the Office of Personnel Management (OPM) administers the Fair Labor Standards Act (FLSA). The agency should identify all similarly situated current and, to the extent possible, former employees, ensure that they are treated in a manner consistent with this decision, and inform them in writing of their right to file an FLSA claim with the agency or OPM. There is no further right of administrative appeal. This decision is subject to discretionary review only under conditions and time limits specified in 5 CFR 551.708 (address provided in section 551.710). The claimant has the right to bring action in the appropriate Federal court if dissatisfied with this decision.

The agency is to review whether the claimant has worked overtime in accordance with instructions in the "Decision" section of this decision, and if the claimant is determined to be entitled to back pay, the agency must pay the claimant the amount owed him plus interest as provided in 5 CFR 550.806. If the claimant believes the agency has incorrectly computed the amount owed him, he may file a new FLSA claim with this office.

**Introduction**

On May 9, 2012, the U.S. Office of Personnel Management (OPM) received a letter dated May 9, 2012, from the Law Offices of Bernstein & Lipsett, P.C. (B & L), the claimant's duly appointed representative, concerning a Fair Labor Standards Act (FLSA) claim they had initially filed on the claimant's behalf with the General Accounting Office (GAO), now the U.S. Government Accountability Office, on April 17, 1990, and subsequently with OPM on October 21, 1999, challenging his exemption status under the FLSA when he was employed as a Criminal Investigator, GS-1811, at the GS-12 and 13 levels with the Office of the Special Agent-in-Charge (SAC), Office of Enforcement, U.S. Customs Service (USCS), now integrated into the Department of Homeland Security (DHS), in Miami, Florida. The claimant was a plaintiff in a lawsuit filed in the U.S. Court of Federal Claims at approximately the same time the administrative claim was filed with GAO. Based on information provided by B & L, the claimant was awarded back pay under a settlement agreement for the pay period ending April 23, 1988, to the pay period ending June 1, 1991, subject to the two-year statute of limitations for FLSA claims under 29 United States Code (U.S.C.) 255(a).

B & L has requested OPM adjudicate the administrative claim filed with OPM and asserts that, because the claimant served in the military during the Gulf War, the statute of limitations applicable to this claim is the five-year statute of limitations under 31 U.S.C. 3702(b)(2) rather than the two-year statute of limitations (three years for willful violations) applicable to FLSA administrative claims filed under the Barring Act. *See* 73 Comp. Gen 157 (May 23, 1994); 31 U.S.C. 3702(b); 29 U.S.C. 255(a). B & L states the claimant was called to active duty with the United States Air Force Reserve "from approximately October 21, 1990, to November 2, 1990"[1] in connection with Operation Desert Shield/Storm and, citing the provisions of 31 U.S.C. 3702(b)(2), asserts: "[H]e is entitled to retroactive back pay and interest … for the period he was employed prior to the commencement of the Gulf War on August 2, 1990, up to the date he recovered under previous FLSA settlements. This period includes August 2, 1985, to April 9, 1988, less Mr. Hein's active duty military service time, for which he does not seek recovery."[2]

In reaching our FLSA claim decision, we have carefully reviewed all information furnished by the claimant's representative and the agency, including information obtained from a telephonic interview with the claimant, who retired from Federal civilian service on November 3, 2001. We also interviewed by telephone a former supervisor (now retired) who supervised the claimant during part of the claim period.

**Background**

We previously accepted and decided six similar claims under section 4(f) of the FLSA, as amended, codified at section 204(f) of title 29, U.S.C., which we denied as time barred. Subsequently, the claimant's representative brought suit under the Administrative Procedure Act (5 U.S.C. 551 *et seq.*, and 701 *et seq.*) in the United States District Court for the District of Columbia, alleging that OPM wrongfully applied a two-year statute of limitations in denying

---

[1] These dates are verified in the claimant's Certificate of Release or Discharge from Active Duty (DD 214) contained in the record.

[2] The claimant was employed with USCS from March 30, 1986, to April 9, 1988.

their administrative claims for unpaid FLSA overtime pay. *Armstrong v. Archuleta,* 77
F.Supp.3d 9 (December 30, 2014). In relevant part, the court stated in its opinion:

> All Plaintiffs are deemed to have timely filed their claims as of the date of their filings
> with the Claims Court. As a result, Plaintiffs can recover for the entire claim period
> under the five-year statute of limitations—that is, for all claims that accrued within five
> years before the Gulf War commenced on August 2, 1990—minus monies paid under
> their DOJ Settlements.

<center>***************</center>

> [T]he case is remanded to OPM to adjudicate and process damages in accordance with
> FLSA and other applicable laws, and Plaintiffs' respective employing agencies are
> directed to compensate them in accordance with OPM's determinations.

Consistent with the holding in the *Armstrong* case, we will apply the five-year statute of
limitations and corrective methodology (subtracting monies already received under prior
settlements or judgments) to the claims of similarly-situated claimants we find to be FLSA
nonexempt and potentially due FLSA overtime pay.

**Analysis**

Under the provisions of 5 CFR 551.706, OPM determines the facts necessary to adjudicate a
claim. Applying the court's mandate to determine whether the claimant is owed overtime pay
under the FLSA, we must first determine whether the work performed during the claim period is
exempt or nonexempt from the overtime pay provisions of the FLSA. On September 29, 2015,
in response to the aforementioned court decision, OPM requested an agency administrative
report (AAR) from DHS regarding this FLSA claim. By letter dated October 28, 2016, DHS
advised OPM that GS-1811 criminal investigators ("special agents") were designated FLSA
nonexempt at the GS-5 and GS-7 grade levels, and FLSA exempt at the GS-9 and above levels.
Additionally, DHS described the major duties and responsibilities of special agents at the GS-9,
11, and 12 grade levels as including initiating, planning, and conducting criminal and civil
investigations; preparing detailed written investigative reports concerning case development and
disposition; and planning, conducting, and coordinating in-depth criminal and civil
investigations. However, the agency advised OPM based on their fact-finding that:

> … DHS believes that the GS-9, GS-11, and GS-12 criminal investigators should be
> considered non-exempt. At these grade levels, an investigator does not serve as an
> "advisor, assistant, or representative of management, or a specialist in a management or
> general business function or supporting service. 5 C.F.R. § 551.205(a) (1984). Nor do
> they "[s]ignificantly affect[] the formulation or execution of management policies or
> programs." *Id.* at § 551.205(a)(1).

Based on careful review of the record, we concur with the agency's determination and have not
separately addressed the GS-12 work in this decision. The claimant is requesting compensation,
less his active duty military service time, for work performed while he was a Criminal

Investigator, GS-1811-12, with USCS from March 30, 1986, to January 30, 1988.[3]  Therefore, USCS would have been required to compensate the claimant under the overtime provisions of Subpart E of Part 551 of 5 CFR for work performed within the claim period; i.e., within five years before the commencement of the Gulf War on August 2, 1990, in addition to the period he was employed by USCS after the commencement of the Gulf War.  In this case, because the period listed above falls outside the time covered by the claimant's DOJ settlement agreement, it is fully covered.

The claimant is also requesting compensation for work performed while he was a Criminal Investigator, GS-1811-13, from January 31, 1988, to April 9, 1988.  The agency references a standard GS-13 position description (PD) (#T046034) to which the claimant was assigned at the time of this claim to describe the work of GS-13 criminal investigators.  The agency states that these Senior Special Agents were expected to take on a leadership role in coordinating and directing investigations, providing training, and advising and representing USCS management on "critical law enforcement programs involving highly important functions that influence accomplishment of objectives of the entire Customs Service" as described in the PD.  The agency states that "[i]f the Senior Special Agents' position description is accurate, they could potentially qualify as exempt administrative employees."  However, the agency indicates that "[a]lthough the duties described above would likely qualify as exempt work, the GS-1811-13 position description also includes a number of nonexempt duties."  The agency notes these nonexempt duties include conducting "highly complex and sensitive criminal investigations." Given their assessment of the PD and the need to clarify the actual duties performed by GS-13 Senior Special Agent claimants, the agency defers to OPM to resolve their exemption status.

**Evaluation**

*Period of the claim*

While we have not specifically adjudicated the claimant's GS-12 criminal investigator work with USCS, the overall claim period and our analysis relevant to this FLSA decision covers both that period and the time he worked as a GS-13 criminal investigator covering March 30, 1986, to April 9, 1988.

---

[3] These dates were verified in our review of the claimant's retirement records referenced below. The claimant's employment history provided by B & L in the original claim indicates he was employed as a Data Transcriber, GS-356-2, from January 4, 1987, to January 2, 1988.  However, in a March 2, 2016, email to OPM the representative corrected the record indicating the claimant was a GS-12 criminal investigator during that period, and attached a copy of a Notification of Personnel Action (SF-50) and an Annual Performance Plan and Appraisal Form 188 to document his position at the time.  In addition, based on our review of the claimant's retirement records, which we obtained from OPM's Retirement Operations Center - Boyers, Pennsylvania, we found no evidence he had a significant loss in pay from a GS-12 to GS-2 during that period.  Moreover, the claimant stated he never served in such a position.  Therefore, we conclude the information in the original claim was in error.

**Position information**

During the claim period covering January 31, 1988, to April 9, 1988, the claimant was assigned as a Criminal Investigator, GS-1811-13, with the Office of the SAC, in Miami, Florida. At that time, he was detailed to work with the Florida Joint Task Group (FJTG) headed by the U.S. Drug Enforcement Administration (DEA) located in Dade County, Florida, to investigate the smuggling of illegal substances by criminal organizations into the U.S. through several local airports including the Miami International Airport and Tamiami Airport, which is a terminal for small planes. The FJTG office was divided into several work groups composed of both DEA and USCS criminal investigators who reported to their respective agency group supervisors in the office. During this detail the claimant worked in both the passenger and cargo groups. He initiated and conducted criminal investigations dealing with the smuggling of illegal drugs on airline passengers, in their luggage, or in airplane cargo into the U.S. from foreign countries (e.g., Columbia, Venezuela, Bolivia, Panama, and Jamaica). Most cases were initiated from information provided by USCS inspectors working at the airports who alerted the claimant of suspicious passenger behavior, baggage, or cargo. Occasionally, the claimant was also provided with information directly from DEA offices in the foreign countries regarding suspected drug smugglers traveling to the U.S.

In cases involving suspected drug smuggling by passengers, the claimant interviewed suspects to determine their point-of-origin and where drugs were to be delivered (e.g., particular hotels or houses), and tried to gather information identifying the narcotics smuggling and distribution organization. When passengers were willing to cooperate with the claimant in pursuing the investigation, he set up a "controlled delivery" allowing passengers to complete their delivery of smuggled narcotics to the appointed destination. The individual was kept under surveillance to gather more information on the drug organization and expand the investigation. If passengers were unwilling to cooperate, the claimant presented them with seized evidence found either on their persons or in luggage and arrested them for narcotics smuggling under title 21, United States Code. Suspects were arraigned by an Assistant U.S. Attorney for the Southern District of Florida before a U.S. Magistrate and, depending on their plea, held for trial or sentencing. In cases of narcotics smuggled in airline cargo (e.g., 55 gallon barrels of fruit, boxes of fresh flowers), the claimant participated with other investigators in a "controlled delivery" including surveillance of the pick-up and delivery of cargo, and gathered information through various records to identity conspirators, suspects, and criminal organizations in order to develop the investigation.

In performing criminal investigations, the claimant's work involved interviewing witnesses and suspects, conducting lawful searches and seizures of smuggled narcotics, securing and serving court-issued search warrants and subpoenas, carrying out surveillance and wire-tapping, and arresting alleged violators. He developed suspect profiles, inspected records and documents, and gathered evidence to demonstrate to the local Assistant U.S. Attorney that the elements of a crime had been committed. He was sometimes called upon to testify at the trial of suspects in a U.S. Court regarding the gathering of evidence, explain the type of illegal substance, and describe the chronology and elements of his investigation. Knowledge required by the position included that of the laws, statutes, and regulations on which USCS enforcement authorities were based, and specific case law regarding seizures, civil rights, and preservation of evidence. The claimant worked under the general direction and policy guidance of his group manager at the

FJTG. The claimant independently investigated his cases and provided periodic status reports to his supervisor on case progress, and submitted comprehensive Reports of Investigation (ROI) to him at the conclusion of each case. These narrative reports tracked the entire investigation and contained multiple exhibits and attachments supporting factual determinations that a crime had been committed.

**Evaluation of FLSA Coverage**

Under the provisions of 5 CFR 551.706, OPM determines the facts necessary to adjudicate a claim. To determine whether the claimant is owed overtime pay under the FLSA for the periods in which he served as a GS-13 criminal investigator, we must first determine whether the work performed during the claim period is exempt or nonexempt from the overtime pay provisions of the FLSA. Sections 551.201 and 551.202 of title 5, CFR, require an employing agency to designate an employee FLSA exempt only when the agency correctly determines that the employee meets one or more of the exemption criteria. In all exemption determinations, the agency must observe the following principles: (a) Each employee is presumed to be FLSA nonexempt. (b) Exemption criteria must be narrowly construed to apply only to those employees who are clearly within the terms and spirit of the exemption. (c) The burden of proof rests with the agency that asserts the exemption. (d) If there is a reasonable doubt as to whether an employee meets the criteria for exemption, the employee should be designated FLSA nonexempt. (e) The designation of a position's FLSA status ultimately rests on the duties actually performed by the employee.

Because the claim period covers two months in 1988, we must apply the FLSA regulations of 5 CFR part 551 (1984) in effect during the period of the claim. However, in response to a court decision, OPM amended these regulations in 1988 by eliminating the presumption that employees in positions classified at GS-11 and above were exempt from the overtime pay provisions of the FLSA, and changed the criteria for determining whether a Federal employee was an executive under the FLSA. *See* 53 *Federal Register* 1739-01 (January 22, 1988). The claimant believes his position should have been designated as nonexempt from the overtime pay provisions of the FLSA and thus not covered by the executive, administrative, or professional exemptions as detailed in 5 CFR 551.204, 5 CFR 551.205, and 5 CFR 551.206 of those regulations.

The agency indicates that due to the age of the claim, it could provide only limited information regarding the claimant's employment with USCS during the claim period. In its October 28, 2016, letter to OPM, the agency conceded that based on comparison to the administrative exemption criteria in effect during the claim period, the claimant's GS-12 criminal investigator position should be designated as FLSA nonexempt. However, the agency made no final determination on whether the claimant's GS-13 criminal investigator position met the administrative exemption criteria. Based on careful review of the record and the claimant's assigned duties and responsibilities during the claim period, we conclude the claimant's position did not meet the professional or executive exemption criteria, and the claimant does not disagree. Therefore, we have evaluated his position as a GS-13 criminal investigator solely against the administrative exemption criteria.

Administrative Exemption Criteria

The regulation under 5 CFR 551.205 describes the administrative exemption criteria as follows:

An administrative employee is an advisor, assistant, or representative of management, or a specialist in a management or general business function or supporting service, who meets all of the following criteria:

(a) The employee's primary duty consists of work that: (1) significantly affects the formulation or execution of management policies or programs; or (2) involves general management or business functions or supporting services of substantial importance to the organization serviced; or (3) involves substantial participation in the executive or administrative functions of a management official.

(b) The employee performs office or other predominantly non-manual work which is: (1) intellectual and varied in nature; or (2) of a specialized or technical nature that requires considerable special training, experience, and knowledge.

(c) The employee must frequently exercise discretion and independent judgment, under only general supervision, in performing the normal day-to-day work.

Although no longer in effect, the definitions of terms used in the FLSA exemption criteria as contained in the Attachment to *Federal Personnel Manual* (FPM) Letter 551-7, dated July 1, 1975, provide useful guidance in applying in particular the administrative exemption criteria in 5 CFR 551.205 discussed above. The meaning of terms relevant to the criteria follows.

(a) <u>Primary duty</u>. As a general rule, the primary duty is that which constitutes the major part (over 50%) of the employee's work.

(b) <u>Formulation or execution of management policies or programs</u>. Management policies and programs range from broad national goals that are expressed in statutes or Executive Orders to specific objectives of a small field office. Employees may actually make policy decisions or participate indirectly, through developing proposals that are acted on by others. Employees who significantly affect the execution of management policies or programs typically are those whose work involves obtaining compliance with such policies by other individuals or organizations, within or outside of the Federal Government, or making significant determinations in furtherance of the operation of programs and accomplishment of program objectives. Administrative employees engaged in formulation or execution of management policies or programs typically perform one or more phases of program management (i.e., planning, developing, promoting, coordinating, controlling, or evaluating operating programs of the employing organization or of other organizations subject to regulation or other controls). Some of these employees are classified in occupations that reflect these functions (e.g., program analyst) but many are classified in subject matter occupations.

(c) <u>General management, business, or supporting services</u>. This element brings into the administrative category a wide variety of specialists who provide general management,

business, or other supporting services as distinguished from production functions. Administrative employees in this category provide support to line managers by: (1) providing expert advice in specialized subject matter fields, such as that provided by management consultants or systems analysts; (2) assuming facets of the overall management function, such as safety management, personnel management, or budgeting and financial management; (3) representing management in such business functions as negotiating and administering contracts, determining acceptability of goods or services, or authorizing payments; or (4) providing supporting services, such as automated data processing, communications, or procurement and distribution of supplies. To warrant exemption, each employee's work must involve substantial discretion on matters of enough importance that the employee's actions and decisions have a noticeable impact on the effectiveness of the organization advised, represented, or serviced.

(d) <u>Participation in the functions of a management official</u>. This element includes those employees (variously identified as secretaries, administrative or executive assistants, aids, etc.) who participate in portions of the managerial or administrative functions of a supervisor whose scope of responsibility precludes personally attending to all aspects of the work. To support exemption, such assistants must be delegated and exercise substantial authority to act for the supervisor in the absence of specific instructions or procedures. Typically these employees do not have technical knowledge of the substantive work under the supervisor's jurisdiction. Their primary knowledge is of administrative procedures, organizational relationships, and the policies, plans, interests and views of the supervisor.

(e) <u>Work of an intellectual nature</u>. Work requiring general intellectual abilities, such as perceptiveness, analytical reasoning, perspective, and judgment applied to a variety of subject matter fields, or work involving mental processes which involve substantial judgment based on considering, selecting, adapting, and applying principles to numerous variables. The employee cannot rely on standardized application of established procedures or precedents, but must recognize and evaluate the effect of a continual variety of conditions or requirements in selecting, adapting, or innovating techniques and procedures, interpreting findings, and selecting and recommending the "best" alternative from among a broad range of possible actions.

(f) <u>Work of a specialized or technical nature</u>. Work which requires substantial specialized knowledge of a complex subject matter and of the principles, techniques, practices, and procedures associated with that subject matter field. This knowledge characteristically is acquired through considerable on-the-job training and experience in the specialized subject matter field, as distinguished from professional knowledge characteristically acquired through specialized academic education.

(g) <u>Discretion and independent judgment</u>. The exercise of discretion and independent judgment involves: (1) comparing and evaluating possible courses of conduct, and (2) interpreting results or implications, and independently taking action or making a decision after considering the various possibilities. However, firm commitments or final decisions are not necessary to support exemption. The "decisions" made as a result of the exercise of independent judgment may consist of recommendations for action rather than the

actual taking of action. The fact that an employee's decisions are subject to review, and that on occasion the decisions are revised or reversed after review, does not mean that the employee is not exercising discretion and independent judgment of the level required for exemption.

The FPM letter lists three elements involved in the evaluation of discretion and independent judgment: (1) The work must involve sufficient variables as to regularly require discretion and judgment in determining the approaches and techniques to be used, and in evaluating results. This precludes exempting employees who perform work primarily requiring skill and applying standardized techniques or knowledge of established procedures, precedents, or other guidelines which specifically govern the employee's action. (2) The employee must have authority to make such considerations during the course of assignment. This precludes exempting trainees who are in a line of work which requires discretion but who have not been given authority to decide discretionary matters independently. (3) The decisions made independently must be significant. Although this term is not so restrictive as to include only the kinds of decisions made by employees who formulate policies or exercise broad commitment authority, it does not extend to the kinds of decisions that affect only the procedural details of the employee's own work, or to such matters as deciding whether a situation does or does not conform to clearly applicable criteria.

The claimant's work in doing criminal investigations did not meet paragraph (a) of the administrative exemption criteria. His primary duty was not to serve as an advisor, assistant, or representative of agency management, or as a specialist in a management or general business function or supporting service. As a criminal investigator, the claimant spent all of his time investigating criminal violations of various laws governing the smuggling of illegal drugs and substances into the U.S.

The claimant did not meet the requirements of paragraph (a)(1) of the administrative exemption criteria. Contrary to the agency's assertion that GS-13 Special Agents advised management officials on "critical law enforcement programs involving highly important functions that influence accomplishment of objectives of the entire Customs Service," we found the claimant's primary duties did not significantly affect the formulation or execution of management policies or programs. As a field office employee assigned to the Miami SAC and FJTG offices performing the line investigative work of the Office of Enforcement, USCS, he did not make policy decisions or participate indirectly through developing proposals that were acted on by others. In addition, unlike administrative employees he did not perform any phases of program management such as planning, controlling, or evaluating operating programs.

The claimant did not meet the requirements of paragraph (a)(2) of the administrative exemption criteria. The claimant's primary duties did not involve general management or business functions or supporting services of substantial importance to the organization serviced. Rather, the claimant performed the line law enforcement work of the USCS. His tasks did not include providing general management, business, or other supporting services to line managers. He was not involved in systems analysis or general management support functions, e.g., safety management, personnel management, or budgeting and financial management. The claimant did not represent agency management in negotiating and administering contracts for goods or

services, and did not provide support services, e.g., automated data processing, communications, procurement and distribution of supplies.

The claimant did not meet the requirements of paragraph (a)(3) of the administrative exemption criteria. His assignments did not involve substantial participation in the executive or administrative functions of a management official. He did not act as a secretary or administrative assistant participating in portions of the managerial or administrative functions of a supervisor, with no requirement for technical knowledge of the substantive work under the supervisor's jurisdiction. Unlike such employees, the claimant independently performed the line work of the USCS's Office of Enforcement in a field office requiring technical knowledge of substantive law enforcement and criminal investigative work relating to drug smuggling.

Under paragraph (b)(1) of the administrative exemption criteria, the claimant performed office non-manual work which was intellectual and varied in nature. In carrying out a variety of criminal investigations concerning violations of numerous laws and regulations administered by the USCS, the claimant applied perceptiveness, analytical reasoning, and judgment based on considering, selecting, adapting, and applying criminal investigative principles to numerous variables. In doing so, he determined the best approach to each case and investigative techniques needed to substantiate it. These included interviews of subjects and witnesses, and reviews of passenger travel and phone records, cargo manifests, and business and bank records, to develop and gather the most supportable evidence for presentation to an Assistant U.S. Attorney in order to identify the violation and assess the scope of the illegal activity. While as a law enforcement agent he was required to abide by specific laws and USCS and DEA procedures governing the methods and collection of evidence and circumstances supporting seizures and arrests, in developing criminal cases he considered the effect of alternative investigative methods, adapting techniques and procedures as appropriate to the nature and extent of the violation.

Under paragraph (b)(2) of the administrative exemption criteria, the claimant's work as a senior criminal investigator was highly specialized and technical in nature, requiring considerable special training, experience, and knowledge. He possessed and regularly applied specialized knowledge of the complex subject-matter field of Federal criminal investigation, including the laws, principles, techniques, practices, and investigative procedures associated with that field. This knowledge was acquired through regular and extensive formal USCS in-service training, considerable on-the-job training and experience with the Office of Enforcement, training seminars presented by the DEA, and attendance at training while employed at previous agencies, i.e., the Internal Revenue Service, Department of Treasury.

Under paragraph (c) of the administrative exemption criteria, the claimant frequently exercised discretion and independent judgment in performing investigations covering Dade County, under only general supervision in carrying out his normal day-to-day work. In doing so, he developed and expanded investigations, comparing and evaluating possible courses of action and necessary investigative techniques to efficiently utilize resources and achieve the goals of each investigation in proving that the elements of a crime had been committed. He interpreted results gathered from investigative lead information (e.g., suspects, witnesses, phone, travel, cargo shipment, bank, and business records) and made decisions on subsequent investigative steps after considering the various possibilities. Since many of his cases involved numerous variables in terms of the investigative procedures needed because of the scope and complexity of the

violation, he regularly applied discretion and judgment in determining approaches, techniques, and in evaluating results. As a GS-13 criminal investigator, the claimant had full authority to make such determinations during the course of investigations, consulting with his group supervisor only on the status of cases or need for additional resources. His investigative decisions were more significant than just making decisions on procedural details, or deciding whether a situation conformed to clearly applicable criteria. Although he had to follow specific legal requirements for gathering and admitting evidence, requesting search warrants and subpoenas, and worked closely with the Assistant U.S. Attorney in preparing evidence for prosecution, he independently made decisions on significant matters affecting case development. This included identifying the most effective investigative techniques and processes to build a thorough and comprehensive investigation supportable before a Federal court.

Although the claimant's position met paragraphs (b) and (c) of the administrative exemption criteria, it failed to meet all of the required exemption criteria because it did not meet paragraph (a) of the criteria. Therefore, we conclude the claimant did not meet the administrative exemption.

**Decision on FLSA Coverage**

The claimant's work was nonexempt (i.e., covered by the overtime pay provisions of the FLSA), and he is entitled to compensation for all overtime hours worked at the FLSA overtime rate for the period of the claim he was improperly designated as FLSA exempt, i.e., from March 30, 1986, to April 9, 1988. Since both the claimant's active duty military service and his previous FLSA settlement were for time periods subsequent to April 9, 1988, they are not germane to the overtime pay calculations for the period of the claim covered by this decision. The agency must follow the compliance requirements on page ii of this decision.

The claimant must submit evidence showing the amount and extent of overtime that was performed as provided for in 5 CFR 551.706(a). The agency will have the opportunity to review this evidence using any other sources of information available, including witnesses, before a determination is made as to whether the claimant is entitled to any back pay under the FLSA and any interest as required under 5 CFR part 550, subpart H.[4] Any petition for attorney's fees and expenses must be submitted to the agency out of which this claim arose. Should the claimant be determined to be entitled to back pay which the claimant believes to be incorrectly computed, the claimant may file a new FLSA claim with this office.

---

[4] The agency's overtime and interest calculations must account for the claimant's prior receipt of administratively uncontrollable overtime documented as "AUO" on his SF- 50 during the claim period, using the principles contained within 29 U.S.C 207(k), 5 CFR 551.501(a)(1) and (5), and 5 CFR 551.541(a). See OPM's Fact Sheet on the topic at https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/guidance-on-applying-flsa-overtime-provisions-to-law-enforcement-employees-receiving-administratively-uncontrollable-overtime-pay/.

## Distribution

Mr. Jules Bernstein and Ms. Linda Lipsett
Law Offices
Bernstein & Lipsett, P.C.
1130 Connecticut Avenue, NW
Suite 950
Washington, DC  20036-3975
lipsett@aol.com
chouse@bernstein-lipsett.com

Mr. John F. Hein
638 Shasteen Bend Drive
Winchester, TN  37398
customshein@gmail.com

Ms. Deborah Eldredge
Manager, Compensation Benefits
Human Capital Policy and Programs
Office of the Chief Human Capital Officer
U.S. Department of Homeland Security
Deborah.eldredge@hq.dhs.gov



UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
Washington, DC 20415

Merit System
Accountability and
Compliance

---

# U.S. Office of Personnel Management
## Fair Labor Standards Act Decision
## Under section 204(f) of title 29, United States Code

|  |  |
|---:|:---|
| **Claimant:** | Terry L. Hoxworth |
| **Agency Classification:** | Customs Patrol Officer, GS-1884-12<br>Criminal Investigator, GS-1811-12/13 |
| **Organization:** | U.S. Customs Service |
| **Claim:** | Position should be nonexempt, thus due FLSA overtime pay. |
| **OPM Decision:** | Denied as time barred for part of the claim period; nonexempt and potentially due FLSA overtime pay for remainder of the claim period |
| **OPM Decision Number:** | F-1811-13-23 |

---

Linda Kazinetz
Classification Appeals and FLSA Claims
   Program Manager
Agency Compliance and Evaluation
Merit System Accountability and Compliance

6/19/17

Date

As provided in section 551.708 of title 5, Code of Federal Regulations (CFR), this decision is binding on all administrative, certifying, payroll, disbursing, and accounting officials of agencies for which the Office of Personnel Management (OPM) administers the Fair Labor Standards Act (FLSA). The agency should identify all similarly situated current and, to the extent possible, former employees, ensure that they are treated in a manner consistent with this decision, and inform them in writing of their right to file an FLSA claim with the agency or OPM. There is no further right of administrative appeal. This decision is subject to discretionary review only under conditions and time limits specified in 5 CFR 551.708 (address provided in section 551.710). The claimant has the right to bring action in the appropriate Federal court if dissatisfied with this decision.

The agency is to review whether the claimant has worked overtime in accordance with instructions in the "Decision" section of this decision, and if the claimant is determined to be entitled to back pay, the agency must pay the claimant the amount owed him plus interest as provided in 5 CFR 550.806. If the claimant believes the agency has incorrectly computed the amount owed him, he may file a new FLSA claim with this office.

## Introduction

On May 9, 2012, the U.S. Office of Personnel Management (OPM) received a letter dated
May 9, 2012, from the Law Offices of Bernstein & Lipsett, P.C. (B & L), the claimant's duly
appointed representative, concerning a Fair Labor Standards Act (FLSA) claim they had
initially filed on the claimant's behalf with the General Accounting Office (GAO), now the
U.S. Government Accountability Office, on October 2, 1992, and subsequently with OPM on
September 9, 1999, challenging his exemption status under the FLSA when he was employed
as a Criminal Investigator, GS-1811, at the GS-12 and GS-13 levels with the Office of the
Resident Agent-in-Charge (RAC), Office of Enforcement, U.S. Customs Service (USCS), in
Belle Chase, Louisiana. According to his employment history furnished with his claim, during
the claim period the claimant also occupied a Customs Patrol Officer, GS-1884-12, with USCS,
now integrated into the Department of Homeland Security (DHS). The claimant was a plaintiff
in a lawsuit filed in the U.S. Court of Federal Claims (CFC) at approximately the same time the
administrative claim was filed with GAO. Based on information provided by B & L, the
claimant was awarded back pay under a settlement agreement for the pay period ending
October 6, 1990, to the pay period ending October 29, 1994, subject to the two-year statute of
limitations for FLSA claims under 29 United States Code (U.S.C.) 255(a).

B & L has requested OPM adjudicate the administrative claim filed with OPM and asserts that,
because the claimant served in the military during the Gulf War, the statute of limitations
applicable to this claim is the five-year statute of limitations under 31 U.S.C. 3702(b)(2) rather
than the two-year statute of limitations (three years for willful violations) applicable to FLSA
administrative claims filed under the Barring Act. *See* 73 Comp. Gen 157 (May 23, 1994);
31 U.S.C. 3702(b); 29 U.S.C. 255(a). B & L states the claimant was called to active duty with
the United States Marine Corps Reserve "from approximately January 11, 1991, to May 22,
1991,"[1] in connection with Operation Desert Shield/Storm and, citing the provisions of
31 U.S.C. 3702(b)(2), asserts: "[H]e is entitled to retroactive back pay and interest ... for the
period he was employed prior to the commencement of the Gulf War on August 2, 1990, in
addition to the period he was employed by Customs after the commencement of the Gulf War
up to the date he recovered under previous FLSA settlements. This period includes August 2,
1985 to September 22, 1990, less Mr. Hoxworth's active duty military service time, for which
he does not seek recovery."

In reaching our FLSA decision, we have carefully reviewed all information furnished by the
claimant's representative and the agency, including information obtained from a telephonic
interview with the claimant, who retired from Federal civilian service on January 1, 2000. We
also interviewed by telephone a former coworker (now retired) who worked with the claimant
during the claim period.

---

[1] These dates are verified in the claimant's Certificate of Release or Discharge from Active Duty
(DD 214) contained in the record.

## Background

We previously accepted and decided six similar claims under section 4(f) of the FLSA, as amended, codified at section 204(f) of title 29, U.S.C., which we denied as time barred. Subsequently, the claimant's representative brought suit under the Administrative Procedure Act (5 U.S.C. 551 *et seq.*, and 701 *et seq.*) in the United States District Court for the District of Columbia, alleging that OPM wrongfully applied a two-year statute of limitations in denying their administrative claims for unpaid FLSA overtime pay. *Armstrong v. Archuleta*, 77 F.Supp.3d 9 (December 30, 2014). In relevant part, the court stated in its opinion:

> All Plaintiffs are deemed to have timely filed their claims as of the date of their filings with the Claims Court. As a result, Plaintiffs . . . can recover for the entire claim period under the five-year statute of limitations—that is, for all claims that accrued within five years before the Gulf War commenced on August 2, 1990—minus monies paid under their DOJ Settlements.

<p align="center">***************</p>

> [T]he case is remanded to OPM to adjudicate and process damages in accordance with FLSA and other applicable laws, and Plaintiffs' respective employing agencies are directed to compensate them in accordance with OPM's determinations.

Consistent with the holding in the *Armstrong* case, we will apply the five-year statute of limitations and corrective methodology (subtracting monies already received under prior settlements or judgments) to the claims of similarly-situated claimants we find to be FLSA nonexempt and potentially due FLSA overtime pay.

## Analysis

### *Customs Patrol Officer, GS-1884-12 (August 2, 1985, to June 7, 1986)[2]*

The complaint filed in a lawsuit before the CFC on October 2, 1992, in which the claimant was identified as a plaintiff states, in relevant part:

> 1.  This civil action is brought on behalf of several classes of present and former employees of the United States of America ... who have been employed previously or presently in the Department of Treasury, ... and/or other agencies of defendant as special agents, criminal investigators, and other positions, to recover from defendant

---

[2] Although the claim indicates the claimant held a GS-1884-13 position from August 4, 1985, to June 7, 1986, the case record does not substantiate that information. His employment history included in the claim shows he was a GS-1884-12 during that time and received a within-grade-increase on August 4, 1985, but not a promotion. In addition, the claimant's Individual Retirement Record (SF-2806) obtained from OPM's Retirement Operations Center - Boyers, Pennsylvania, shows no promotion during that time. Therefore, we conclude the claimant was a GS-1884-12 during this entire period.

> back pay, liquidated damages, interest, attorney's fees and costs, pursuant to the
> [FLSA] ....

In addition, B & L's October 2, 1992, claim filed with the GAO states:

> The undersigned are attorneys representing one hundred and eighty-five (185) present
> and former Special Agents employed by the ... Customs Service ... United States
> Department of Treasury, and/or other federal agencies. We are filing claims herewith on
> behalf of these individuals ("claimants") with the [GAO], seeking back pay and other
> compensation and benefits due and owing to claimants under the [FLSA] ....

The October 2, 1992, complaint filed before the CFC and the claim filed with GAO challenge the
FLSA exemption status of positions identified as "special agents, criminal investigators, and
other positions" in the former and as "Special Agents" in the latter filing. The GAO claim
specifically limits the claim to "Special Agents" and does not include Customs Patrol Officers.
Therefore, the GS-1884 portion of the claim was not preserved by the GAO filing. The CFC
complaint references "other positions" which could be construed as including Customs Patrol
Officers. However, the time period within which a claim must be received under the
administrative claims process in 31 U.S.C. 3702 is based upon the claim being "received by the
official responsible ... for settling the claim or by the agency that conducts the activity from
which the claim arises ...." Therefore, a court filing with CFC does not preserve an
administrative claim under 31 U.S.C. 3702.

On May 9, 2012, OPM received a letter from B & L concerning the FLSA claim filed on the
claimant's behalf, stating:

> Terry L. Hoxworth began his employment with the federal government as a GS-1884
> Customs Patrol Officer with the [USCS] on January 19, 1984. He began his employment
> as a GS-1811 criminal investigator with Customs on June 8, 1986. An administrative
> claim was filed October 2, 1992, on his behalf seeking back pay alleging violations of the
> [FLSA] .... Specifically, Mr. Hoxworth claims he was improperly classified as exempt
> from the FLSA overtime pay provisions or otherwise did not receive overtime pay
> consistent with the requirements of the law.[3]

Since the claimant served in the military during the Gulf War, we applied the statute of
limitations applicable to this situation under 31 U.S.C. 3702(b)(2), which states:

> When the claim of a member of the armed forces accrues during war or within 5 years
> before war begins, the claim must be received within 5 years after peace is established or
> within the period provided in paragraph (1) of this subsection, whichever is later.

Consistent with 31 U.S.C. 3702(b)(2), this claim must have been received by February 28, 1996,
which is five years after peace in the Gulf War was established on February 28, 1991. Since

---

[3] Although DHS requested a copy of the claimant's archived Official Personnel Folder (OPF) to
verify his Federal employment with USCS, the OPF could not be located.

OPM did not receive the claim concerning the exemption status of the claimant's GS-1884 position until May 9, 2012, this condition is not met. The alternative date referenced under 31 U.S.C. 3702(b)(2) would require the claim to have been received within the period described under 31 U.S.C. 3702(b)(1), which, as previously cited, states, "The claim must be received by the official responsible for settling the claim or by the agency that conducts the activity from which the claim arises within 6 years after the claim accrues ...." Since the claimant seeks FLSA overtime pay from August 2, 1985, to June 7, 1986, the claim must have been received by June 7, 1992, which is six years after the claim accrued, in order to meet the terms of this provision. This condition is also not met. However, the later date provided by 31 U.S.C. 3702(b)(2) is controlling. Therefore, any claim for FLSA overtime pay for work performed during the period of the claim when the claimant was employed as a GS-1884-12 (August 2, 1985, to June 7, 1986) is time barred under 31 U.S.C. 3702(b) and thus denied.[4]

### *Criminal Investigator, GS-1811-11/12 (June 8, 1986, to February 11, 1989)*

Under the provisions of 5 CFR 551.706, OPM determines the facts necessary to adjudicate a claim. Applying the court's mandate to determine whether the claimant is owed overtime pay under the FLSA, we must first determine whether the work performed during the claim period is exempt or nonexempt from the overtime pay provisions of the FLSA. On September 29, 2015, in response to the aforementioned court decision, OPM requested an agency administrative report (AAR) from DHS regarding this FLSA claim. By letter dated October 28, 2016, DHS advised OPM that GS-1811 criminal investigators ("special agents") were designated FLSA nonexempt at the GS-5 and GS-7 grade levels, and FLSA exempt at the GS-9 and above levels. Additionally, DHS described the major duties and responsibilities of special agents at the GS-9, 11, and 12 grade levels as including initiating, planning, and conducting criminal and civil investigations; preparing detailed written investigative reports concerning case development and disposition; and planning, conducting, and coordinating in-depth criminal and civil investigations. However, the agency advised OPM based on their fact-finding that:

> … DHS believes that the GS-9, GS-11, and GS-12 criminal investigators should be considered nonexempt. At these grade levels, an investigator does not serve as an "advisor, assistant, or representative of management, or a specialist in a management or general business function or supporting service. 5 C.F.R. § 551.205(a) (1984). Nor do they "[s]ignificantly affect[] the formulation or execution of management policies or programs." *Id.* at § 551.205(a)(1).

Based on careful review of the record, we concur with the agency's determination and have not separately addressed the GS-11 and GS-12 work in this decision. The claimant is requesting compensation, less his active duty military service time, for work performed while he was a Criminal Investigator, GS-1811-11, with USCS from June 8, 1986, to June 20, 1987; and when he was a GS-1811-12 from June 21, 1987, to May 30, 1988, and from January 1, 1989, to

---

[4] These dates are partially confirmed by the claimant's Individual Retirement Record (SF-2806) obtained from OPM's Retirement Operations Center - Boyers, which shows a change-to-lower-grade action on June 8, 1986, presumably when the claimant was reassigned from a GS-1884-12 position to a GS-1811-11 position as indicated in the claim. In addition, the claimant confirmed he was Customs Patrol Officer, GS-1884, during this period.

February 11, 1989.[5]  Therefore, USCS would have been required to compensate the claimant under the overtime provisions of subpart E of part 551 of 5 CFR for work performed within the claim period; i.e., within five years before the commencement of the Gulf War on August 2, 1990, in addition to the period he was employed by USCS after the commencement of the Gulf War.  In this case, because the periods listed above fall outside the time covered by the claimant's DOJ settlement agreement, they are fully covered.

In addition to the period in question discussed in a previous footnote to this decision, the claimant is also requesting compensation for work performed while he was a Criminal Investigator, GS-1811-13, from February 12, 1989, to September 22, 1990.  The agency references a standard GS-13 position description (PD) (#T046034) to describe the work of GS-13 criminal investigators.  While there is no available record to show the claimant's assignment to this PD, the agency states that these Senior Special Agents were expected to take on a leadership role in coordinating and directing investigations, providing training, and advising and representing USCS management on "critical law enforcement programs involving highly important functions that influence accomplishment of objectives of the entire Customs Service" as described in the PD.  The agency states that "[i]f the Senior Special Agents' position description is accurate, they could potentially qualify as exempt administrative employees."  However, the agency indicates that "[a]lthough the duties described above would likely qualify as exempt work, the GS-1811-13 position description also includes a number of nonexempt duties."  The agency notes these nonexempt duties include conducting "highly complex and sensitive criminal investigations."  Given their assessment of the PD and the need to clarify the actual duties performed by GS-13 Senior Special Agent claimants, the agency defers to OPM to resolve their exemption status.

### *Criminal Investigator, GS-1811-13 (February 12, 1989, to September 22, 1990)*

#### *Position information*

During the claim period covering February 12, 1989, to September 22, 1990, the claimant was assigned as a Criminal Investigator, GS-1811-13, functionally called a Customs Air Officer, with the Aviation Group in the Office of the RAC, in Belle Chase.  The air operations of the RAC covered five states including Louisiana, Mississippi, Alabama, Tennessee, and Arkansas.  The claimant was primarily assigned to conduct criminal investigations in Louisiana and Mississippi on the smuggling of illegal drugs into the U.S. transported in privately owned aircraft from countries in Central and South America.  Investigations stemmed from assignments by the RAC.

---

[5] The claimant's employment history provided by B & L in their May 9, 2012, claim indicates he was employed as a Criminal Investigator, GS-1811-13, from May 31, 1988, to December 31, 1988.  However, his official Individual Retirement Record (SF-2806) obtained from OPM's Retirement Operations Center - Boyers, shows no evidence of a significant increase in pay from GS-12 to GS-13 until his promotion to that grade on February 12, 1989.  Neither the claimant nor DHS could provide any documentation such as copies of Notification of Personnel Action (SF-50) to substantiate the claimant was assigned to a GS-1811-13 position during that time, and the claimant stated he was not assigned to a GS-1811-13 position during that period.  Therefore, we conclude the information in his original claim is in error and for purposes of this decision we are treating his work during that period as GS-1811-12.

leads developed by the claimant, and information initially provided by the claimant's contacts in the Mississippi Bureau of Narcotics and Louisiana State Police. He also received investigative leads from confidential informants, referrals from other USCS field offices, local airport authorities and aircraft company owners, and staff of the Federal Aviation Administration (FAA). In doing preliminary investigations to identify suspected aircraft smuggling operations, the claimant frequently visited local airports, hangars, and aircraft maintenance companies to examine aircraft and review flight records; performed background checks on aircraft owners and the history and purchase of their aircraft; and identified their businesses, income, and reviewed their public records. He also extensively used the agency's automated Treasury Enforcement Communications System to gather information on the frequency of individual border crossings of suspects, including identifying their ports of entry into the U.S., and reviewed their financial data. One typical indicator of aircraft potentially being outfitted or "rigged" for smuggling consisted of removal of all passenger seats and deflation of fuel pods to make space for storage and transport of smuggled cargo. These changes were particularly suspicious if they had not been registered with the FAA. In situations where particular aircraft appeared to be used for drug smuggling, the claimant obtained a Federal court order authorizing surreptitious placement of a transponder device on the aircraft to electronically track its location in the U.S. by emitting a signal transmitted to FAA aircraft control towers. Upon illegal entry of the aircraft into the U.S., the FAA notified the claimant who immediately pulled together a team of armed Air Interdiction Officers to follow and intercept the aircraft and force it to land. The "take down" usually consisted of two aircraft with one of them carrying the claimant. Smuggled drugs were seized, suspects interviewed and arrested, and further work done to expand the investigation to identify the smuggling organization, distributors, and principal subjects including those financing the operation. Smugglers were arraigned by an Assistant U.S. Attorney in Louisiana before a Federal judge and, depending on their plea, held for trial or sentencing. In some cases, aircraft pilots and crew were willing to cooperate with the claimant in exchange for reduced jail time. In these situations, the claimant set up a "controlled delivery" allowing the smugglers to complete their delivery of the smuggled drugs to the appointed destination. These deliveries required surveillance and gathering of additional records to identify conspirators, suspects, financial backers, and criminal drug smuggling networks/organizations.

In performing criminal investigations, the claimant's work involved interviewing witnesses and suspects; conducting lawful searches and seizures of smuggled narcotics; securing and serving court-issued search warrants and subpoenas to review bank, business, and phone records; reviewing aircraft purchase and travel histories; and carrying out surveillance and arresting alleged violators. He developed suspect profiles, inspected records and documents, and gathered evidence to demonstrate to the local Assistant U.S. Attorney that the elements of a crime had been committed. He was sometimes called upon to testify at the trial of suspects in a U.S. Court regarding the gathering of evidence, to explain the type of illegal substance, and to describe the chronology of events and elements of his investigation. Knowledge required by the position included that of the laws, statutes, and regulations on which USCS enforcement authorities were based, and specific case law regarding seizures, civil rights, and preservation of evidence. The claimant worked under the general direction and policy guidance of the RAC. He independently investigated his cases and provided periodic status reports to his supervisor on case progress, and submitted comprehensive Reports of Investigation (ROI) to him at the conclusion of each case. These narrative reports tracked the entire investigation and contained multiple exhibits and attachments supporting factual determinations that a crime had been committed.

*Evaluation of FLSA Coverage*

Under the provisions of 5 CFR 551.706, OPM determines the facts necessary to adjudicate a claim. To determine whether the claimant is owed overtime pay under the FLSA for the periods in which he served as a GS-13 criminal investigator, we must first determine whether the work performed during the claim period is exempt or nonexempt from the overtime pay provisions of the FLSA. Sections 551.201 and 551.202 of title 5, CFR, require an employing agency to designate an employee FLSA exempt only when the agency correctly determines that the employee meets one or more of the exemption criteria. In all exemption determinations, the agency must observe the following principles:

(a) Each employee is presumed to be FLSA nonexempt.

(b) Exemption criteria must be narrowly construed to apply only to those employees who are clearly within the terms and spirit of the exemption.

(c) The burden of proof rests with the agency that asserts the exemption.

(d) If there is a reasonable doubt as to whether an employee meets the criteria for exemption, the employee should be designated FLSA nonexempt.

(e) The designation of a position's FLSA status ultimately rests on the duties actually performed by the employee.

Because the claim period when the claimant was a Criminal Investigator, GS-1811-13, covers portions of 1989 and 1990, we must apply the FLSA regulations of 5 CFR part 551 (1984) and those published in 1990 in effect during the period of the claim. However, in response to a court decision, OPM amended the 1984 regulations in 1988 by eliminating the presumption that employees in positions classified at GS-11 and above were exempt from the overtime pay provisions of the FLSA, and changed the criteria for determining whether a Federal employee was an executive under the FLSA. *See* 53 *Federal Register* 1739-01 (January 22, 1988). The claimant believes his position should have been designated as nonexempt from the overtime pay provisions of the FLSA and thus not covered by the executive, administrative, or professional exemptions as detailed in 5 CFR 551.204, 5 CFR 551.205, and 5 CFR 551.206 of those regulations.

The agency indicates that due to the age of the claim, it could provide only limited information regarding the claimant's employment with USCS during the claim period. In its October 28, 2016, letter to OPM, the agency conceded that based on comparison to the administrative exemption criteria in effect during the claim period, the claimant's GS-11/12 criminal investigator positions should be designated as FLSA nonexempt. However, the agency made no final determination on whether the claimant's GS-13 criminal investigator position met the administrative exemption criteria. Based on careful review of the record and the claimant's assigned duties and responsibilities during the claim period, we conclude the claimant's position did not meet the professional or executive exemption criteria, and the claimant does not disagree. Therefore, we have evaluated his position as a GS-13 criminal investigator solely against the administrative exemption criteria.

Administrative Exemption Criteria

The regulation under 5 CFR 551.205 describes the administrative exemption criteria as follows:

An administrative employee is an advisor, assistant, or representative of management, or a specialist in a management or general business function or supporting service, who meets all of the following criteria:

(a) The employee's primary duty consists of work that: (1) significantly affects the formulation or execution of management policies or programs; or (2) involves general management or business functions or supporting services of substantial importance to the organization serviced; or (3) involves substantial participation in the executive or administrative functions of a management official.

(b) The employee performs office or other predominantly non-manual work which is: (1) intellectual and varied in nature; or (2) of a specialized or technical nature that requires considerable special training, experience, and knowledge.

(c) The employee must frequently exercise discretion and independent judgment, under only general supervision, in performing the normal day-to-day work.

Although no longer in effect, the definitions of terms used in the FLSA exemption criteria as contained in the Attachment to *Federal Personnel Manual* (FPM) Letter 551-7, dated July 1, 1975, provide useful guidance in applying in particular the administrative exemption criteria in 5 CFR 551.205 discussed above. The meaning of terms relevant to the criteria follows.

(a) Primary duty. As a general rule, the primary duty is that which constitutes the major part (over 50%) of the employee's work.

(b) Formulation or execution of management policies or programs. Management policies and programs range from broad national goals that are expressed in statutes or Executive Orders to specific objectives of a small field office. Employees may actually make policy decisions or participate indirectly, through developing proposals that are acted on by others. Employees who significantly affect the execution of management policies or programs typically are those whose work involves obtaining compliance with such policies by other individuals or organizations, within or outside of the Federal Government, or making significant determinations in furtherance of the operation of programs and accomplishment of program objectives. Administrative employees engaged in formulation or execution of management policies or programs typically perform one or more phases of program management (i.e., planning, developing, promoting, coordinating, controlling, or evaluating operating programs of the employing organization or of other organizations subject to regulation or other controls). Some of these employees are classified in occupations that reflect these functions (e.g., program analyst) but many are classified in subject matter occupations.

(c) General management, business, or supporting services. This element brings into the administrative category a wide variety of specialists who provide general management,

business, or other supporting services as distinguished from production functions. Administrative employees in this category provide support to line managers by: (1) providing expert advice in specialized subject matter fields, such as that provided by management consultants or systems analysts; (2) assuming facets of the overall management function, such as safety management, personnel management, or budgeting and financial management; (3) representing management in such business functions as negotiating and administering contracts, determining acceptability of goods or services, or authorizing payments; or (4) providing supporting services, such as automated data processing, communications, or procurement and distribution of supplies. To warrant exemption, each employee's work must involve substantial discretion on matters of enough importance that the employee's actions and decisions have a noticeable impact on the effectiveness of the organization advised, represented, or serviced.

(d) Participation in the functions of a management official. This element includes those employees (variously identified as secretaries, administrative or executive assistants, aids, etc.) who participate in portions of the managerial or administrative functions of a supervisor whose scope of responsibility precludes personally attending to all aspects of the work. To support exemption, such assistants must be delegated and exercise substantial authority to act for the supervisor in the absence of specific instructions or procedures. Typically these employees do not have technical knowledge of the substantive work under the supervisor's jurisdiction. Their primary knowledge is of administrative procedures, organizational relationships, and the policies, plans, interests and views of the supervisor.

(e) Work of an intellectual nature. Work requiring general intellectual abilities, such as perceptiveness, analytical reasoning, perspective, and judgment applied to a variety of subject matter fields, or work involving mental processes which involve substantial judgment based on considering, selecting, adapting, and applying principles to numerous variables. The employee cannot rely on standardized application of established procedures or precedents, but must recognize and evaluate the effect of a continual variety of conditions or requirements in selecting, adapting, or innovating techniques and procedures, interpreting findings, and selecting and recommending the "best" alternative from among a broad range of possible actions.

(f) Work of a specialized or technical nature. Work which requires substantial specialized knowledge of a complex subject matter and of the principles, techniques, practices, and procedures associated with that subject matter field. This knowledge characteristically is acquired through considerable on-the-job training and experience in the specialized subject matter field, as distinguished from professional knowledge characteristically acquired through specialized academic education.

(g) Discretion and independent judgment. The exercise of discretion and independent judgment involves: (1) comparing and evaluating possible courses of conduct, and (2) interpreting results or implications, and independently taking action or making a decision after considering the various possibilities. However, firm commitments or final decisions are not necessary to support exemption. The "decisions" made as a result of the exercise of independent judgment may consist of recommendations for action rather than the

actual taking of action. The fact that an employee's decisions are subject to review, and that on occasion the decisions are revised or reversed after review, does not mean that the employee is not exercising discretion and independent judgment of the level required for exemption.

The FPM letter lists three elements involved in the evaluation of discretion and independent judgment: (1) The work must involve sufficient variables as to regularly require discretion and judgment in determining the approaches and techniques to be used, and in evaluating results. This precludes exempting employees who perform work primarily requiring skill and applying standardized techniques or knowledge of established procedures, precedents, or other guidelines which specifically govern the employee's action. (2) The employee must have authority to make such considerations during the course of assignment. This precludes exempting trainees who are in a line of work which requires discretion but who have not been given authority to decide discretionary matters independently. (3) The decisions made independently must be significant. Although this term is not so restrictive as to include only the kinds of decisions made by employees who formulate policies or exercise broad commitment authority, it does not extend to the kinds of decisions that affect only the procedural details of the employee's own work, or to such matters as deciding whether a situation does or does not conform to clearly applicable criteria.

The claimant's work doing criminal investigations did not meet paragraph (a) of the administrative exemption criteria. His primary duty was not to serve as an advisor, assistant, or representative of agency management, or as a specialist in a management or general business function or supporting service. As a criminal investigator, the claimant spent all of his time investigating criminal violations of various laws governing the smuggling of illegal drugs and substances into the U.S.

The claimant did not meet the requirements of paragraph (a)(1) of the administrative exemption criteria. Contrary to the agency's assertion that GS-13 Special Agents advised management officials on "critical law enforcement programs involving highly important functions that influence accomplishment of objectives of the entire Customs Service," we found the claimant's primary duties did not significantly affect the formulation or execution of management policies or programs. As a field office employee assigned to the RAC office in Belle Chase performing the line investigative work of the Office of Enforcement, USCS, he did not make policy decisions or participate indirectly through developing proposals that were acted on by others. In addition, unlike administrative employees he did not perform any phases of program management such as planning, controlling, or evaluating operating programs.

The claimant did not meet the requirements of paragraph (a)(2) of the administrative exemption criteria. His primary duties did not involve general management or business functions or supporting services of substantial importance to the organization serviced. Rather, the claimant performed the line law enforcement work of the USCS. His tasks did not include providing general management, business, or other supporting services to line managers. He was not involved in systems analysis or general management support functions, e.g., safety management, personnel management, or budgeting and financial management. The claimant did not represent agency management in negotiating and administering contracts for goods or services, and did not

provide support services, e.g., automated data processing, communications, procurement, and distribution of supplies.

The claimant did not meet the requirements of paragraph (a)(3) of the administrative exemption criteria. His assignments did not involve substantial participation in the executive or administrative functions of a management official. He did not act as a secretary or administrative assistant participating in portions of the managerial or administrative functions of a supervisor, with no requirement for technical knowledge of the substantive work under the supervisor's jurisdiction. Unlike such employees, the claimant independently performed the line work of the USCS's Office of Enforcement in a field office requiring technical knowledge of substantive law enforcement and criminal investigative work relating to drug smuggling.

Under paragraph (b)(1) of the administrative exemption criteria, the claimant performed office non-manual work which was intellectual and varied in nature. In carrying out a variety of criminal investigations concerning violations of numerous laws and regulations administered by USCS, the claimant applied perceptiveness, analytical reasoning, and judgment based on considering, selecting, adapting, and applying criminal investigative principles to numerous variables. In doing so, he determined the best approach to each case and the investigative techniques needed to substantiate it. These included interviews of subjects and witnesses, reviews of aircraft history, and suspects' travel, phone, business and bank records to develop and gather the most supportable evidence for presentation to an Assistant U.S. Attorney in order to identify the violation and assess the scope of the illegal activity. While as a law enforcement agent he was required to abide by specific laws and USCS procedures governing the methods and collection of evidence and circumstances supporting seizures and arrests, in developing criminal cases he considered the effect of alternative investigative methods, adapting techniques and procedures as appropriate to the nature and extent of the violation.

Under paragraph (b)(2) of the administrative exemption criteria, the claimant's work as a senior criminal investigator was highly specialized and technical in nature, requiring considerable special training, experience, and knowledge. He possessed and regularly applied specialized knowledge of the complex subject-matter field of Federal criminal investigation, including the laws, principles, techniques, practices, and investigative procedures associated with that field. This knowledge was acquired through regular and extensive formal USCS in-service training, attendance at the Federal Law Enforcement Training Center, two weeks of training at the Drug Enforcement Administration drug interdiction course, and considerable on-the-job training and experience with the Office of Enforcement.

Under paragraph (c) of the administrative exemption criteria, the claimant frequently exercised discretion and independent judgment in performing investigations, under only general supervision in carrying out his normal day-to-day work. In doing so, he developed and expanded investigations, comparing and evaluating possible courses of action and necessary investigative techniques to efficiently utilize resources and achieve the goals of each investigation in proving that the elements of a crime had been committed. He interpreted results gathered from investigative lead information (e.g., suspects, witnesses, phone, aircraft, travel, bank, and business records) and made decisions on subsequent investigative steps after considering the various possibilities. Since many of his cases involved numerous variables in terms of the investigative procedures needed because of the scope and complexity of the violation, he

regularly applied discretion and judgment in determining approaches, techniques, and in evaluating results. As a GS-13 criminal investigator, the claimant had full authority to make such determinations during the course of investigations, consulting with his supervisor only on the status of cases or need for additional resources. His investigative decisions were more significant than just making decisions on procedural details, or deciding whether a situation conformed to clearly applicable criteria. Although he had to follow specific legal requirements for gathering and admitting evidence, requesting search warrants and subpoenas, and working closely with the Assistant U.S. Attorney in preparing evidence for prosecution, he independently made decisions on significant matters affecting case development. This included identifying the most effective investigative techniques and processes to build a thorough and comprehensive investigation supportable before a grand jury or Federal court.

Although the claimant's position met paragraphs (b) and (c) of the administrative exemption criteria, it failed to meet all of the required exemption criteria because it did not meet paragraph (a) of the criteria. Therefore, we conclude the claimant did not meet the administrative exemption.

**Decision on FLSA Coverage**

The period of the claim the claimant worked as a Customs Patrol Officer, GS-1884, is denied as time barred (August 2, 1985, to June 7, 1986). However, the claimant's work was nonexempt (i.e., covered by the overtime pay provisions of the FLSA), and he is entitled to compensation for all overtime hours worked at the FLSA overtime rate, for the period of the claim he worked as a Criminal Investigator, GS-1811, and was improperly designated as FLSA exempt, i.e., from June 8, 1986, to September 22, 1990. Since both the claimant's active duty military service and his previous FLSA settlement were for time periods subsequent to September 22, 1990, they are not germane to the overtime pay calculations for the period of the claim covered by this decision. The agency must follow the compliance requirements on page ii of this decision.

The claimant must submit evidence showing the amount and extent of overtime that was performed as provided for in 5 CFR 551.706(a). The agency will have the opportunity to review this evidence using any other sources of information available, including witnesses, before a determination is made as to whether the claimant is entitled to any back pay under the FLSA and any interest as required under 5 CFR part 550, subpart H.[6] Any petition for attorney's fees and expenses must be submitted to the agency out of which this claim arose. Should the claimant be determined to be entitled to back pay which the claimant believes to be incorrectly computed, the claimant may file a new FLSA claim with this office.

---

[6] The agency's overtime and interest calculations must account for the claimant's prior receipt of administratively uncontrollable overtime, documented as "premium pay" in his Individual Retirement Record during the claim period, using the principles contained with 29 U.S.C 207(k), 5 CFR 551.501(a)(1) and (5), and 5 CFR 551.541(a). See OPM's Fact Sheet on the topic at https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/guidance-on-applying-flsa-overtime-provisions-to-law-enforcement-employees-receiving-administratively-uncontrollable-overtime-pay/.

## Distribution

Mr. Jules Bernstein and Ms. Linda Lipsett
Law Offices
Bernstein & Lipsett, P.C.
1130 Connecticut Avenue, NW
Suite 950
Washington, DC  20036-3975
lipsett@aol.com
chouse@bernstein-lipsett.com

Mr. Terry L. Hoxworth
2215 Greenwood Lane
Tallahassee, FL  32308
Mgysgtthoxworth@yahoo.com

Ms. Deborah Eldredge
Manager, Compensation Benefits
Human Capital Policy and Programs
Office of the Chief Human Capital Officer
U.S. Department of Homeland Security
Deborah.eldredge@hq.dhs.gov



**UNITED STATES OFFICE OF PERSONNEL MANAGEMENT**
Washington, DC 20415

Merit System
Accountability and
Compliance

---

# U.S. Office of Personnel Management
## Fair Labor Standards Act Decision
## Under section 204(f) of title 29, United States Code

|  |  |
|---:|:---|
| **Claimant:** | Larry E. Hunter |
| **Agency Classification:** | Criminal Investigator<br>GS-1811-12 |
| **Organization:** | U.S. Customs Service |
| **Claim:** | Position should be nonexempt, thus due<br>FLSA overtime pay |
| **OPM Decision:** | Nonexempt; potentially due FLSA<br>overtime pay |
| **OPM Decision Number:** | F-1811-12-22 |

---

*for* Linda Kazinetz
Classification Appeals and FLSA Claims
    Program Manager
Agency Compliance and Evaluation
Merit System Accountability and Compliance

6/5/17
Date

HUNTER EXHIBIT 1

As provided in section 551.708 of title 5, Code of Federal Regulations (CFR), this decision is binding on all administrative, certifying, payroll, disbursing, and accounting officials of agencies for which the Office of Personnel Management (OPM) administers the Fair Labor Standards Act (FLSA). The agency should identify all similarly situated current and, to the extent possible, former employees, ensure that they are treated in a manner consistent with this decision, and inform them in writing of their right to file an FLSA claim with the agency or OPM. There is no further right of administrative appeal. This decision is subject to discretionary review only under conditions and time limits specified in 5 CFR 551.708 (address provided in section 551.710). The claimant has the right to bring action in the appropriate Federal court if dissatisfied with this decision.

The agency is to review whether the claimant has worked overtime in accordance with instructions in the "Decision" section of this decision, and if the claimant is determined to be entitled to back pay, the agency must pay the claimant the amount owed him plus interest as provided in 5 CFR 550.806. If the claimant believes the agency has incorrectly computed the amount owed him, he may file a new FLSA claim with this office.

## Introduction

On May 9, 2012, the U.S. Office of Personnel Management (OPM) received a letter dated May 9, 2012, from the Law Offices of Bernstein & Lipsett, P.C. (B & L), the claimant's duly appointed representative, concerning a Fair Labor Standards Act (FLSA) claim they had initially filed on the claimant's behalf with the General Accounting Office (GAO), now the U.S. Government Accountability Office, on March 15, 1995, and subsequently with OPM on or about September 9, 1999, challenging his exemption status under the FLSA when he was employed as a Criminal Investigator, GS-1811-12, with the U.S. Customs Service (USCS), now integrated into the Department of Homeland Security (DHS). The claimant was a plaintiff in a lawsuit filed in the U.S. Court of Federal Claims at approximately the same time the administrative claim was filed with GAO.

B & L has requested OPM adjudicate the administrative claim filed with OPM and asserts that, because the claimant served in the military during the Gulf War, the statute of limitations applicable to this claim is the five-year statute of limitations under 31 U.S.C. 3702(b)(2) rather than the two-year statute of limitations (three years for willful violations) applicable to FLSA administrative claims filed under the Barring Act. *See* 73 Comp. Gen 157 (May 23, 1994); 31 U.S.C. 3702(b); 29 U.S.C. 255(a). B & L states the claimant was called to active duty with the United States Coast Guard Reserve "from approximately August 22, 1990 to November 19, 1990" in connection with Operation Desert Shield/Storm and, citing the provisions of 31 U.S.C. 3702(b)(2), asserts: "[H]e is entitled to retroactive back pay and interest ... for the period he was employed prior to the commencement of the Gulf War on August 2, 1990. This period includes August 2, 1985 to May 9, 1987, less Mr. Hunter's active duty military service time, for which he does not seek recovery."

## Background

We previously accepted and decided six similar claims under section 4(f) of the FLSA, as amended, codified at section 204(f) of title 29, U.S.C., which we denied as time barred. Subsequently, the claimant's representative brought suit under the Administrative Procedure Act (5 U.S.C. 551 *et seq.*, and 701 *et seq.*) in the United States District Court for the District of Columbia, alleging that OPM wrongfully applied a two-year statute of limitations in denying their administrative claims for unpaid FLSA overtime pay. *Armstrong v. Archuleta*, 77 F.Supp.3d 9 (December 30, 2014). In relevant part, the court stated in its opinion:

> All Plaintiffs are deemed to have timely filed their claims as of the date of their filings with the Claims Court. As a result, Plaintiffs . . . can recover for the entire claim period under the five-year statute of limitations—that is, for all claims that accrued within five years before the Gulf War commenced on August 2, 1990—minus monies paid under their DOJ Settlements.

<div align="center">***************</div>

> [T]he case is remanded to OPM to adjudicate and process damages in accordance with FLSA and other applicable laws, and Plaintiffs' respective employing agencies are directed to compensate them in accordance with OPM's determinations.

Consistent with the holding in the *Armstrong* case, we will apply the five-year statute of limitations and corrective methodology (subtracting monies already received under prior settlements or judgments) to the claims of similarly-situated claimants we find to be FLSA non-exempt and potentially due FLSA overtime pay.

**Analysis**

Under the provisions of 5 CFR 551.706, OPM determines the facts necessary to adjudicate a claim.  Applying the court's mandate to determine whether the claimant is owed overtime pay under the FLSA, we must first determine whether the work performed during the claim period is exempt or nonexempt from the overtime pay provisions of the FLSA.  On September 29, 2015, in response to the aforementioned court decision, OPM requested an agency administrative report (AAR) from DHS regarding this FLSA claim.  By letter dated October 28, 2016, DHS advised OPM that during the claim period, GS-1811 criminal investigators ("special agents") were designated FLSA nonexempt at the GS-5 and GS-7 grade levels, and FLSA exempt at the GS-9 and above levels.  DHS described the major duties and responsibilities of special agents at the GS-9, 11, and 12 grade levels as including initiating, planning, and conducting criminal and civil investigations; preparing detailed written investigative reports concerning case development and disposition; and planning, conducting, and coordinating in-depth criminal and civil investigations.  However, the agency advised OPM based on their fact-finding that:

> … DHS believes that the GS-9, GS-11, and GS-12 criminal investigators should be considered non-exempt.  At these grade levels, an investigator does not serve as an "advisor, assistant, or representative of management, or a specialist in a management or general business function or supporting service."  5 C.F.R. § 551.205(a) (1984).  Nor do they "[s]ignificantly affect[] the formulation or execution of management policies or programs."  *Id.* at § 551.205(a)(1).

Based on careful review of the record, we concur with the agency's determination.  The claimant is requesting compensation for work performed from August 2, 1985, to May 9, 1987, less his active duty military service time.[1]  Therefore, USCS would have been required to compensate the claimant under the overtime pay provisions of subpart E of part 551 of 5 CFR for work performed within the claim period; i.e., within five years before the commencement of the Gulf War on August 2, 1990.  In this case, the entire claim period (August 2, 1985, to May 9, 1987) is covered.

B & L stated in its claim request to OPM that the claimant occupied a Criminal Investigator, GS-1811-12, position with USCS from August 2, 1985, to January 3, 1987, and a Mail and File Clerk, GS-305-3, position with USCS from January 4, 1987, to May 9, 1987.  The agency was unable to provide any Standard Form (SF) 50s documenting the claimant's employment with USCS.[2]  At OPM's request to provide SF-50s relevant to the claim period, the claimant

---

[1] The claimant's "Reserve Orders and Pay Voucher" included with his claim shows he was called to report for temporary active duty from August 22, 1990, to November 19, 1990.

[2] The National Personnel Records Center could not locate the claimant's archived Official Personnel Folder.

submitted an SF-50 for the within-grade increase (WGI) of his GS-12 criminal investigator position effective May 11, 1986. The SF-50 also shows the position was designated exempt from the FLSA at that time. No other SF-50s were provided to show he occupied the GS-12 criminal investigator position prior or subsequent to the May 11, 1986, pay action. His completed SF-2801, Application for Immediate Retirement (Civil Service Retirement System), which we obtained from OPM's Retirement Operations Center - Boyers, Pennsylvania, states he had been continuously employed with USCS from March 27, 1978, to October 3, 1999. His retirement records listing his service history, including action types and effective dates, show his May 11, 1986, WGI action. Prior to the WGI action, the records show he had been promoted (presumably to the GS-12 criminal investigator position) on May 16, 1982, and occupied that position until he was promoted again on May 10, 1987. The retirement records document no actions such as a change to a lower grade during the period of time he would have occupied a GS-3 mail and file clerk position. Absent an assertion to the contrary, we must conclude the claimant occupied the GS-12 criminal investigator position from August 2, 1985, to May 9, 1987.[3]

## Decision

The claimant's work is FLSA nonexempt (i.e., covered by FLSA overtime provisions), and he is entitled to compensation for all overtime hours worked at the FLSA overtime rate for the period of the claim he was improperly designated as FLSA exempt, i.e., from August 2, 1985, to May 9, 1987. Since his active duty military service time was for a time period subsequent to May 9, 1987, it is not germane to the overtime pay calculations for the period of the claim covered by this decision. The agency must follow the compliance requirements on page ii of this decision.

The claimant must submit evidence showing the amount and extent of overtime that was performed as provided for in 5 CFR 551.706(a). The agency will have the opportunity to review this evidence using any sources of information available, including witnesses, before a determination is made as to whether the claimant is entitled to any back pay under the FLSA and any interest as required under 5 CFR part 550, subpart H.[4] Any petition for attorney's fees and expenses must be submitted to the agency out of which this claim arose. Should the claimant be determined to be entitled to back pay which the claimant believes to be incorrectly computed, the claimant may file a new FLSA claim with this office.

---

[3] By email dated May 16, 2017, B & L stated that "Mr. Hunter's claim is for the period August 2, 1985 through May 9, 1987" and advised that he "was promoted to a GM-13 supervisor position on March 10, 1987 and we are not pursuing a claim for his GM-13 supervisor time." We conclude B & L intended to state the claimant was promoted to a GM-13 supervisory position on May 10, 1987 (the documented promotion date in his retirement records), since the stated date would fall within rather than outside the claim period being requested.

[4] The agency's overtime and interest calculations must account for the claimant's prior receipt of administratively uncontrollable overtime, documented as "premium pay" on his SF-50 covering the claim period, using the principles contained within 29 U.S.C. 207(k), 5 CFR 551.501(a)(1) and (5), and 5 CFR 551.541(a). OPM's Fact Sheet on the topic can be found here: https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/guidance-on-applying-flsa-overtime-provisions-to-law-enforcement-employees-receiving-administratively-uncontrollable-overtime-pay/.

OPM Decision Number F-1811-12-22                                                    4

## Distribution

Mr. Jules Bernstein and Ms. Linda Lipsett
Law Offices
Bernstein & Lipsett, P.C.
1130 Connecticut Avenue, NW
Suite 950
Washington, DC  20036-1798
lipsett@aol.com
chouse@bernstein-lipsett.com

Mr. Larry E. Hunter
158 N. Windwood Acres Road
Batesburg, SC  29006

Ms. Deborah Eldredge
Manager, Compensation and Benefits
Human Capital Policy and Programs
Office of the Chief Human Capital Officer
U.S. Department of Homeland Security
Deborah.Eldredge@hq.dhs.gov

MAY 0 1 2017



## UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
### Washington, DC 20415

Merit System
Accountability and
Compliance

---

# U.S. Office of Personnel Management
# Fair Labor Standards Act Decision
# Under section 204(f) of title 29, United States Code

| | |
|---|---|
| **Claimant:** | Patrick W. Johnson |
| **Agency Classification:** | Criminal Investigator GS-1811-5/7/9/11/12 |
| **Organization:** | U.S. Customs Service |
| **Claim:** | Position should be nonexempt, thus due FLSA overtime pay |
| **OPM Decision:** | Nonexempt; potentially due FLSA overtime pay |
| **OPM Decision Number:** | F-1811-12-15 |

---

Linda Kazinetz
Classification Appeals and FLSA Claims
    Program Manager
Agency Compliance and Evaluation
Merit System Accountability and Compliance

5/1/17

Date

As provided in section 551.708 of title 5, Code of Federal Regulations (CFR), this decision is binding on all administrative, certifying, payroll, disbursing, and accounting officials of agencies for which the Office of Personnel Management (OPM) administers the Fair Labor Standards Act (FLSA). The agency should identify all similarly situated current and, to the extent possible, former employees, ensure that they are treated in a manner consistent with this decision, and inform them in writing of their right to file an FLSA claim with the agency or OPM. There is no further right of administrative appeal. This decision is subject to discretionary review only under conditions and time limits specified in 5 CFR 551.708 (address provided in section 551.710). The claimant has the right to bring action in the appropriate Federal court if dissatisfied with this decision.

The agency is to review whether the claimant has worked overtime in accordance with instructions in the "Decision" section of this decision, and if the claimant is determined to be entitled to back pay, the agency must pay the claimant the amount owed him plus interest as provided in 5 CFR 550.806. If the claimant believes the agency has incorrectly computed the amount owed him, he may file a new FLSA claim with this office.

## Introduction

On December 20, 2011, the U.S. Office of Personnel Management (OPM) received a letter dated December 20, 2011, from the Law Offices of Bernstein & Lipsett, P.C. (B & L), the claimant's duly appointed representative, concerning a Fair Labor Standards Act (FLSA) claim they had initially filed on the claimant's behalf with the General Accounting Office (GAO), now the U.S. Government Accountability Office, on April 1, 1994, and subsequently with OPM on or about May 7, 1999, challenging his exemption status under the FLSA when he was employed as a Criminal Investigator, GS-1811, at the GS-5 through GS-12 levels with the U.S. Customs Service (USCS), now integrated into the Department of Homeland Security (DHS). The claimant was a plaintiff in a lawsuit filed in the U.S. Court of Federal Claims at approximately the same time the administrative claim was filed with GAO. Based on information provided by B & L, the claimant was awarded back pay under a settlement agreement for the pay period ending April 1, 1992, to the pay period ending October 29, 1994, subject to the two-year statute of limitations for FLSA claims under 29 United States Code (U.S.C.) 255(a).

B & L has requested OPM adjudicate the administrative claim filed with OPM and asserts that, because the claimant served in the military during the Gulf War, the statute of limitations applicable to this claim is the five-year statute of limitations under 31 U.S.C. 3702(b)(2) rather than the two-year statute of limitations (three years for willful violations) applicable to FLSA administrative claims filed under the Barring Act. *See* 73 Comp. Gen 157 (May 23, 1994); 31 U.S.C. 3702(b); 29 U.S.C. 255(a). B & L states the claimant was called to active duty with the United States Marine Corps Reserve "from approximately January 26, 1991 to June 5, 1991" in connection with Operation Desert Shield/Storm and, citing the provisions of 31 U.S.C. 3702(b)(2), asserts: "[H]e is entitled to retroactive back pay and interest… for the period he was employed prior to the commencement of the Gulf War on August 2, 1990, in addition to the period he was employed by the USCS after the commencement of the Gulf War up to the date he recovered under previous FLSA settlements. This period includes May 10, 1987 to March 21, 1992, less Mr. Johnson's active duty military service time, for which he does not seek recovery."[1]

## Background

---

[1] B & L states the claimant began his Criminal Investigator, GS-1811-5, position with USCS on May 10, 1987, and the agency does not disagree. However, the Standard Form (SF) 50 documenting the claimant's appointment to the GS-5 position shows an effective date of May 24, 1987. Remarks on this SF-50 include "appointment affidavit executed 05-11-87" and "service counting toward career tenure from 05-10-87." We noted the claim request submitted to OPM includes an "Administratively Uncontrollable Overtime Report," Customs Form 203, showing the month and year as "May 87." On this form, the first 23 days of the month are crossed out and notated with "NOT ON BOARD." The form further indicates the claimant worked two overtime hours on May 28, 1987, and one overtime hour on May 29, 1987. We thus conclude the claimant began his GS-5 position with USCS on May 24, 1987. Regardless, even if he had commenced employment with USCS on May 10, 1987, as suggested by B & L and the agency, his completed Customs Form 203 indicates he did not work any overtime hours from May 10, 1987, to May 24, 1987, for which he would be entitled to compensation.

We previously accepted and decided this claim under section 4(f) of the FLSA, as amended, codified at section 204(f) of title 29, U.S.C. Our November 2, 2012, denial found the claim, for the period May 10, 1987, to March 21, 1992, was time barred. Subsequently, the claimant's representative brought suit under the Administrative Procedure Act (5 U.S.C. 551 *et seq.*, and 701 *et seq.*) in the United States District Court for the District of Columbia, alleging that OPM wrongfully applied a two-year statute of limitations in denying their administrative claims for unpaid FLSA overtime pay. *Armstrong v. Archuleta*, 77 F.Supp.3d 9 (December 30, 2014). In relevant part, the court stated in its opinion:

> All Plaintiffs are deemed to have timely filed their claims as of the date of their filings with the Claims Court. As a result, Plaintiffs . . . can recover for the entire claim period under the five-year statute of limitations—that is, for all claims that accrued within five years before the Gulf War commenced on August 2, 1990—minus monies paid under their DOJ Settlements.
>
> *****************
>
> [T]he case is remanded to OPM to adjudicate and process damages in accordance with FLSA and other applicable laws, and Plaintiffs' respective employing agencies are directed to compensate them in accordance with OPM's determinations.

**Analysis**

Under the provisions of 5 CFR 551.706, OPM determines the facts necessary to adjudicate a claim. Applying the court's mandate to determine whether the claimant is owed overtime pay under the FLSA, we must first determine whether the work performed during the claim period is exempt or nonexempt from the overtime pay provisions of the FLSA. On September 29, 2015, in response to the aforementioned court decision, OPM requested an agency administrative report (AAR) from DHS regarding this FLSA claim. By letter dated October 28, 2016, DHS advised OPM that during the claim period, GS-1811 **criminal investigators** ("special agents") were designated FLSA nonexempt at the GS-5 and GS-7 grade levels, and FLSA exempt at the GS-9 and above levels. DHS described the major duties and responsibilities of special agents at the GS-9, 11, and 12 grade levels as including initiating, planning, and conducting criminal and civil investigations; preparing detailed written investigative reports concerning case development and disposition; and planning, conducting, and coordinating in-depth criminal and civil investigations. However, the agency advised OPM based on their fact-finding that:

> ...DHS believes that the GS-9, GS-11, and GS-12 criminal investigators should be considered non-exempt. At these grade levels, an investigator does not serve as an "advisor, assistant, or representative of management, or a specialist in a management or general business function or supporting service." 5 C.F.R. § 551.205(a) (1984). Nor do they "[s]ignificantly affect[] the formulation or execution of management policies or programs." *Id.* at § 551.205(a)(1). Further, the degree of supervision exercised over the Agents – at least at the GS-9 level – suggests that an Agent was not expected to "exercise discretion and independent judgment, under only general supervision." 5 C.F.R. § 551.205(c).

Based on careful review of the record, we concur with the agency's determination. The claimant is requesting compensation for work performed from the commencement of his USCS employment, which we conclude to be May 24, 1987, to March 21, 1992, less his active duty military service time.[2] Therefore, USCS would have been required to compensate the claimant under the overtime pay provisions of Subpart E of Part 551 of 5 CFR for work performed within the claim period; i.e., within five years before the commencement of the Gulf War on August 2, 1990, and subject to deduction for any monies paid under the claimant's DOJ settlement agreement. In this case, the entire claim period (May 24, 1987, to March 21, 1992) is covered.

The SF-50s documenting the claimant's employment with USCS show he was designated nonexempt from the FLSA when he was employed at the GS-5 and GS-7 levels from May 24, 1987, to June 17, 1989, when he was promoted to GS-9 and his status changed to exempt. Absent an assertion by the claimant that he was not paid at the FLSA overtime rate during the period of time he was designated as nonexempt, we must conclude he was properly compensated under the FLSA during this period, i.e., May 24, 1987, to June 17, 1989.

**Decision**

The claimant's work is FLSA nonexempt (i.e., covered by FLSA overtime provisions), and he is entitled to compensation for all overtime hours worked at the FLSA overtime rate for the period of the claim he was improperly designated as FLSA exempt, i.e., from June 18, 1989, to March 21, 1992, less his active duty military service time from January 26, 1991, to June 5, 1991. Since his previous FLSA settlement was for a time period subsequent to March 21, 1992, it is not germane to the overtime pay calculations for the period of the claim covered by this decision. The agency must follow the compliance requirements on page ii of this decision.

The claimant must submit evidence showing the amount and extent of overtime that was performed as provided for in 5 CFR 551.706(a) as informed by the agency payroll records submitted to OPM and the claimant. The agency will have the opportunity to review this evidence using any sources of information available, including witnesses, before a determination is made as to whether the claimant is entitled to any back pay under the FLSA and any interest as required under 5 CFR part 550, subpart H.[3] Any petition for attorney's fees and expenses must be submitted to the agency out of which this claim arose. Should the claimant be determined to be entitled to back pay which the claimant believes to be incorrectly computed, the claimant may file a new FLSA claim with this office.

---

[2] The claimant's Certificate of Release or Discharge from Active Duty, DD Form 214, included with his claim shows he was in an active duty status from January 26, 1991, to June 5, 1991.

[3] The agency's overtime and interest calculations must account for the claimant's prior receipt of administratively uncontrollable overtime, documented as "premium pay" on his SF 50s covering the claim period, using the principles contained within 29 U.S.C. 207(k), 5 CFR 551.501(a)(1) and (5), and 5 CFR 551.541(a). OPM's Fact Sheet on the topic can be found here: https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/guidance-on-applying-flsa-overtime-provisions-to-law-enforcement-employees-receiving-administratively-uncontrollable-overtime-pay/.

**Distribution**

Mr. Jules Bernstein and Ms. Linda Lipsett
Law Offices
Bernstein & Lipsett, P.C.
1130 Connecticut Avenue, NW
Suite 950
Washington, DC  20036-1798
lipsett@aol.com
chouse@bernstein-lipsett.com

Mr. Patrick W. Johnson
483 Cutler Bridge
Schertz, TX  78154

Ms. Deborah Eldredge
Manager, Compensation and Benefits
Human Capital Policy and Programs
Office of the Chief Human Capital Officer
U.S. Department of Homeland Security
Deborah.Eldredge@hq.dhs.gov



**UNITED STATES OFFICE OF PERSONNEL MANAGEMENT**
Washington, DC 20415

Merit System
Accountability and
Compliance

---

# U.S. Office of Personnel Management
# Fair Labor Standards Act Decision
# Under section 204(f) of title 29, United States Code

| | |
|---|---|
| **Claimant:** | G. Bruce Pharis |
| **Agency Classification:** | Criminal Investigator<br>GS-1811-7/9 |
| **Organization:** | U.S. Customs Service |
| **Claim:** | Position should be nonexempt, thus due FLSA overtime pay |
| **OPM Decision:** | Nonexempt; potentially due FLSA overtime pay |
| **OPM Decision Number:** | F-1811-09-05 |

---

for

Linda Kazinetz
Classification Appeals and FLSA Claims
   Program Manager
Agency Compliance and Evaluation
Merit System Accountability and Compliance

5/11/17
Date

PHARIS EXHIBIT 1

As provided in section 551.708 of title 5, Code of Federal Regulations (CFR), this decision is binding on all administrative, certifying, payroll, disbursing, and accounting officials of agencies for which the Office of Personnel Management (OPM) administers the Fair Labor Standards Act (FLSA). The agency should identify all similarly situated current and, to the extent possible, former employees, ensure that they are treated in a manner consistent with this decision, and inform them in writing of their right to file an FLSA claim with the agency or OPM. There is no further right of administrative appeal. This decision is subject to discretionary review only under conditions and time limits specified in 5 CFR 551.708 (address provided in section 551.710). The claimant has the right to bring action in the appropriate Federal court if dissatisfied with this decision.

The agency is to review whether the claimant has worked overtime in accordance with instructions in the "Decision" section of this decision, and if the claimant is determined to be entitled to back pay, the agency must pay the claimant the amount owed him plus interest as provided in 5 CFR 550.806. If the claimant believes the agency has incorrectly computed the amount owed him, he may file a new FLSA claim with this office.

**Introduction**

On May 9, 2012, the U.S. Office of Personnel Management (OPM) received a letter dated May 9, 2012, from the Law Offices of Bernstein & Lipsett, P.C. (B & L), the claimant's duly appointed representative, concerning a Fair Labor Standards Act (FLSA) claim they had initially filed on the claimant's behalf with the General Accounting Office (GAO), now the U.S. Government Accountability Office, on March 10, 1992, and subsequently with OPM on or about September 9, 1999, challenging his exemption status under the FLSA when he was employed as a Criminal Investigator, GS-1811, at the GS-7 and GS-9 levels with the U.S. Customs Service (USCS), now integrated into the Department of Homeland Security (DHS). The claimant was a plaintiff in a lawsuit filed in the U.S. Court of Federal Claims at approximately the same time the administrative claim was filed with GAO. Based on information provided by B & L, the claimant was awarded back pay under a settlement agreement for the pay period ending March 10, 1990,[1] to the pay period ending April 21, 1990; for the pay period ending May 5, 1990, to the pay period ending May 4, 1991; and for the pay period ending May 18, 1991, to the pay period ending October 29, 1994, subject to the two-year statute of limitations for FLSA claims under 29 United States Code (U.S.C.) 255(a).

B & L has requested OPM adjudicate the administrative claim filed with OPM and asserts that, because the claimant served in the military during the Gulf War, the statute of limitations applicable to this claim is the five-year statute of limitations under 31 U.S.C. 3702(b)(2) rather than the two-year statute of limitations (three years for willful violations) applicable to FLSA administrative claims filed under the Barring Act. *See* 73 Comp. Gen 157 (May 23, 1994); 31 U.S.C. 3702(b); 29 U.S.C. 255(a). B & L states the claimant was called to active duty with the United States Coast Guard Reserve "from approximately February 3, 1991 to February 15, 1991" in connection with Operation Desert Shield/Storm and, citing the provisions of 31 U.S.C. 3702(b)(2), asserts: "[H]e is entitled to retroactive back pay and interest … for the period he was employed prior to the commencement of the Gulf War on August 2, 1990, up to the date he recovered under previous FLSA settlements. This period includes May 19, 1986 to February 24, 1990, less Mr. Pharis's active duty military service time, for which he does not seek recovery."[2]

**Background**

We previously accepted and decided six similar claims under section 4(f) of the FLSA, as amended, codified at section 204(f) of title 29, U.S.C., which we denied as time barred. Subsequently, claimant's representative brought suit under the Administrative Procedure Act (5 U.S.C. 551 *et seq.*, and 701 *et seq.*) in the United States District Court for the District of Columbia, alleging that OPM wrongfully applied a two-year statute of limitations in denying their administrative claims for unpaid FLSA overtime pay. *Armstrong v. Archuleta,* 77 F.Supp.3d 9 (December 30, 2014). In relevant part, the court stated in its opinion:

---

[1] B & L indicated in its claim request to OPM that the claimant was awarded back pay for the pay period ending March 24, 1990. However, in an April 25, 2017, email to OPM, B & L stated he was awarded back pay commencing the pay period ending March 10, 1990, not March 24, 1990.
[2] The claimant was employed with USCS from May 10, 1987, to February 24, 1990.

> All Plaintiffs are deemed to have timely filed their claims as of the date of their filings
> with the Claims Court. As a result, Plaintiffs . . . can recover for the entire claim period
> under the five-year statute of limitations—that is, for all claims that accrued within five
> years before the Gulf War commenced on August 2, 1990—minus monies paid under
> their DOJ Settlements.

<div align="center">***************</div>

> [T]he case is remanded to OPM to adjudicate and process damages in accordance with
> FLSA and other applicable laws, and Plaintiffs' respective employing agencies are
> directed to compensate them in accordance with OPM's determinations.

Consistent with the holding in the *Armstrong* case, we will apply the five-year statute of
limitations and corrective methodology (subtracting monies already received under prior
settlements or judgments) to the claims of similarly-situated claimants we find to be FLSA non-
exempt and potentially due FLSA overtime pay.

**Analysis**

Under the provisions of 5 CFR 551.706, OPM determines the facts necessary to adjudicate a
claim. Applying the court's mandate to determine whether the claimant is owed overtime pay
under the FLSA, we must first determine whether the work performed during the claim period
is exempt or nonexempt from the overtime pay provisions of the FLSA. On September 29,
2015, in response to the aforementioned court decision, OPM requested an agency
administrative report (AAR) from DHS regarding this FLSA claim. By letter dated
October 28, 2016, DHS advised OPM that during the claim period, GS-1811 criminal
investigators ("special agents") were designated FLSA nonexempt at the GS-5 and GS-7
grade levels, and FLSA exempt at the GS-9 and above levels. DHS described the major
duties and responsibilities of special agents at the GS-9, 11, and 12 grade levels as including
initiating, planning, and conducting criminal and civil investigations; preparing detailed
written investigative reports concerning case development and disposition; and planning,
conducting, and coordinating in-depth criminal and civil investigations. However, the agency
advised OPM based on their fact-finding that:

> … DHS believes that the GS-9, GS-11, and GS-12 criminal investigators should be
> considered non-exempt. At these grade levels, an investigator does not serve as an
> "advisor, assistant, or representative of management, or a specialist in a management or
> general business function or supporting service." 5 C.F.R. § 551.205(a) (1984). Nor do
> they "[s]ignificantly affect[] the formulation or execution of management policies or
> programs." *Id.* at § 551.205(a)(1). Further, the degree of supervision exercised over the
> Agents – at least at the GS-9 level – suggests that an Agent was not expected to "exercise
> discretion and independent judgment, under only general supervision." 5 C.F.R. §
> 551.205(c).

Based on careful review of the record, we concur with the agency's determination. The claimant
is requesting compensation for work performed from May 10, 1987, to February 24, 1990, when

he was employed by USCS, less his active duty military service time.[2]  Therefore, USCS would have been required to compensate the claimant under the overtime pay provisions of Subpart E of Part 551 of 5 CFR for work performed within the claim period; i.e., within five years before the commencement of the Gulf War on August 2, 1990, and subject to deduction for any monies paid under the claimant's DOJ settlement agreements.  In this case, the entire claim period (May 10, 1987, to February 24, 1990) is covered.

However, the Standard Form (SF) 50s documenting the claimant's employment with the USCS show he was designated nonexempt from the FLSA when he was employed at the GS-7 level from May 10, 1987, to May 21, 1988, when he was promoted to GS-9 and his status changed to exempt.[3]  Absent an assertion by the claimant that he was not paid at the FLSA overtime rate during the period he was designated as nonexempt, we must conclude he was properly compensated under the FLSA during this period, i.e., May 10, 1987, to May 21, 1988.

**Decision**

The claimant's work is FLSA nonexempt (i.e., covered by FLSA overtime provisions), and he is entitled to compensation for all overtime hours worked at the FLSA overtime rate for the period of the claim he was improperly designated as FLSA exempt, i.e., from May 22, 1988, to February 24, 1990.  Since both his active duty military service time and his previous FLSA settlements were for time periods subsequent to February 24, 1990, they are not germane to the overtime pay calculations for the period of the claim covered by this decision.  The agency must follow the compliance requirements on page ii of this decision.

The claimant must submit evidence showing the amount and extent of overtime that was performed as provided for in 5 CFR 551.706(a) as informed by the agency payroll records submitted to OPM and the claimant.  The agency will have the opportunity to review this evidence using any sources of information available, including witnesses, before a determination is made as to whether the claimant is entitled to any back pay under the FLSA and any interest as required under 5 CFR part 550, subpart H.[4]  Any petition for attorney's fees and expenses must be submitted to the agency out of which this claim arose.  Should the claimant be determined to be entitled to back pay which the claimant believes to be incorrectly computed, the claimant may file a new FLSA claim with this office.

---

[2] The claimant's "Reserve Orders and Pay Voucher" included with his claim shows he was in an active duty status from February 3, 1991, to February 15, 1991.
[3] The effective date on the SF-50 documenting the claimant's promotion to the GS-9 position is not legible.  However, the claimant identifies the effective date as May 22, 1988, and the agency does not disagree.
[4] The agency's overtime and interest calculations must account for the claimant's prior receipt of administratively uncontrollable overtime, documented as "premium pay" on his SF-50s covering the claim period, using the principles contained within 29 U.S.C. 207(k), 5 CFR 551.501(a)(1) and (5), and 5 CFR 551.541(a).  OPM's Fact Sheet on the topic can be found here: https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/guidance-on-applying-flsa-overtime-provisions-to-law-enforcement-employees-receiving-administratively-uncontrollable-overtime-pay/.

### Distribution

Mr. Jules Bernstein and Ms. Linda Lipsett
Law Offices
Bernstein & Lipsett, P.C.
1130 Connecticut Avenue, NW
Suite 950
Washington, DC  20036-1798
lipsett@aol.com
chouse@bernstein-lipsett.com

Mr. G. Bruce Pharis
15 Saints Creek Court
Irmo, SC  29063

Ms. Deborah Eldredge
Manager, Compensation and Benefits
Human Capital Policy and Programs
Office of the Chief Human Capital Officer
U.S. Department of Homeland Security
Deborah.Eldredge@hq.dhs.gov



**UNITED STATES OFFICE OF PERSONNEL MANAGEMENT**
Washington, DC 20415

Merit System
Accountability and
Compliance

---

# U.S. Office of Personnel Management
## Fair Labor Standards Act Decision
## Under section 204(f) of title 29, United States Code

| | |
|---:|---|
| **Claimant:** | William F. Walsh |
| **Agency Classification:** | Criminal Investigator<br>GS-1811-11/12/13 |
| **Organization:** | U.S. Customs Service |
| **Claim:** | Positions should be nonexempt, thus due FLSA overtime pay |
| **OPM Decision:** | Nonexempt; potentially due FLSA overtime pay |
| **OPM Decision Number:** | F-1811-13-20 |

---

_for_ Linda Kazinetz
Classification Appeals and FLSA Claims
    Program Manager
Agency Compliance and Evaluation
Merit System Accountability and Compliance

6/5/17
Date

WALSH EXHIBIT 1

OPM Decision Number F-1811-13-20                                                                 ii

As provided in section 551.708 of title 5, Code of Federal Regulations (CFR), this decision is binding on all administrative, certifying, payroll, disbursing, and accounting officials of agencies for which the Office of Personnel Management (OPM) administers the Fair Labor Standards Act (FLSA). The agency should identify all similarly situated current and, to the extent possible, former employees, ensure that they are treated in a manner consistent with this decision, and inform them in writing of their right to file an FLSA claim with the agency or OPM. There is no further right of administrative appeal. This decision is subject to discretionary review only under conditions and time limits specified in 5 CFR 551.708 (address provided in section 551.710). The claimant has the right to bring action in the appropriate Federal court if dissatisfied with this decision.

The agency is to review whether the claimant has worked overtime in accordance with instructions in the "Decision" section of this decision, and if the claimant is determined to be entitled to back pay, the agency must pay the claimant the amount owed him plus interest as provided in 5 CFR 550.806. If the claimant believes the agency has incorrectly computed the amount owed him, he may file a new FLSA claim with this office.

**Introduction**

On May 9, 2012, the U.S. Office of Personnel Management (OPM) received a letter dated May 9, 2012, from the Law Offices of Bernstein & Lipsett, P.C. (B & L), the claimant's duly appointed representative, concerning a Fair Labor Standards Act (FLSA) claim they had initially filed on the claimant's behalf with the General Accounting Office (GAO), now the U.S. Government Accountability Office, on April 28, 1994, and subsequently with OPM on October 21, 1999, challenging his exemption status under the FLSA when he was employed as a Criminal Investigator, GS-1811, at the GS-11 through GS-13 levels with the U.S. Customs Service (USCS), now integrated into the Department of Homeland Security (DHS). The claimant was a plaintiff in a lawsuit filed in the U.S. Court of Federal Claims at approximately the same time the administrative claim was filed with GAO. Based on information provided by B & L, the claimant was awarded back pay under a settlement agreement for the pay period ending May 2, 1992, to the pay period ending October 29, 1994, subject to the two-year statute of limitations for FLSA claims under 29 United States Code (U.S.C.) 255(a).

B & L has requested OPM adjudicate the administrative claim filed with OPM and asserts that, because the claimant served in the military during the Gulf War, the statute of limitations applicable to this claim is the five-year statute of limitations under 31 U.S.C. 3702(b)(2) rather than the two-year statute of limitations (three years for willful violations) applicable to FLSA administrative claims filed under the Barring Act. *See* 73 Comp. Gen 157 (May 23, 1994); 31 U.S.C. 3702(b); 29 U.S.C. 255(a). B & L states the claimant was called to active duty with the United States Army Reserve "from approximately February 25, 1991 to July 18, 1991" in connection with Operation Desert Shield/Storm and, citing the provisions of 31 U.S.C. 3702(b)(2), asserts: "[H]e is entitled to retroactive back pay and interest… for the period he was employed prior to the commencement of the Gulf War on August 2, 1990 in addition to the period he was employed by Customs after the commencement of the Gulf War, up to the date he recovered under previous FLSA settlements. This period includes August 2, 1985, to April 18, 1992, less Mr. Walsh's active duty military service time, for which he does not seek recovery."[1]

In reaching our FLSA claim decision, we have carefully reviewed all information furnished by the claimant's representative and the agency, including information obtained from a telephonic interview with the claimant.

**Background**

We previously accepted and decided six similar claims under section 4(f) of the FLSA, as amended, codified at section 204(f) of title 29, U.S.C., which we denied as time barred. Subsequently, the claimant's representative brought suit under the Administrative Procedure

---

[1] The agency was unable to provide any Standard Form (SF) 50s documenting the claimant's employment with USCS. At OPM's request, the claimant submitted SF-50s relevant to the claim period. Although B & L's claim request states the claimant was employed with USCS from January 3, 1988, to April 18, 1992, the claimant provided an SF-50, effective March 15, 1987, showing his transfer to a Criminal Investigator, GS-1811-11, position with the USCS. We thus conclude he was employed with USCS from March 15, 1987, to April 18, 1992.

Act (5 U.S.C. 551 *et seq.*, and 701 *et seq.*) in the United States District Court for the District of Columbia, alleging that OPM wrongfully applied a two-year statute of limitations in denying their administrative claims for unpaid FLSA overtime pay. *Armstrong v. Archuleta,* 77 F.Supp.3d 9 (December 30, 2014). In relevant part, the court stated in its opinion:

> All Plaintiffs are deemed to have timely filed their claims as of the date of their filings with the Claims Court. As a result, Plaintiffs . . . can recover for the entire claim period under the five-year statute of limitations—that is, for all claims that accrued within five years before the Gulf War commenced on August 2, 1990—minus monies paid under their DOJ Settlements.

> ***************

> [T]he case is remanded to OPM to adjudicate and process damages in accordance with FLSA and other applicable laws, and Plaintiffs' respective employing agencies are directed to compensate them in accordance with OPM's determinations.

Consistent with the holding in the *Armstrong* case, we will apply the five-year statute of limitations and corrective methodology (subtracting monies already received under prior settlements or judgments) to the claims of similarly-situated claimants we find to be FLSA nonexempt and potentially due FLSA overtime pay.

**Analysis**

Under the provisions of 5 CFR 551.706, OPM determines the facts necessary to adjudicate a claim. Applying the court's mandate to determine whether the claimant is owed overtime pay under the FLSA, we must first determine whether the work he performed is exempt or nonexempt from the overtime pay provisions of the FLSA. On September 29, 2015, in response to the aforementioned court decision, OPM requested an agency administrative report (AAR) from DHS regarding this FLSA claim. By letter dated October 28, 2016, DHS advised OPM that although GS-1811 criminal investigators at the GS-9, 11, and 12 levels were designated exempt, based on their fact finding they should be considered nonexempt. Based on careful review of the record, we concur with the agency's determination and have not separately addressed the claimant's GS-11 and GS-12 work in this decision.

The claimant is requesting compensation, less his active duty military service time,[2] for criminal investigator work performed while he was a GS-11 with the Office of Enforcement's Houston Aviation Branch from March 15, 1987, to February 13, 1988; as a GS-12 with the Office of Enforcement's Houston Aviation Branch from February 14, 1988, to January 13, 1990; and as a GS-12 with the Internal Security Division of the Office of Internal Affairs (IA)

---

[2] The claimant's Certificate of Release or Discharge from Active Duty, DD Form 214, included with his claim shows he was in an active duty status from February 25, 1991, to July 18, 1991. However, an SF-50 submitted by the claimant shows he returned to duty from Operation Desert Shield effective July 7, 1991. Because the DD Form 214 is the official military record for the period of his active duty, for purposes of this claim we must assume that document is accurate and accept it as the definitive record of his military duty during the claim period.

in Houston, Texas, from January 14, 1990, to August 10, 1991.[3]  Therefore, USCS would
have been required to compensate the claimant under the overtime provisions of subpart E of
Part 551 of 5 CFR for this work performed within the claim period.

Regarding the exemption status of criminal investigators at the GS-13 level, the agency
references a standard GS-13 position description (PD) (#T046034) used at the time of this
claim to describe the work of Senior Special Agents.[4]  The GS-13 criminal investigators
"were expected to take on a leadership role in coordinating and directing investigations,
providing training, and advising and representing USCS management on critical law
enforcement programs involving highly important functions that influence accomplishment of
objectives of the entire Customs Service."  The agency states that "[i]f the Senior Special
Agents' position description is accurate, they could potentially qualify as exempt
administrative employees."  However, the agency indicates that "[a]lthough the duties
described above would likely qualify as exempt work, the GS-1811-13 position description
also includes a number of non-exempt duties."  The agency notes these nonexempt duties
include conducting "highly complex and sensitive criminal investigations."  Given their
assessment of the PD and the need to clarify the actual duties performed by GS-13 Senior
Special Agent claimants, the agency defers to OPM to resolve their exemption status.
Therefore, our analysis only addresses the period he served as a GS-13 criminal investigator.

*Position information*

From August 11, 1991, to April 18, 1992, the claimant occupied a GS-13 criminal
investigator position with IA in Houston, Texas.  The function of IA was to investigate
allegations of criminal or administrative misconduct or violations committed by USCS
employees within the Southwest Region.

The claimant developed and investigated cases from complaints initially reported by citizens,
victims, and USCS and other Government employees.  Once an investigation was assigned,
he identified relevant issues, decided the course of the investigation, pursued the facts, and
collected information.  He conducted interviews with individuals who filed the complaint, the

---

[3] B & L's claim request states the claimant's GS-12 position with IA ended on August 10, 1991,
when he was promoted to the GS-13 criminal investigator position.  However, the SF-50
provided by the claimant, which we believe documents his promotion to the GS-13 position, is
not legible.  Since the agency was unable to provide us with SF-50s to verify his USCS
employment, we obtained his retirement records from OPM's Retirement Operations Center in
Boyers, Pennsylvania.  The retirement records, which list his service history including action
types and effective dates, identify his February 14, 1988, promotion to the GS-12 position, in
addition to subsequent pay adjustments, within grade increases, and other pay changes until he
was promoted on August 11, 1991.  We thus conclude the claimant's GS-12 position with IA
ended on August 10, 1991.

[4] The claimant's SF-50s documenting his employment history show he was not assigned to PD
#T046034 at any time during the claim period.  The agency was unable to provide a copy of any
of the PDs to which he was officially assigned.  However, our interview with the claimant
confirms he performed the duties and responsibilities of the Senior Special Agent position for
part of the claim period.

employees alleged to be involved in the violations, eyewitnesses, and other individuals
relevant to or part of the investigation. In performing investigations, the claimant's work also
involved reviewing personnel, financial, and other records; conducting lawful searches and
seizures of illicit materials; securing and serving summons and search warrants; carrying out
surveillance and wire-tapping; and arresting alleged violators. He developed suspect profiles
and gathered evidence to demonstrate to the local U.S. Attorney that the elements of a crime
had been committed. The claimant was sometimes called upon to testify in a U.S. court.
Knowledge required by his position included that of the laws, statutes, and regulations on
which USCS enforcement authorities are based, and specific case law regarding seizures, civil
rights, and preservation of evidence. The claimant worked under the general direction and
policy guidance of the IA's Group Supervisor.

*Evaluation of FLSA Coverage*

Sections 551.201 and 551.202 of title 5, CFR, require an employing agency to designate an
employee FLSA exempt only when the agency correctly determines that the employee meets
one or more of the exemption criteria. In all exemption determinations, the agency must
observe the following principles: (a) Each employee is presumed to be FLSA nonexempt. (b)
Exemption criteria must be narrowly construed to apply only to those employees who are
clearly within the terms and spirit of the exemption. (c) The designation of a position's FLSA
status ultimately rests on the duties actually performed by the employee.

Because the claim period when the claimant occupied his GS-13 position covers 1991 to
1992, we must apply the FLSA regulations of 5 CFR part 551 (1990) in effect during the
period of the claim. The claimant believes his position should have been designated as
nonexempt from the overtime pay provisions of the FLSA and thus not covered by the
executive, administrative, or professional exemptions as detailed in 5 CFR 551.204, 5 CFR
551.205, and 5 CFR 551.206 of those regulations.

The agency indicates that due to the age of the claim, it could provide only limited
information regarding the claimant's employment with USCS during the claim period. In its
letter of October 28, 2016, to OPM, the agency made no final determination on whether the
claimant's GS-13 criminal investigator position met the exemption criteria. Based on careful
review of the record and the claimant's assigned duties and responsibilities, we conclude the
claimant's position did not meet the executive or professional exemption criteria, and the
claimant does not disagree. However, we have evaluated his GS-13 criminal investigator
position against the administrative exemption criteria in effect during the time of the claim.

GS-1811-13 position occupied from August 11, 1991, to April 18, 1992

The regulation under 5 CFR 551.205 describes the administrative exemption criteria as
follows:

> An administrative employee is an advisor, assistant, or representative of management, or a
> specialist in a management or general business function or supporting service who meets
> all of the following criteria:

(a) The employee's primary duty consists of work that: (1) significantly affects the formulation or execution of management policies or programs; or (2) involves general management or business functions or supporting services of substantial importance to the organization serviced; or (3) involves substantial participation in the executive or administrative functions of a management official.

(b) The employee performs office or other predominantly non-manual work which is: (1) intellectual and varied in nature; or (2) of a specialized or technical nature that requires considerable special training, experience, and knowledge.

(c) The employee must frequently exercise discretion and independent judgment, under only general supervision, in performing the normal day-to-day work.

Although no longer in effect, the definitions of terms used in the FLSA exemption criteria as contained in the Attachment to *Federal Personnel Manual* (FPM) Letter 551-7, dated July 1, 1975, provide useful guidance in applying the administrative exemption criteria in 5 CFR 551.205 discussed above. The meaning of terms relevant to the criteria follows.

(a) <u>Primary duty</u>. As a general rule, the primary duty is that which constitutes the major part (over 50%) of the employee's work.

(b) <u>Formulation or execution of management policies or programs</u>. Management policies and programs range from broad national goals that are expressed in statutes or Executive Orders to specific objectives of a small field office. Employees may actually make policy decisions or participate indirectly, through developing proposals that are acted on by others. Employees who significantly affect the execution of management policies or programs typically are those whose work involves obtaining compliance with such policies by other individuals or organizations, within or outside of the Federal Government, or making significant determinations in furtherance of the operation of programs and accomplishment of program objectives. Administrative employees engaged in formulation or execution of management policies or programs typically perform one or more phases of program management (i.e., planning, developing, promoting, coordinating, controlling, or evaluating operating programs of the employing organization or of other organizations subject to regulation or other controls). Some of these employees are classified in occupations that reflect these functions (e.g., program analyst) but many are classified in subject matter occupations.

(c) <u>General management, business, or supporting services</u>. This element brings into the administrative category a wide variety of specialists who provide general management, business, or other supporting services as distinguished from production functions. Administrative employees in this category provide support to line managers by: (1) providing expert advice in specialized subject matter fields, such as that provided by management consultants or systems analysts; (2) assuming facets of the overall management function, such as safety management, personnel management, or budgeting and financial management; (3) representing management in such business functions as negotiating and administering contracts, determining acceptability of goods or services, or authorizing payments; or (4) providing

supporting services, such as automated data processing, communications, or procurement and distribution of supplies. To warrant exemption, each employee's work must involve substantial discretion on matters of enough importance that the employee's actions and decisions have a noticeable impact on the effectiveness of the organization advised, represented, or serviced.

(d) Participation in the functions of a management official. This element includes those employees (variously identified as secretaries, administrative or executive assistants, aids, etc.) who participate in portions of the managerial or administrative functions of a supervisor whose scope of responsibility precludes personally attending to all aspects of the work. To support exemption, such assistants must be delegated and exercise substantial authority to act for the supervisor in the absence of specific instructions or procedures. Typically these employees do not have technical knowledge of the substantive work under the supervisor's jurisdiction. Their primary knowledge is of administrative procedures, organizational relationships, and the policies, plans, interests and views of the supervisor.

The FPM letter lists three elements involved in the evaluation of discretion and independent judgment: (1) The work must involve sufficient variables as to regularly require discretion and judgment in determining the approaches and techniques to be used, and in evaluating results. This precludes exempting employees who perform work primarily requiring skill and applying standardized techniques or knowledge of established procedures, precedents, or other guidelines which specifically govern the employee's action. (2) The employee must have authority to make such considerations during the course of assignment. This precludes exempting trainees who are in a line of work which requires discretion but who have not been given authority to decide discretionary matters independently. (3) The decisions made independently must be significant. Although this term is not so restrictive as to include only the kinds of decisions made by employees who formulate policies or exercise broad commitment authority, it does not extend to the kinds of decisions that affect only the procedural details of the employee's own work, or to such matters as deciding whether a situation does or does not conform to clearly applicable criteria.

The claimant's investigative work did not meet paragraph (a) of the administrative exemption criteria. His primary duty was not to serve as an advisor, assistant, or representative of agency management, or as a specialist in a management or general business function or supporting service. As a GS-13 investigator for an IA office, he spent all of his time conducting investigations of allegations of criminal and administrative misconduct or violations committed by USCS employees for the Southwest Region. Allegations included bribery, fraud, corruption, embezzlement, theft or misuse of funds or Government property, unauthorized release of classified information, drug use or possession, and smuggling of drugs, aliens, and other contraband. The claimant provided the name of his previous supervisor (i.e., the IA's Group Supervisor), but none of the voicemail and other messages sent through the contact information we identified were answered. Because the claimant was unable to provide names and/or contact information for coworkers, we were unable to confirm his primary duties during this period from other sources. However, the burden of proof lies with the agency to show that a position is FLSA exempt, and the USCS has failed to provide any information indicating the claimant's primary duty was to serve as an advisor, assistant,

or representative of agency management, or as a specialist in a management or general business function or support service.

The claimant did not meet the requirements of (a)(1) of the administrative exemption criteria. Contrary to the agency's assertion that GS-13 Special Agents advised management officials on "critical law enforcement programs involving highly important functions that influence accomplishment of objectives of the entire Customs Service," we found the claimant's primary duties did not significantly affect the formulation or execution of management policies or programs. The claimant carried out individual investigations rather than major assignments associated with conducting the operations of the organization. As an IA employee at a field office performing investigative work, he did not make policy decisions or participate indirectly through developing proposals that were acted on by others. Rather than affecting the organization's operations to a substantial degree, the claimant's work products tracked an individual investigation to determine whether a crime or misconduct had occurred. For example, when the IA office received a report of theft at an airport, he conducted the investigation by verifying a theft occurred, conducting interviews, identifying the employees or other individuals with opportunity and motive, and gathering sufficient evidence to support conclusions. He forwarded cases requiring legal action to the U.S. Attorney for prosecution of the facts meeting a criminal offense. His reports with findings of administrative misconduct were forwarded to the Group Supervisor and others, who issued letters to the supervisor of the employee (i.e., the subject of the investigation) with recommendations of actions to be taken including oral admonishment, suspension, termination, and demotion. The claimant's investigative work did not involve making significant determinations in furtherance of the operation of programs and accomplishment of program objectives. In addition, unlike administrative employees, he did not perform any phases of program management such as planning, controlling, or evaluating operating programs.

The claimant did not meet the requirements of (a)(2) of the administrative exemption criteria. His primary duties did not involve general management or business functions or supporting services of substantial importance to the organization serviced. Although he performed a staff support function by providing factual investigative information to assist his agency management in making recommendations on individual allegations of employee misconduct, the claimant did not perform a support function of substantial importance to the organizations serviced as expected by (a)(2). He independently investigated allegations and submitted investigative reports at the conclusion of a case. If his findings revealed, for example, that a crime occurred due to insufficient personnel at the Mexican border, IA management may have recommended staffing or scheduling changes. However, the claimant's investigative responsibilities are not viewed as an extension of the management process, and the impact of his work was limited to that which he personally performed relating to the subject individual investigation, rather than helping to manage or affecting the management of significant matters within the claimant's agency. Furthermore, he was not involved in systems analysis and general management support functions, e.g., safety and personnel management, budgeting, and financial management. The claimant did not represent agency management in negotiating and administering contracts for goods or services, and did not provide support services, e.g., automated data processing, communications, procurement, and distribution of supplies.

The claimant did not meet the requirements of (a)(3) of the administrative exemption criteria. His assignments did not involve substantial participation in the executive or administrative functions of a management official. He did not act as a secretary or administrative assistant participating in portions of the managerial or administrative functions of a supervisor, with no requirement for technical knowledge of the substantive work under the supervisor's jurisdiction. Unlike such employees, the claimant independently performed the IA work in a field office requiring technical knowledge of substantive law enforcement and investigative work relating to violations of laws.

The claimant does not meet the administrative exemption because he does not meet paragraph (a) of the criteria. Although we conclude he met paragraphs (b) and (c) of the exemption criteria, we will not discuss them since an administrative employee must meet (a), (b), and (c) in its entirety.

**Decision**

The claimant's work was nonexempt (i.e., covered by the overtime pay provisions of the FLSA), and he is entitled to compensation for all overtime hours worked at the FLSA overtime rate for the period of the claim he was improperly designated as FLSA exempt; i.e., from March 15, 1987, to April 18, 1992, less his active duty military service time from February 25, 1991, to July 18, 1991. Since his FLSA settlement was for a time period subsequent to April 18, 1992, it is not germane to the overtime pay calculations for the period of the claim covered by this decision. The agency must follow the compliance requirements on page ii of this decision.

The claimant must submit evidence showing the amount and extent of overtime that was performed as provided for in 5 CFR 551.706(a) as informed by the agency payroll records submitted to OPM and the claimant. The agency will have the opportunity to review this evidence using any sources of information available, including witnesses, before a determination is made as to whether the claimant is entitled to any back pay under the FLSA and any interest as required under 5 CFR part 550, subpart H.[5] Any petition for attorney's fees and expenses must be submitted to the agency out of which this claim arose. Should the claimant be determined to be entitled to back pay which the claimant believes to be incorrectly computed, the claimant may file a new FLSA claim with this office.

---

[5] The agency's overtime and interest calculations must account for the claimant's prior receipt of administratively uncontrollable overtime, documented as "premium pay" on his SF 50s covering the claim period, using the principles contained within 29 U.S.C. 207(k), 5 CFR 551.501(a)(1) and (5), and 5 CFR 551.541(a). OPM's Fact Sheet on the topic can be found here: https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/guidance-on-applying-flsa-overtime-provisions-to-law-enforcement-employees-receiving-administratively-uncontrollable-overtime-pay/.

## Distribution

Mr. Jules Bernstein and Ms. Linda Lipsett
Law Offices
Bernstein & Lipsett, P.C.
1130 Connecticut Avenue, NW
Suite 950
Washington, DC  20036-1798
lipsett@aol.com
chouse@bernstein-lipsett.com

Mr. William F. Walsh
1864 77th Drive
Vero Beach, FL  32966
investigatorwfw@aol.com

Ms. Deborah Eldredge
Manager, Compensation and Benefits
Human Capital Policy and Programs
Office of the Chief Human Capital Officer
U.S. Department of Homeland Security
Deborah.Eldredge@hq.dhs.gov



UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
Washington, DC 20415

Merit System
Accountability and
Compliance

# U.S. Office of Personnel Management
# Fair Labor Standards Act Decision
# Under section 204(f) of title 29, United States Code

|  |  |
|---|---|
| **Claimant:** | Michael Woodworth |
| **Agency Classification:** | Criminal Investigator<br>GS-1811-13<br>Supervisory Criminal Investigator<br>GM-1811-14 |
| **Organization:** | U.S. Customs Service |
| **Claim:** | Positions should be nonexempt, thus due FLSA overtime pay |
| **OPM Decision:** | Nonexempt for part of the claim period; potentially due FLSA overtime pay |
| **OPM Decision Number:** | F-1811-14-02 |

Linda Kazinetz
Classification Appeals and FLSA Claims
    Program Manager
Agency Compliance and Evaluation
Merit System Accountability and Compliance

May 30, 2019
Date

WOODWORTH EXHIBIT 1

As provided in section 551.708 of title 5, Code of Federal Regulations (CFR), this decision is binding on all administrative, certifying, payroll, disbursing, and accounting officials of agencies for which the Office of Personnel Management (OPM) administers the Fair Labor Standards Act (FLSA). The agency should identify all similarly situated current and, to the extent possible, former employees, ensure that they are treated in a manner consistent with this decision, and inform them in writing of their right to file an FLSA claim with the agency or OPM. There is no further right of administrative appeal. This decision is subject to discretionary review only under conditions and time limits specified in 5 CFR 551.708 (address provided in section 551.710). The claimant has the right to bring action in the appropriate Federal court if dissatisfied with this decision.

The agency is to review whether the claimant has worked overtime in accordance with instructions in the "Decision" section of this decision, and if the claimant is determined to be entitled to back pay, the agency must pay the claimant the amount owed him plus interest as provided in 5 CFR 550.806. If the claimant believes the agency has incorrectly computed the amount owed him, he may file a new FLSA claim with this office.

**Introduction**

On May 9, 2012, the U.S. Office of Personnel Management (OPM) received a letter dated
May 9, 2012, from the Law Offices of Bernstein & Lipsett, P.C. (B & L), the claimant's duly
appointed representative, concerning a Fair Labor Standards Act (FLSA) claim they had
initially filed on the claimant's behalf with the General Accounting Office (GAO), now the
U.S. Government Accountability Office, on June 13, 1990, and subsequently with OPM on
June 4, 1999, challenging his exemption status under the FLSA when he was employed in a
series of Criminal Investigator, GS-1811-13, and Supervisory Criminal Investigator,
GM-1811-14, positions with the U.S. Customs Service (USCS), now integrated into the
Department of Homeland Security (DHS). The claimant was a plaintiff in a lawsuit filed in the
U.S. Court of Federal Claims at approximately the same time the administrative claim was filed
with GAO. Based on information provided by B & L, the claimant was awarded back pay
under a settlement agreement for the pay period ending June 18, 1988, to the pay period ending
October 29, 1994, subject to the two-year statute of limitations for FLSA claims under
29 United States Code (U.S.C.) 255(a).

B & L has requested OPM adjudicate the administrative claim filed with OPM and asserts that,
because the claimant served in the military during the Gulf War, the statute of limitations
applicable to this claim is the five-year statute of limitations under 31 U.S.C. 3702(b)(2) rather
than the two-year statute of limitations (three years for willful violations) applicable to FLSA
administrative claims filed under the Barring Act. *See* 73 Comp. Gen 157 (May 23, 1994);
31 U.S.C. 3702(b); 29 U.S.C. 255(a). B & L states the claimant was called to active duty with
the United States Army Reserve "from approximately April 15, 1991 to April 26, 1991" in
connection with Operation Desert Shield/Storm and, citing the provisions of
31 U.S.C. 3702(b)(2), asserts: "[H]e is entitled to retroactive back pay and interest ... for the
period he was employed prior to the commencement of the Gulf War on August 2, 1990, up to
the date he recovered under previous FLSA settlements. This period includes August 2, 1985
to June 4, 1988, less Mr. Woodworth's active duty military service time, for which he does not
seek recovery."

In reaching our FLSA claim decision, we have carefully reviewed all information furnished by
the claimant's representative and the agency, including information obtained from telephonic
interviews with the claimant.

**Background**

We previously accepted and decided six similar claims under section 4(f) of the FLSA, as
amended, codified at section 204(f) of title 29, U.S.C., which we denied as time barred.
Subsequently, the claimant's representative brought suit under the Administrative Procedure
Act (5 U.S.C. 551 *et seq.*, and 701 *et seq.*) in the United States District Court for the District of
Columbia, alleging that OPM wrongfully applied a two-year statute of limitations in denying
their administrative claims for unpaid FLSA overtime pay. *Armstrong v. Archuleta,* 77
F.Supp.3d 9 (December 30, 2014). In relevant part, the court stated in its opinion:

> All Plaintiffs are deemed to have timely filed their claims as of the date of their filings
> with the Claims Court. As a result, Plaintiffs . . . can recover for the entire claim period

under the five-year statute of limitations—that is, for all claims that accrued within five years before the Gulf War commenced on August 2, 1990—minus monies paid under their DOJ Settlements.

**************

[T]he case is remanded to OPM to adjudicate and process damages in accordance with FLSA and other applicable laws, and Plaintiffs' respective employing agencies are directed to compensate them in accordance with OPM's determinations.

Consistent with the holding in the *Armstrong* case, we will apply the five-year statute of limitations and corrective methodology (subtracting monies already received under prior settlements or judgments) to the claims of similarly-situated claimants we find to be FLSA nonexempt and potentially due FLSA overtime pay.

**Analysis**

Under the provisions of 5 CFR 551.706, OPM determines the facts necessary to adjudicate a claim. From August 2, 1985, to June 4, 1988, the claimant occupied five separate criminal investigator positions. Applying the court's mandate to determine whether the claimant is owed overtime pay under the FLSA, we must first determine whether the work he performed while occupying the positions is exempt or nonexempt from the overtime pay provisions of the FLSA. On September 29, 2015, in response to the aforementioned court decision, OPM requested an agency administrative report (AAR) from DHS regarding this FLSA claim. By letter dated October 28, 2016, DHS advised OPM that although GS-1811 criminal investigators at the GS-9, 11, and 12 levels were designated exempt, based on their fact finding they should be considered nonexempt. Regarding the exemption status of criminal investigators at the GS-13 level, the agency references a standard GS-13 position description (PD) (#T046034) used at the time of this claim to describe the work of Senior Special Agents.[1] The GS-13 criminal investigators "were expected to take on a leadership role in coordinating and directing investigations, providing training, and advising and representing USCS management on critical law enforcement programs involving highly important functions that influence accomplishment of objectives of the entire Customs Service." The agency states that "[i]f the Senior Special Agents' position description is accurate, they could potentially qualify as exempt administrative employees." However, the agency indicates that "[a]lthough the duties described above would likely qualify as exempt work, the GS-1811-13 position description also includes a number of non-exempt duties." The agency notes these nonexempt duties include conducting "highly complex and sensitive criminal investigations." Given their assessment of the PD and the need to clarify the actual duties performed by GS-13 Senior Special Agent claimants, the agency defers to OPM to resolve their exemption status.

---

[1] The claimant's Standard Form (SF) 50s documenting his employment history show he was not assigned to PD number T046034 at any time during the claim period. The agency was unable to provide a copy of any of the PDs to which he was officially assigned. However, at our request, the claimant submitted various PDs to OPM, which we discuss later in this decision. The PDs and our interviews with the claimant confirm he occupied and performed the duties and responsibilities of the Senior Special Agent position for part of the claim period.

*Evaluation of FLSA Coverage*

Sections 551.201 and 551.202 of title 5, CFR, require an employing agency to designate an employee FLSA exempt only when the agency correctly determines that the employee meets one or more of the exemption criteria. In all exemption determinations, the agency must observe the following principles:

(a) Each employee is presumed to be FLSA nonexempt.

(b) Exemption criteria must be narrowly construed to apply only to those employees who are clearly within the terms and spirit of the exemption.

(c) The designation of a position's FLSA status ultimately rests on the duties actually performed by the employee.

Because the claim period covers 1985 to 1988, we must apply the FLSA regulations of 5 CFR part 551 (1984) in effect during the period of the claim. However, in response to a court decision, OPM amended these regulations in 1988 by eliminating the presumption that employees in positions classified at GS-11 and above were exempt from the overtime pay provisions of the FLSA, and changed the criteria for determining whether a Federal employee was an executive under the FLSA. *See* 53 *Federal Register* 1739-01 (January 22, 1988). The claimant believes his position should have been designated as nonexempt from the overtime pay provisions of the FLSA and thus not covered by the executive, administrative, or professional exemptions as detailed in 5 CFR 551.204, 5 CFR 551.205, and 5 CFR 551.206 of those regulations.

The agency indicates that due to the age of the claim, it could provide only limited information regarding the claimant's employment with USCS during the claim period. In its letter of October 28, 2016, to OPM, the agency made no final determination on whether the claimant's GS-13 and GM-14 criminal investigator positions met the exemption criteria. Based on careful review of the record and the claimant's assigned duties and responsibilities, we conclude the claimant's position did not meet the professional exemption criteria, and the claimant does not disagree. However, we have evaluated his nonsupervisory GS-13 criminal investigator positions against the administrative exemption criteria, and his supervisory GM-14 criminal investigator positions against both the executive and administrative exemption criteria in effect during the time of the claim.

Analysis of GS-1811-13 position occupied from August 2, 1985, to February 1, 1986[2]

*Administrative Exemption Criteria*

The regulation under 5 CFR 551.205 describes the administrative exemption criteria as follows:

> An administrative employee is an advisor, assistant, or representative of management, or a specialist in a management or general business function or supporting service who meets all of the following criteria:

> (a) The employee's primary duty consists of work that: (1) significantly affects the formulation or execution of management policies or programs; or (2) involves general management or business functions or supporting services of substantial importance to the organization serviced; or (3) involves substantial participation in the executive or administrative functions of a management official.

> (b) The employee performs office or other predominantly non-manual work which is: (1) intellectual and varied in nature; or (2) of a specialized or technical nature that requires considerable special training, experience, and knowledge.

> (c) The employee must frequently exercise discretion and independent judgment, under only general supervision, in performing the normal day-to-day work.

Although no longer in effect, the definitions of terms used in the FLSA exemption criteria as contained in the Attachment to *Federal Personnel Manual* (FPM) Letter 551-7, dated July 1, 1975, provide useful guidance in applying the administrative exemption criteria in 5 CFR 551.205 discussed above. The meaning of terms relevant to the criteria follows.

> (a) <u>Primary duty</u>. As a general rule, the primary duty is that which constitutes the major part (over 50%) of the employee's work.

> (b) <u>Formulation or execution of management policies or programs</u>. Management policies and programs range from broad national goals that are expressed in statutes or Executive Orders to specific objectives of a small field office. Employees may actually make policy decisions or participate indirectly, through developing proposals that are acted on by others. Employees who significantly affect the execution of management policies or programs typically are those whose work involves obtaining compliance with such policies by other individuals or organizations, within or outside of the Federal Government, or making significant determinations in furtherance of the operation of programs and accomplishment of program objectives. Administrative

---

[2] B & L states the claimant occupied this GS-1811-13 position commencing August 2, 1985. Although the record includes an SF-50 for a within-grade increase associated with this position effective October 15, 1985, it does not include the SF-50 showing his placement into the position to confirm he occupied it from August 2, 1985. Regardless, the claimant confirmed he occupied the position from August 2, 1985, and the agency does not disagree.

employees engaged in formulation or execution of management policies or programs typically perform one or more phases of program management (i.e., planning, developing, promoting, coordinating, controlling, or evaluating operating programs of the employing organization or of other organizations subject to regulation or other controls). Some of these employees are classified in occupations that reflect these functions (e.g., program analyst) but many are classified in subject matter occupations.

(c) General management, business, or supporting services. This element brings into the administrative category a wide variety of specialists who provide general management, business, or other supporting services as distinguished from production functions. Administrative employees in this category provide support to line managers by: (1) providing expert advice in specialized subject matter fields, such as that provided by management consultants or systems analysts; (2) assuming facets of the overall management function, such as safety management, personnel management, or budgeting and financial management; (3) representing management in such business functions as negotiating and administering contracts, determining acceptability of goods or services, or authorizing payments; or (4) providing supporting services, such as automated data processing, communications, or procurement and distribution of supplies. To warrant exemption, each employee's work must involve substantial discretion on matters of enough importance that the employee's actions and decisions have a noticeable impact on the effectiveness of the organization advised, represented, or serviced.

(d) Participation in the functions of a management official. This element includes those employees (variously identified as secretaries, administrative or executive assistants, aids, etc.) who participate in portions of the managerial or administrative functions of a supervisor whose scope of responsibility precludes personally attending to all aspects of the work. To support exemption, such assistants must be delegated and exercise substantial authority to act for the supervisor in the absence of specific instructions or procedures. Typically these employees do not have technical knowledge of the substantive work under the supervisor's jurisdiction. Their primary knowledge is of administrative procedures, organizational relationships, and the policies, plans, interests and views of the supervisor.

(e) Work of an intellectual nature. Work requiring general intellectual abilities, such as perceptiveness, analytical reasoning, perspective, and judgment applied to a variety of subject matter fields, or work involving mental processes which involve substantial judgment based on considering, selecting, adapting, and applying principles to numerous variables. The employee cannot rely on standardized application of established procedures or precedents, but must recognize and evaluate the effect of a continual variety of conditions or requirements in selecting, adapting, or innovating techniques and procedures, interpreting findings, and selecting and recommending the "best" alternative from among a broad range of possible actions.

(f) Work of a specialized or technical nature. Work which requires substantial specialized knowledge of a complex subject matter and of the principles, techniques, practices, and procedures associated with that subject matter field. This knowledge

characteristically is acquired through considerable on-the-job training and experience in the specialized subject matter field, as distinguished from professional knowledge characteristically acquired through specialized academic education.

(g) Discretion and independent judgment. The exercise of discretion and independent judgment involves: (1) comparing and evaluating possible courses of conduct, and (2) interpreting results or implications, and independently taking action or making a decision after considering the various possibilities. However, firm commitments or final decisions are not necessary to support exemption. The "decisions" made as a result of the exercise of independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decisions are subject to review, and that on occasion the decisions are revised or reversed after review, does not mean that the employee is not exercising discretion and independent judgment of the level required for exemption.

The FPM letter lists three elements involved in the evaluation of discretion and independent judgment: (1) The work must involve sufficient variables as to regularly require discretion and judgment in determining the approaches and techniques to be used, and in evaluating results. This precludes exempting employees who perform work primarily requiring skill and applying standardized techniques or knowledge of established procedures, precedents, or other guidelines which specifically govern the employee's action. (2) The employee must have authority to make such considerations during the course of assignment. This precludes exempting trainees who are in a line of work which requires discretion but who have not been given authority to decide discretionary matters independently. (3) The decisions made independently must be significant. Although this term is not so restrictive as to include only the kinds of decisions made by employees who formulate policies or exercise broad commitment authority, it does not extend to the kinds of decisions that affect only the procedural details of the employee's own work, or to such matters as deciding whether a situation does or does not conform to clearly applicable criteria.

The claimant met paragraph (a) of the administrative exemption criteria. As a criminal investigator assigned to the Office of Enforcement, Office of Investigations, Financial Investigations Division, Liaison and Communications Branch, in Washington, DC, he met the requirements of (a)(1) as his primary duties involved formulating and executing management policies or programs. His supervisor (i.e., the Financial Investigations Division Chief) and higher-level officials participated in briefings, hearings, and other meetings before Congress and agency heads. The claimant states his role involved preparing comments and other information regarding the status of the investigations program and budget for use at these high-level meetings and discussions. He monitored the status of the budget, determining when requests for resources were justified. For example, he responded to requests from the field should an office require additional manpower or other resources due to spikes in criminal activity. If an agency head or Member of Congress proposed a new initiative, the claimant evaluated whether the resulting work could be accomplished with existing resources and how (e.g., by which field offices). Also similar to the requirements of (a)(1), he formulated and executed management policies or programs by developing goals for the field offices to conduct certain types of investigations, coordinating the work with the various offices, and evaluating accomplishments toward meeting the goals and objectives.

The claimant met paragraph (b) of the administrative exemption criteria. He met (b)(1) as he performed office non-manual work which was intellectual and varied in nature. In addition to the work described above, he served as a desk officer by responding to inquiries and providing information to field office agents conducting undercover operations, for example, by answering questions regarding the handling of money from agents posing as money launderers. Although required to abide by specific laws and procedures governing criminal investigations, he could not rely on standardized application of established procedures or precedents. To answer desk officer inquiries, make resource-related recommendations, and prepare materials for use at high-level meetings, the claimant applied perceptiveness, analytical reasoning, and judgment based on considering, selecting, adapting, and applying criminal investigative principles to numerous variables to advise on what was legal and proper, decide the "best" approach from a broad range of possible actions, and justify recommendations regarding program goals and objectives.

The claimant also met (b)(2) in that his work as a full-performance Special Agent was highly specialized and technical in nature, requiring considerable special training, experience, and knowledge. He possessed and regularly applied specialized knowledge of the complex subject matter field of Federal criminal investigations, including the principles, techniques, practices, and investigative procedures associated with that field. This knowledge was acquired through regular and extensive formal agency in-service training and considerable on-the-job training and experience as, for example, a Federal Air Marshal.

The claimant met paragraph (c) of the administrative exemption criteria, as he exercised discretion and independent judgment to perform his normal day-to-day assignments under only general supervision. In doing so, he had full authority to develop recommendations affecting the direction of program resources and work assignments, participate in setting goals, evaluate accomplishments, and make determinations in the course of undercover operations. He compared and evaluated the possible courses of action, interpreted results, and independently took action or made decisions after consideration of the various outcomes from directing resources, workload, and investigations.

Therefore, the claimant's position met the administrative exemption as paragraphs (a), (b), and (c) of the administrative exemption criteria were met.

Analysis of GM-1811-14 position occupied from February 2, 1986, to May 10, 1986

*Executive Exemption Criteria*

The regulation under 5 CFR 551.204 describes the executive exemption criteria as follows:

An "executive" employee is a supervisor, foreman, or manager who manages a Federal agency or any subdivision thereof (including the lowest recognized organizational unit with a continuing function) and regularly and customarily directs the work of at least three subordinate employees (excluding support employees) and meets all of the following criteria:

   (a) The employee's primary duty consists of management or supervision. The primary
      duty requirement is met if the employee:

      (1) Has authority to select or remove, and advance in pay and promote, or make any
          other status changes of subordinate employees, or has authority to suggest and
          recommend such actions with particular consideration given to these suggestions
          and recommendations; and

      (2) Customarily and regularly exercises discretion and independent judgment in such
          activities as work planning and organization; work assignment, direction, review,
          and evaluation; and other aspects of management of subordinates, including
          personnel administration.

Similar to the executive criteria, the claimant's primary duty as a GM-14 Supervisory
Criminal Investigator was to function as a supervisor assigned to the Office of Enforcement,
Office of Investigations, Financial Investigations Division, Investigative Operations Branch,
in Washington, DC. His temporary promotion to the GM-14 position, effective February 2,
1986, was not to exceed May 31, 1986. The claimant believes the position was assigned to a
newly-created organization,[3] and he was temporarily promoted while the agency filled the
GM-14 position permanently. In the meantime, he regularly and customarily directed the
work of approximately 10 criminal investigators, analysts, and support staff. However, in
contrast to (a)(1) of the executive exemption criteria, he states he had no authority to select or
remove, and advance in pay and promote, or make any other status changes over his
subordinate employees. We were unable to confirm from any other sources whether he held
these authorities, but given the short duration and limited purpose of this temporary
supervisory assignment, it is doubtful the agency delegated them to him during this period.
Moreover, because the burden of proof lies with the agency to show that a position is FLSA
exempt and the USCS has failed to provide any information indicating the claimant retained
such authorities, we conclude the claimant did not hold any of them during this brief period.

The claimant's position did not meet the requirements of (a)(2) of the executive exemption
criteria. Although he managed his subordinates by carrying out aspects of personnel
administration including approving leave and providing technical input on the conduct of
investigations, he did not customarily and regularly exercise discretion and independent
judgment in planning and organizing the work of the organization. The claimant asserts he
worked closely with his supervisor (i.e., the Financial Investigations Division Chief) on
making and distributing assignments to the criminal investigators assigned to the
organization. He states he would get the "okay" from his supervisor prior to his making work
assignments. We were unable to confirm from any other sources whether he held these
authorities, but given the short duration and limited purpose of his temporary supervisory

---

[3] The claimant believes he served as the temporary supervisor for the newly-formed Child
Pornography Unit. However, at our request, he forwarded the PD (#TOQ7384) he was assigned
to during this period. The PD, which includes a note stating "[p]art of the realignment of the
Office of Enforcement" describes the incumbent serving as the Investigations Operations Branch
Chief with responsibility for developing approaches, procedures, and programs for the most
effective enforcement of the Currency and Foreign Transactions Reporting Act.

assignment, in addition to the organization being newly formed at the time, we find it plausible the claimant shared responsibility with his supervisor for assigning and distributing work. We conclude he did not exercise discretion and independent judgment to assign, direct, review, and evaluate the work performed by subordinate criminal investigators and other staff.

Since the claimant's position met none of the required executive exemption criteria, the claimant did not meet the executive exemption.

*Administrative Exemption Criteria*

As described under 5 CFR 551.205, an administrative employee is an advisor, assistant, or representative of management, or a specialist in a management or general business function or supporting service who meets all of the criteria listed under the administrative exemption previously addressed in this decision. In applying the criteria to the position the claimant held during his temporary promotion, we conclude he did not meet the primary duty requirements typical of administrative employees. During his temporary promotion, his primary duty was solely to function as the supervisor over approximately 10 criminal investigators, analysts, and support staff. In that role, he performed none of the tasks characteristic of administrative employees including: (1) significantly affecting the formulation or execution of management policies or programs; or (2) involving general management or business functions or supporting services of substantial importance to the organization serviced; or (3) involving substantial participation in the executive or administrative functions of a management official. Therefore, because the claimant's work during this temporary promotion did not meet the primary duty test of the administrative exemption criteria, we find it was not covered by the criteria.

Analysis of GM-1811-14 position occupied from May 11, 1986, to October 11, 1986

*Executive Exemption Criteria*

Similar to the executive exemption criteria (see page 7), the claimant's primary duty as GM-14 Supervisory Criminal Investigator was to serve as Resident Agent in Charge (RAC) in Laredo, Texas, and function as the supervisor by regularly and customarily directing the work of approximately 10 criminal investigators, patrol officers, and support staff. His position was supervised by the Special Agent in Charge (SAC) assigned to San Antonio, Texas. The claimant forwarded an unnumbered PD to OPM, which we conclude covers this position as it describes a GM-14 RAC position assigned to the Southwest Region. The PD states the incumbent "exercises the full range of supervisory and management authority over all Office of Enforcement employees assigned to his/her geographic area of responsibility." Based on the PD provided and the claimant's statements during our interview, we conclude he had authority to select or remove, and advance in pay and promote, or make any other status changes over his subordinate positions similar to (a)(1) of the executive exemption criteria.

The claimant's position also met the requirements of (a)(2) of the executive exemption criteria. He customarily and regularly exercised discretion and independent judgment in planning and organizing the work of the office. In addition, the claimant assigned, directed,

reviewed, and evaluated the case work performed by his subordinate criminal investigators and patrol officers. In managing his subordinates, he also carried out other aspects of personnel administration including approving leave and providing technical input on the conduct of investigations.

The claimant's position met (a)(1) and (a)(2) of the executive exemption criteria. Since he met the executive exemption, we will not address his GM-14 supervisory criminal investigator position against the administrative exemption criteria.

Analysis of GM-1811-14 position occupied from October 12, 1986, to April 25, 1987, and GS-1811-13 position occupied from April 26, 1987, to November 21, 1987[4]

*Administrative Exemption Criteria*

The claimant's criminal investigations work did not meet paragraph (a) of the administrative exemption criteria (see pages 3-6). His primary duty was not to serve as an advisor, assistant, or representative of agency management, or as a specialist in a management or general business function or supporting service. As a criminal investigator assigned to the RAC Laredo office but duty stationed to McAllen, Texas, he spent all of his time investigating criminal violations of various laws governing the illegal sale of drugs and laundering of money. In a coordinated effort with the U.S. Department of the Treasury (Treasury), the claimant's role involved ensuring sufficient evidence was gathered that criminal violations had occurred in order for Treasury to pursue civil penalty cases and levy multi-million dollar penalties targeting entities and individuals for their role in the drug trafficking and money laundering activities.

The claimant did not meet the requirements of (a)(1) of the administrative exemption criteria. Contrary to the agency's assertion that GS-13 Special Agents advised management officials on "critical law enforcement programs involving highly important functions that influence accomplishment of objectives of the entire Customs Service," we found the claimant's primary duties did not significantly affect the formulation or execution of management

---

[4] The claimant asserts he performed the same work when he occupied the GM-14 position (from October 12, 1986, to April 25, 1987) and the GS-13 position (from April 26, 1987, to November 21, 1987). While the claimant served as the RAC in Laredo, the agency relieved him of his supervisory responsibilities. Effective October 12, 1986, the agency placed him on a detail not to exceed July 26, 1987. The SF-50 for the action shows the position to which he was detailed was classified as GM-14 but titled "Criminal Investigator" instead of "Supervisory Criminal Investigator." The agency subsequently assigned him to a GS-13 position effective April 26, 1987. The claimant asserts that, when the agency relieved him of the supervisory responsibilities, he physically worked from the McAllen, Texas, office and performed criminal investigator work on a civil penalties case for his detail to the GM-14 position and subsequent change-to-lower-grade to the GS-13 position. Although managers and supervisors were normally designated under the "GM" pay plan, we find it plausible the claimant performed nonsupervisory criminal investigator work while on detail to the GM-14 position as we note the agency expressly removed the "Supervisory" designation from his Criminal Investigator title.

policies or programs. As a field office employee assigned to the RAC Laredo office performing the line investigative work of the Office of Enforcement, USCS, he did not make policy decisions or participate indirectly through developing proposals that were acted on by others. Also unlike administrative employees, he did not perform any phases of program management such as planning, controlling, or evaluating operating programs.

Because the claimant was unable to provide names and/or contact information for his previous supervisor (the SAC San Antonio) or coworkers, we were unable to confirm his primary duties during this period from other sources. The claimant remained with the RAC Laredo office, although duty stationed to McAllen, Texas, when he was detailed to the nonsupervisory GM-14 position and later assigned to the GS-13 position. As previously mentioned, the claimant provided his PD for the GM-14 RAC position in the Southwest Region, which we note described the field organization as "a major, highly mobile, investigative and tactical enforcement organization which utilizes the full range of enforcement tools and techniques." This description of the RAC office is consistent with an organization that has as its main function the performance of the line investigative and enforcement work of its agency. Furthermore, the PD describes the RAC who "shares with the [SAC] the responsibility to develop and implement necessary and appropriate investigative and tactical programs and strategies to support National and Regional enforcement priorities; to identity, evaluate, monitor and counteract threats to the laws and regulations of the United States, most specifically the [USCS]; to administer official policy and procedures as they apply to enforcement activities...." We thus conclude the claimant, when he occupied his nonsupervisory GM-14 and GS-13 criminal investigator positions, did not make policy decisions or participate indirectly through developing proposals that were acted on by others as that responsibility was shared between the RAC and SAC. Additionally, the burden of proof lies with the agency to show that a position is FLSA exempt, and the USCS has failed to provide any information indicating the claimant's work significantly affected the formulation or execution of management policies or programs consistent with (a)(1).

The claimant did not meet the requirements of (a)(2) of the administrative exemption criteria. His primary duties did not involve general management or business functions or supporting services of substantial importance to the organization serviced. Rather, the claimant performed the line law enforcement work of the USCS. He was not involved in systems analysis and general management support functions, for example, safety and personnel management, budgeting, and financial management. The claimant did not represent agency management in negotiating and administering contracts for goods or services, and did not provide support services such as automated data processing, communications, procurement, and distribution of supplies.

The claimant did not meet the requirements of (a)(3) of the administrative exemption criteria. His assignments did not involve substantial participation in the executive or administrative functions of a management official. He did not act as a secretary or administrative assistant participating in portions of the managerial or administrative functions of a supervisor, with no requirement for technical knowledge of the substantive work under the supervisor's jurisdiction. Unlike such employees, the claimant independently performed the line work of the USCS's Office of Enforcement in a field office requiring technical knowledge of

substantive law enforcement and criminal investigative work relating to drug smuggling, money laundering, and other criminal violations of laws investigated by his agency.

Under (b)(1) of the administrative exemption criteria, the claimant performed office non-manual work which was intellectual and varied in nature. In carrying out criminal investigations concerning violations of numerous laws and regulations administered by USCS, the claimant applied perceptiveness, analytical reasoning, and judgment based on considering, selecting, adapting, and applying criminal investigative principles to numerous variables. In doing so, he determined the best approach to each case and the investigative techniques needed to substantiate it (e.g., interviews of subjects and witnesses, taking pictures of principals of the drug group, and developing and gathering supportable evidence for presentation to Treasury) in order to identify the violation and assess the scope of the illegal activity. The claimant was required to abide by specific laws and USCS procedures governing the methods and collection of evidence as a law enforcement agent; however, in developing criminal cases, he considered the effect of alternative investigative methods, adapting techniques and procedures as appropriate to the nature and extent of the violation.

Under (b)(2) of the administrative exemption criteria, the claimant's work as a full-performance Special Agent was highly specialized and technical in nature, requiring considerable special training, experience, and knowledge. He possessed and regularly applied specialized knowledge of the complex subject matter field of Federal criminal investigations, including the principles, techniques, practices, and investigative procedures associated with that field. This knowledge was acquired through regular and extensive formal agency in-service training and considerable on-the-job training and experience as, for example, a Federal Air Marshal.

The claimant's work met paragraph (c) of the administrative exemption criteria, as he exercised discretion and independent judgment in performing his normal day-to-day criminal investigations work under only general supervision. In doing so, he developed and expanded investigations, comparing and evaluating possible courses of action and necessary investigative techniques to efficiently utilize resources and achieve the goal of the investigation in proving the elements of a crime had been committed. He interpreted results gathered from investigative leads (e.g., from informants, witnesses, and photographs) and made decisions on subsequent investigative steps after considering the various possibilities. He also reviewed evidence gathered by other investigators to consider whether it was appropriate and sufficient to be incorporated into the case to Treasury. Since his case involved numerous variables in terms of the investigative procedures needed because of the scope and complexity of the violations, he regularly applied discretion and judgment in determining approaches, techniques, and in evaluating results. As a GM-14 and GS-13 criminal investigator, the claimant had full authority to make such determinations during the course of the investigation, consulting with his supervisor on the status of cases. His investigative decisions were more significant than just making decisions on procedural details, or deciding whether a situation conformed to clearly applicable criteria. Although he had to follow specific legal requirements for gathering and admitting evidence and writing affidavits, he independently made decisions on significant matters affecting case development, including deciding on the inclusion or exclusion of evidence and identifying the

most effective investigative techniques and processes to build a comprehensive case for Treasury.

Although the claimant's position met paragraphs (b) and (c) of the administrative exemption criteria, it failed to meet all of the required exemption criteria because it did not meet paragraph (a) of the criteria. Therefore, we conclude the claimant did not meet the administrative exemption.

Analysis of GS-1811-13 position occupied from November 22, 1987, to June 4, 1988

*Administrative Exemption Criteria*

The claimant's criminal investigations work did not meet paragraph (a) of the administrative exemption criteria (see pages 3-6). His primary duty was not to serve as an advisor, assistant, or representative of agency management, or as a specialist in a management or general business function or supporting service. As a criminal investigator assigned to the RAC Nogales office, he spent all of his time investigating criminal violations of laws governing fraud relating to trademarks. Stemming from the RAC office's seizure of a shipment of counterfeit sneakers in Nogales, the claimant conducted investigations into its source and other contributors, which involved conducting interviews, surveillance, undercover operations, and other investigative techniques.

The claimant did not meet the requirements of (a)(1) of the administrative exemption criteria. Contrary to the agency's assertion that GS-13 Special Agents advised management officials on "critical law enforcement programs involving highly important functions that influence accomplishment of objectives of the entire Customs Service," we found the claimant's primary duties did not significantly affect the formulation or execution of management policies or programs. As a field office employee assigned to the RAC Nogales office performing the line investigative work of the Office of Enforcement, USCS, he did not make policy decisions or participate indirectly through developing proposals that were acted on by others. Also unlike administrative employees, he did not perform any phases of program management such as planning, controlling, or evaluating operating programs.

The claimant provided the name and contact information for his previous supervisor at the time (the RAC Nogales), but the phone number was no longer valid. We were thus unable to confirm his primary duties during this period from his previous supervisor. However, as previously mentioned, the claimant provided an unnumbered PD for the GM-14 position he occupied as RAC Laredo. That PD, even though it specified no office or location, applied to the Southwest Region. Although the claimant submitted the GM-14 PD to confirm the duties and responsibilities performed as RAC Laredo, the PD also describes the work performed and the mission of the RAC offices within the Southwest Region, of which the RAC Nogales office is part. We thus reason the main function of the RAC Nogales office, like that of the RAC Laredo office, was the conduct of line investigative and enforcement work of the USCS. We also conclude the claimant, when he occupied the GS-13 criminal investigator position, did not make policy decisions or participate indirectly through developing proposals that were acted on by others as that responsibility was shared between the RAC Nogales and SAC Tucson. Moreover, the burden of proof lies with the agency to show that a position is FLSA

exempt, and the USCS has failed to provide any information indicating the claimant's work significantly affected the formulation or execution of management policies or programs consistent with (a)(1).

The claimant did not meet the requirements of (a)(2) of the administrative exemption criteria. His primary duties did not involve general management or business functions or supporting services of substantial importance to the organization serviced. Rather, the claimant performed the line law enforcement work of the USCS. He was not involved in systems analysis and general management support functions, for example, safety and personnel management, budgeting, and financial management. The claimant did not represent agency management in negotiating and administering contracts for goods or services, and did not provide support services such as automated data processing, communications, procurement, and distribution of supplies.

The claimant did not meet the requirements of (a)(3) of the administrative exemption criteria. His assignments did not involve substantial participation in the executive or administrative functions of a management official. He did not act as a secretary or administrative assistant participating in portions of the managerial or administrative functions of a supervisor, with no requirement for technical knowledge of the substantive work under the supervisor's jurisdiction. Unlike such employees, the claimant independently performed the line work of the USCS's Office of Enforcement in a field office requiring technical knowledge of substantive law enforcement and criminal investigative work relating to fraud and other criminal violations of laws investigated by his agency.

Under (b)(1) of the administrative exemption criteria, the claimant performed office non-manual work which was intellectual and varied in nature. In carrying out criminal investigations concerning violations of numerous laws and regulations administered by USCS, the claimant applied perceptiveness, analytical reasoning, and judgment based on considering, selecting, adapting, and applying criminal investigative principles to numerous variables. In doing so, he determined the best approach to each case and investigative techniques needed to substantiate it (e.g., interviews with informants, trademark owners, and investigators working for trademark owners, and developing and gathering the most supportable evidence for presentation to the U.S. Attorney) in order to identify the violation and assess the scope of the illegal activity. The claimant was required to abide by specific laws and USCS procedures governing the methods and collection of evidence as a law enforcement agent; however, in developing criminal cases, he considered the effect of alternative investigative methods, adapting techniques and procedures as appropriate to the nature and extent of the violation.

Under (b)(2) of the administrative exemption criteria, the claimant's work as a full-performance Special Agent was highly specialized and technical in nature, requiring considerable special training, experience, and knowledge. He possessed and regularly applied specialized knowledge of the complex subject matter field of Federal criminal investigations, including the principles, techniques, practices, and investigative procedures associated with that field. This knowledge was acquired through regular and extensive formal agency in-service training and considerable on-the-job training and experience as, for example, a Federal Air Marshal.

The claimant's work met paragraph (c) of the administrative exemption criteria, as he exercised discretion and independent judgment in performing his normal day-to-day criminal investigations work under only general supervision. In doing so, he developed and expanded investigations, comparing and evaluating possible courses of action and necessary investigative techniques to efficiently utilize resources and achieve the goal of the investigation in proving the elements of a crime had been committed. He interpreted results gathered from investigative leads (e.g., from informants, trademark owners, and from undercover operations) and made decisions on subsequent investigative steps after considering the various possibilities. Since his case involved numerous variables in terms of the investigative procedures needed because of the scope and complexity of the violations, he regularly applied discretion and judgment in determining approaches, techniques, and in evaluating results. As a GS-13 criminal investigator, the claimant had full authority to make such determinations during the course of investigations, consulting with his supervisor only on the status of cases or need for resources (e.g., funding approval for an undercover operation in South Korea to purchase a shipment of counterfeit goods). His investigative decisions were more significant than just making decisions on procedural details, or deciding whether a situation conformed to clearly applicable criteria. Although he had to follow specific legal requirements for gathering and admitting evidence, writing affidavits, conducting searches and seizures, and worked closely with the U.S. Attorney in preparing the case, he independently made decisions on significant matters affecting case development. This included identifying the most effective investigative techniques and processes to build a comprehensive investigation supportable before a Grand Jury or Federal court.

Although the claimant's position met paragraphs (b) and (c) of the administrative exemption criteria, it failed to meet all of the required exemption criteria because it did not meet paragraph (a) of the criteria. Therefore, we conclude the claimant did not meet the administrative exemption.

**Decision**

The claimant's work did not meet the executive, administrative, or professional exemption criteria when he occupied the following positions: (1) the GM-14 Supervisory Criminal Investigator position from February 2, 1986, to May 10, 1986; (2) the GM-14 and GS-13 Criminal Investigator position from October 12, 1986, to November 21, 1987; and (3) the GS-13 Criminal Investigator position from November 22, 1987, to June 4, 1988. Therefore, USCS would have been required to compensate the claimant under the overtime pay provisions of subpart E of part 551 of 5 CFR for work performed within the claim period; i.e., within five years before the commencement of the Gulf War on August 2, 1990, and subject to deduction for any monies paid under the claimant's DOJ settlement agreement. Since both his active duty military service time[5] and his previous FLSA settlement were for time periods subsequent to June 4, 1988, they are not germane to the overtime pay calculations for the period of the claim

---

[5] B & L's claim request states the claimant was called to active duty with the United States Army Reserve from approximately April 15, 1991, to April 26, 1991. His claim request included a "Chronological Statement of Retirement Points," issued by the U.S. Army Reserve Personnel Command, showing the number of active duty points earned in a given year and confirming that he accrued "active duty points" in 1991 as stated by B & L.

covered by this decision.  The agency must follow the compliance requirements on page ii of this decision.

The claimant must submit evidence showing the amount and extent of overtime that was performed as provided for in 5 CFR 551.706(a).  The agency will have the opportunity to review this evidence using any sources of information available, including witnesses, before a determination is made as to whether the claimant is entitled to any back pay under the FLSA and any interest as required under 5 CFR part 550, subpart H.[6]  Any petition for attorney's fees and expenses must be submitted to the agency out of which this claim arose.  Should the claimant be determined to be entitled to back pay which the claimant believes to be incorrectly computed, the claimant may file a new FLSA claim with this office.

---

[6] The agency's overtime and interest calculations must account for the claimant's prior receipt of administratively uncontrollable overtime, documented as "premium pay" on his SF 50s covering the claim period, using the principles contained within 29 U.S.C. 207(k), 5 CFR 551.501(a)(1) and (5), and 5 CFR 551.541(a).  OPM's Fact Sheet on the topic can be found here: https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/guidance-on-applying-flsa-overtime-provisions-to-law-enforcement-employees-receiving-administratively-uncontrollable-overtime-pay/.

## Distribution

Mr. Jules Bernstein and Ms. Linda Lipsett
Law Offices
Bernstein & Lipsett, P.C.
1130 Connecticut Avenue, NW
Suite 950
Washington, DC  20036-1798
lipsett@aol.com
chouse@bernstein-lipsett.com

Mr. Michael Woodworth
50 Hemlock Court, P.O. Box 165
Newfields, NH  03856
miichael.woodworth@gmail.com

Ms. Deborah Eldredge
Manager, Compensation and Benefits
Human Capital Policy and Programs
Office of the Chief Human Capital Officer
U.S. Department of Homeland Security
Deborah.Eldredge@hq.dhs.gov